**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646)-837-7150
Facsimile: (212) 989-9163
Email: pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
Stefan Bogdanovich (State Bar No. 324525)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: sbogdanovich@bursor.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION**

| | |
|---|---|
| JUHYUN SO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HYATT CORPORATION,<br><br>Defendant. | Case No. 2:25-cv-01298-AB-SSC<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Juhyun So files this class action complaint on behalf of himself and all others similarly situated (the "Class Members") against Hyatt Corporation ("Defendant" or "Hyatt"). Plaintiff brings this action based upon personal knowledge of the facts pertaining to himself, and on information and belief as to all other matters, by and through the investigation of undersigned counsel.

## NATURE OF THE ACTION

1. This is a class action lawsuit brought on behalf of all California residents who have accessed and used hyatt.com (the "Website"), a website that Defendant owns and operates.

2. Defendant aids, employs, agrees with, or otherwise enables third parties – including Adobe Inc. ("Adobe") and Meta Platforms, Inc. ("Meta") (collectively, the "Third Parties") – to eavesdrop on communications sent and received by Plaintiff and Class Members, including communications that contain sensitive and confidential information (i.e., "guest records," as defined by Cal. Civil Code § 53.5). By failing to procure consent before enabling the Third Parties' interception of these communications, Defendant violated the California Invasion of Privacy Act ("CIPA") §§ 631-632.

## PARTIES

3. Plaintiff Juhyun So is a resident and citizen of Los Angeles, California. In or around November 2010, Plaintiff So created a Facebook account. Numerous times, including on or around February 19, 2024; September 21, 2024; and November 20, 2024, Plaintiff So visited Defendant's Website, hyatt.com, on the same browser that he used to access Facebook. Plaintiff So was in California when he visited the Website. Upon accessing the Website, as alleged in greater detail below, Plaintiff So browsed and booked a Hyatt hotel. Each of these communications was intercepted in transit by the Third Parties – as enabled by Defendant – including communications that contained Plaintiff So's confidential "guest records," as defined by Cal. Civil

Code § 53.5.[1] Neither Defendant nor the Third Parties procured Plaintiff So's prior consent to this interception.

4. Defendant Hyatt Corporation is a Delaware corporation, headquartered and with its principal place of business in Chicago, Illinois. Defendant does business across the nation and operates numerous hotels throughout California.[2]

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action where there are more than 100 members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one member of the putative Class is a citizen of a state different from Defendant.

6. The Court has personal jurisdiction over Defendant because Defendant has purposefully availed itself of the laws and benefits of doing business in California, and Plaintiff's claims arise out of Defendant's forum-related activities. Plaintiff accessed and navigated the Website while in California, and Defendant assisted the Third Parties with intercepting Plaintiff's communications in this District. Defendant also disclosed Plaintiff's information to Meta and Adobe, both of which are Californian companies.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to this action occurred in this District.

## FACTUAL ALLEGATIONS

### I. The California Invasion of Privacy Act

8. The California Legislature enacted the Invasion of Privacy Act to protect certain privacy rights of California citizens. The legislature expressly recognized that "the development of new devices and techniques for the purpose of eavesdropping

---

[1] *See* Exhibit A, a report of Plaintiff So's activity off Meta technologies, as described at https://www.facebook.com/help/2207256696182627. This report evinces activity received from the Website.

[2] https://www.hyatt.com/promo/california-hotels.

upon private communications … has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." Cal. Penal Code § 630.

9. The California Supreme Court has repeatedly stated an "express objective" of CIPA is to "protect a person placing or receiving a call from a situation where the person on the other end of the line *permits an outsider to tap his telephone or listen in on the call*." *Ribas v. Clark*, 38 Cal. 3d 355, 364 (1985) (emphasis added)

10. Further, as the California Supreme Court has held in explaining the legislative purpose behind CIPA:

> While one who imparts private information risks the betrayal of his confidence by the other party, a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its *simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device.*
>
> As one commentator has noted, such secret monitoring denies the speaker an important aspect of privacy of communication—the right to control the nature and extent of the firsthand dissemination of his statements.

*Ribas v. Clark*, 38 Cal. 3d 355, 360-61 (1985) (emphasis added; internal citations omitted).

11. As part of CIPA, the California Legislature enacted § 631(a), which prohibits any person or entity from [i] "intentionally tap[ping], or mak[ing] any unauthorized connection … with any telegraph or telephone wire," [ii] "willfully and without the consent of all parties to the communication … read[ing], or attempt[ing] to read, or to learn the contents or meaning of any … communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within [California]," or [iii] "us[ing], or attempt[ing] to use … any information so obtained."

12. CIPA § 631(a) also penalizes [iv] those who "aid[], agree[] with, employ[], or conspire[] with any person" who conducts the aforementioned wiretapping, or those who "permit" the wiretapping.

13. As part of the Invasion of Privacy Act, the California Legislature additionally introduced Penal Code § 632(a), which prohibits any person or entity from "intentionally and without the consent of all parties to a confidential communication, us[ing] an electronic amplifying or recording device to eavesdrop upon or record [a] confidential communication."

14. A "confidential communication" for the purposes of CIPA § 632 is "any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto." Cal. Penal Code § 632(c).

15. Individuals may bring an action against the violator of CIPA §§ 631 and 632 for $5,000 per violation. Cal. Penal Code § 637.2(a)(1). Plaintiff does so, here, against Defendant.

**II. California Guest Records Privacy Statute (Civil Code § 53.5)**

16. As the California Legislature recognized, a "guest record" maintained by an owner or operator of an inn, hotel, motel, lodginghouse, or other similar accommodations is confidential. Such an owner or operator "shall not disclose, produce, provide, release, transfer, disseminate, or otherwise communicate, except to a California peace officer, all or any part of a guest record orally, in writing, or by electronic or any other means to a third party without a court-issued subpoena, warrant, or order." Cal. Civil Code § 53.5(a).

17. Per Cal. Civil Code § 53.5(c):

> "Guest record" for purposes of this section includes any record that identifies an individual guest, boarder, occupant, lodger, customer, or invitee, including, but not limited to, their name, social security number or other unique identifying number, date of birth, location of birth, address, telephone number, driver's

license number, other official form of identification, credit card number, or automobile license plate number.

18. Further, the legislative history of § 53.5 indicates:

(a) In 1972, California voters amended the California Constitution to include the right of privacy among the "inalienable" rights of all people. The amendment established a legal and enforceable right of privacy for every Californian. Fundamental to this right of privacy is the ability of individuals to control the use of their personal information.

(b) Since California voters approved the right of privacy, the California Legislature has adopted specific mechanisms to safeguard consumer privacy, including the California Consumer Privacy Act of 2018, the Online Privacy Protection Act, the Reader Privacy Act, the Privacy Rights for California Minors in the Digital World Act, and Shine the Light, a California law intended to give Californians the 'who, what, where, and when' of how businesses handle consumers' personal information.

(c) Californians frequently have to disclose their sensitive personal information to third parties in order to accomplish routine activities: apply for a job; apply for housing; raise a child; drive a car or take transportation; or stay at a hotel or motel.

(d) California law has not kept pace with these developments and the personal privacy implications surrounding the collection, use, and protection of personal information by third parties.

(e) Many businesses collect personal information from California consumers. They may know where a consumer lives, how many children a consumer has, where a consumer lives and works, where a consumer travels and where they stay on their trip, how fast a consumer drives, a consumer's personality, sleep habits, biometric and health information, financial information, precise geolocation information, and social networks, to name a few categories.

(f) The unauthorized disclosure of personal information and the

> loss of privacy can have devastating effects for individuals, including financial fraud, identity theft, unnecessary costs to personal time and finances, destruction of property, harassment, reputational damage, emotional stress, and even potential physical harm.
>
> (g) When Californians leave their homes to travel via bus or stay at lodging establishments throughout their state, they desire assurances that these businesses will respect their privacy and safeguard their personal information from improper disclosure.
>
> (h) Protecting the privacy of personal information promotes consumer confidence and encourages both residents and visitors to travel to and within California and to patronize California businesses.
>
> (i) Therefore, it is the intent of the Legislature to further Californians' right to privacy by ensuring that the personal information disclosed by patrons of lodging establishments and bus companies is used for the intended business purposes and not improperly disclosed.

California S.B. 1194 (September 27, 2018).[3]

19. Here, Website users' communications with Hyatt – made while browsing and booking Hyatt hotels via the Website – contain sensitive and confidential "guest records," as defined by Cal. Civil Code § 53.5.

20. The communications include "record[s] that identif[y] an individual[.]" Cal. Civil Code § 53.5(c). As described *infra*, §§ IV, VI, Defendant enables Adobe to identify individual Website users with the Adobe Experience Cloud Identity Service and/or Adobe Experience Platform Identity Service, which collect and utilize cookie IDs, cross-device IDs, device IDs, email addresses, and/or phone numbers. Defendant enables Meta to identify individual Website users by their respective Facebook accounts, utilizing several cookies, including the c_user; datr; fr; and _fbp cookies. Defendant also enables Meta to identify individual Website users through advanced

---

[3] https://leginfo.legislature.ca.gov/faces/billTextClient.xhtml?bill_id=201720180SB1194.

matching, by which Meta records the contact details Website users provide on the Website (i.e., name, email address, phone number, etc.). These pieces of data collected by Adobe and Meta constitute "record[s] that identif[y] an individual" (Cal. Civil Code § 53.5(c)), as the cookies and other IDs at issue contain "unique identifying number[s]" assigned to Website users (*id.*) and the contact details (i.e., name, email address, phone number, etc.) at issue are sufficient to identify individuals. *Id.*

21. Website users' communications with Hyatt also "identif[y] an individual [as a Hyatt] guest, boarder, occupant, lodger, customer, or invitee[.]" *Id.* The Third Parties intercept Website users' button clicks selecting the destination to which they wish to travel, the desired dates for their trip, the number of rooms they require, the numbers of adults and children who will be traveling, and the particular hotel and room type in which they wish to stay. The Third Parties also intercept the URL of webpages visited by Website users – containing the foregoing communications. These communications "identif[y] an individual [as a Hyatt] guest, boarder, occupant, lodger, customer, or invitee" (Cal. Civil Code § 53.5(c)) because they show that all Website users are "invitees" of Hyatt – individuals with "express or implied invitation to enter or use [Hyatt's] premises."[4] These communications also identify certain Website users (those who complete the booking process) as Hyatt hotel "guests" and "customers."

22. Thus, the Third Parties – as aided by Defendant – intercepted "guest records," which are confidential, under Cal. Civil Code § 53.5. Moreover, neither of the Third Parties is a legitimate "third-party service provider," as defined by Cal. Civil Code § 53.5(f), because neither of the Third Parties is "an entity contracted to provide services outlined in [a] contract [with Hyatt] that has no independent right to use or share the data beyond the terms of the contract." Rather, the Third Parties have the capability to use the information they wiretap for purposes other than simply providing a recording to Defendant. *See infra*, § VII. Therefore, Defendant's conduct here at issue was not permitted by, *inter alia*, Cal. Civil Code § 53.5(i).

[4] INVITEE, Black's Law Dictionary (11th ed. 2019).

## III. Overview of Defendant's Website

23. Defendant owns and operates the Website. Defendant has integrated the Third Parties' wiretaps into the Website.

24. On the Website, Website users can, *inter alia*, browse and book Hyatt hotels. When doing so, Website users provide Defendant with confidential information, including "guest records" under Cal. Civil Code § 53.5. *See supra* § II.

25. Unbeknownst to Plaintiff and Class Members, however, Defendant aids, agrees with, employs, or otherwise enables the Third Parties to eavesdrop on those confidential communications using the Third Parties' respective wiretaps, as set out *infra*.

26. Website users' confidential communications are the product of Website users affirmatively entering, and interacting with, information on the Website (*i.e.*, the confidential communications are not procedurally or automatically generated). Instead, as set out below, the confidential communications stem from Website users typing into data fields, conveying responses to questions and prompts, and actively making other selections. All of the foregoing is information created through the intent of Website users: information created by and in response to Website users' communicative inputs; information created by and in response to Website users' intended messages to the Website and Defendant; and information created by and in response to Website users' having conveyed and expressed their respective desires that the Website would supply them with certain, highly personalized, types of information and/or responses.

27. Website users may browse and book Hyatt hotel rooms. To do so, users type and/or select from a list the destination to which they wish to travel. Next, users click the dates for their trip, the number of rooms required, the number of adults and children who will be traveling, and/or special rates for which they are eligible. The Third Parties, as enabled by Defendant, contemporaneously intercept Website users' button clicks selecting such items:




Website "Screen 1"

28. Then, Website users review the Hyatt hotels located in or near their destination and click on a particular hotel to book.




Website "Screen 2"

29. Website users subsequently pick the type of room (i.e., double, queen, king bed, etc.) in which they wish to stay, as well as a particular rate for that room

(i.e., "Senior Citizen," "Members Advance Purchase," "Advance Purchase Rate," "Member Rate," or "Standard Rate.").




**Website "Screen 3"**




**Website "Screen 4"**

30. Finally, Website users check out by typing their personal information (first and last name, email, phone number) and entering their payment information.




**Website "Screen 5"**

## IV. Overview of the Third Parties' Tracking Technologies

31. Adobe and Meta each wiretap the Website with their respective tracking technologies, which Defendant purposefully installed on the Website.

32. The Third Parties' tracking technologies send secret instructions to a Website user's browser, without alerting the individual that this is happening. The trackers then cause the browser to secretly and simultaneously duplicate the user's Website communications, transmitting these communications to the Third Parties' servers alongside additional information about the Website user's identity. This entire process occurs within milliseconds. In other words, when a user communicates with Defendant's Website, those communications are simultaneously and contemporaneously duplicated and sent to the Third Parties at the same time as they are being sent to Defendant. Thus, the Third Parties' interception of these communications occurs "in transit." *See, e.g.*, *In re Facebook Internet Tracking Litig.*, 956 F.3d 589, 608 (9th Cir. 2020) ("Permitting an entity to engage in the unauthorized duplication and forwarding of unknowing users' information would render permissible the most common methods of intrusion…"); *James v. Walt*

*Disney Co.*, 701 F. Supp. 3d 942, 961 (N.D. Cal. 2023), (finding in-transit interception was alleged based on similar process to the one alleged herein).

### A. Adobe

33. Adobe wiretaps the Website with trackers associated with the "Adobe Experience Cloud."[5] Specifically, analysis of the Website reveals that Defendant utilizes Adobe Analytics, Adobe Target, Adobe Audience Manager, and/or the Adobe Experience Cloud Identity Service:[6]




[5] *See* ADOBE, ADOBE EXPERIENCE CLOUD, https://business.adobe.com; ADOBE, DATA INSIGHTS & AUDIENCES, https://business.adobe.com/solutions/data-insights-audiences.html; ADOBE, ADOBE EXPERIENCE CLOUD PRODUCTS, https://business.adobe.com/products/adobe-experience-cloud-products.html; ADOBE, ENTERPRISE DOCUMENTATION, https://experienceleague.adobe.com/en/docs.

[6] *See* ADOBE, IMPLEMENT THE EXPERIENCE CLOUD IN WEBSITES WITH TAGS TUTORIAL, https://experienceleague.adobe.com/en/docs/platform-learn/implement-in-websites/overview.

34. Adobe Analytics[7] offers "real-time insights based on a holistic view of [the] customer[,]"[8] including "complex segmentation and predictive tools for analyzing website traffic[]"; "marketing analytics" that "help[] organizations understand where customers interact with their brands, which channels customers prefer, and which experiences resonate with them[]"; "[a]ttribution [that] lets organizations see how different interactions throughout the customer journey affect conversion[]"; and "[p]redictive analytics [that] uses machine learning and advanced statistical modeling to analyze customer data, find patterns, and predict future behavior[.]"[9]

35. Adobe Target[10] can be used to "[c]reate A/B and multivariate tests to learn the most effective combination of content, layouts, UX, and more through [] websites[.]"[11] With "AI and machine learning, powered by Adobe Sensei, [clients] can test and personalize at scale well beyond what [they've] been able to achieve with manual or rules-driven approaches alone."[12]

36. Adobe Audience Manager[13] "mak[es] it easy to collect commercially relevant information about site visitors, create marketable segments, and serve targeted

---

[7] *See* ADOBE, IMPLEMENT ADOBE ANALYTICS, https://experienceleague.adobe.com/en/docs/analytics/implementation/home.

[8] ADOBE, ADOBE ANALYTICS, https://business.adobe.com/products/analytics/adobe-analytics.html

[9] ADOBE, ANALYTICS USE CASES, https://experienceleague.adobe.com/en/docs/analytics/analyze/admin-overview/use-cases.

[10] *See* ADOBE, ADOBE TARGET DEVELOPER GUIDE, https://experienceleague.adobe.com/en/docs/target-dev/developer/overview.

[11] ADOBE, ADOBE TARGET BENEFITS, https://business.adobe.com/products/target/benefits.html.

[12] *Id.*

[13] *See* ADOBE, IMPLEMENTING AUDIENCE MANAGER, https://experienceleague.adobe.com/en/docs/audience-manager/user-guide/implementation-integration-guides/implement-audience-manager.

advertising and content to the right audience."[14] Specifically, Audience Manager collects "raw data … and [] user interactions on [] websites" that signal "[g]ender"; "[i]nterests"; "[h]ousing [t]ype"; "[l]ocation"; "[s]pending [p]ower"; and more.[15] Audience Manager then "[u]nifies [said] data into audience profiles, [helping advertisers] … [c]reate look-alike models, [and] build audience segments and groups of profiles[.]"[16]

37. The Adobe Experience Cloud Identity Service[17] is used, in conjunction with the Adobe Experience Platform Identity Service, to "piece together a complete picture of [a] customer" by "link[ing] their disconnected identi[fiers,]" which Adobe calls "identities[.]"[18] "Identities" that are collected and stitched together include, *inter alia*: "[c]ookie IDs"[19] such as "the Experience Cloud ID (ECID)"[20] that "identify web browsers"[21]; "[c]ross-device IDs" such as "CRMID" that "identify an individual and

---

[14] ADOBE, AUDIENCE MANAGER OVERVIEW, https://experienceleague.adobe.com/en/docs/audience-manager/user-guide/overview/aam-overview.

[15] ADOBE, TYPES OF DATA COLLECTED, https://experienceleague.adobe.com/en/docs/audience-manager/user-guide/overview/data-types-collected.

[16] ADOBE, AUDIENCE MANAGER OVERVIEW, https://experienceleague.adobe.com/en/docs/audience-manager/user-guide/overview/aam-overview.

[17] *See* ADOBE, ID SERVICE IMPLEMENTATION GUIDES, https://experienceleague.adobe.com/en/docs/id-service/using/implementation/implementation-guides.

[18] ADOBE, ADOBE EXPERIENCE PLATFORM IDENTITY SERVICE, https://experienceleague.adobe.com/en/docs/experience-platform/identity/home.

[19] ADOBE, IDENTITY NAMESPACE OVERVIEW, https://experienceleague.adobe.com/en/docs/experience-platform/identity/features/namespaces.

[20] ADOBE, ADOBE EXPERIENCE CLOUD IDENTITY SERVICE, https://experienceleague.adobe.com/en/docs/id-service/using/home. *See also* ADOBE, HOW THE EXPERIENCE CLOUD IDENTITY SERVICE REQUESTS AND SETS IDS, https://experienceleague.adobe.com/en/docs/id-service/using/intro/id-request; ADOBE, COOKIES AND THE EXPERIENCE CLOUD IDENTITY SERVICE, https://experienceleague.adobe.com/en/docs/id-service/using/intro/cookies.

[21] ADOBE, IDENTITY NAMESPACE OVERVIEW, https://experienceleague.adobe.com/en/docs/experience-platform/identity/features/namespaces. *See also* ADOBE, ADOBE EXPERIENCE PLATFORM IDENTITY SERVICE, https://experienceleague.adobe.com/en/docs/experience-platform/identity/home ("[t]he browser identifier (such as ECID) [] represents the web browser.").

[] tie other IDs together"; "[d]evice IDs" such as "IDFA (iPhone and iPad), GAID (Android), and RIDA (Roku)" that "identify hardware devices"; "[e]mail addresses"; and "[p]hone numbers[.]"[22] This data is presented visually in an "identity graph[,]" which is a "map of [the] relationships between [] identities" (i.e., cookie IDs, cross-device IDs, device IDs, email addresses, phone numbers, etc.) "for a single individual[.]"[23] Ultimately, said identity graphs (and the data contained therein) can be used to gain a comprehensive "view of individual customers and their behavior"[24] and identify them "across all applications in Adobe Experience Cloud."[25]

**B. Meta**

38. Meta wiretaps the Website with trackers associated with the "Meta Pixel."[26] According to Meta, "[t]he Meta Pixel is a snippet of JavaScript code that allows [clients] to track visitor activity on [their] website[s]. It works by loading a small library of functions which [] can [be] use[d] whenever a site visitor takes an action (called an event) that [a client] want[s] to track (called a conversion)."[27] Meta offers a menu of "standard events" that can be tracked, including what content a visitor views or purchases.[28] Advertisers can also create their own tracking parameters by

---

[22] *Id.*

[23] ADOBE, IDENTITY AND IDENTITY GRAPHS OVERVIEW, https://experienceleague.adobe.com/en/docs/platform-learn/tutorials/identities/understanding-identity-and-identity-graphs.

[24] ADOBE, IDENTITY NAMESPACE OVERVIEW, https://experienceleague.adobe.com/en/docs/experience-platform/identity/features/namespaces.

[25] ADOBE, ECID OVERVIEW, https://experienceleague.adobe.com/en/docs/experience-platform/identity/features/ecid.

[26] META, META PIXEL, https://developers.facebook.com/docs/meta-pixel.

[27] *Id.*

[28] META, SPECIFICATIONS FOR META PIXEL STANDARD EVENTS, https://www.facebook.com/business/help/402791146561655. *See also* META, STANDARD EVENTS, https://developers.facebook.com/docs/meta-pixel/reference.

building a "custom event."[29] Thus, the Meta Pixel helps "understand[] the actions people take on [a] website."[30]

39. The Meta Pixel "relies on Facebook cookies, which enable [Meta] to match [] website visitors to their respective Facebook User accounts."[31] Additionally, "[w]ith advanced matching, [website operators] can send [Meta] hashed customer information along with [] Meta Pixel events, which can help … match more of the conversions that happen on your website to people on Meta."[32]

40. This is highly useful for marketing and advertising. Specifically, the Meta Pixel can be used to help "measure ad effectiveness"; "define custom audiences for ad targeting"; and support "Advantage+ catalog ads campaigns[.]"[33]

41. With respect to measuring ad effectiveness, "[t]rack[ing ] website visitors' actions[,] also known as conversion tracking[,] ... can be used to … calculate [] return[s] on ad investment[s]."[34] "In [the] Meta Ads Manager, [website operators] can see how many conversions happened as a result of [their] Meta ads."[35] This includes "cross-device reporting, which lets [advertisers] see cross-device conversions across apps and the web (for example, if a customer sees an ad for a product on their mobile phone, but decides to buy it later on their desktop computer)."[36]

---

[29] META, ABOUT STANDARD AND CUSTOM WEBSITE EVENTS, https://www.facebook.com/business/help/964258670337005; *see also* META, APP EVENTS API, https://developers.facebook.com/docs/marketing-api/app-event-api/.

[30] *Id.*

[31] META, META PIXEL GET STARTED, https://developers.facebook.com/docs/meta-pixel/get-started.

[32] META, ABOUT ADVANCED MATCHING FOR WEB, https://www.facebook.com/business/help/611774685654668?id=1205376682832142.

[33] META, META PIXEL, https://developers.facebook.com/docs/meta-pixel.

[34] META, CONVERSION TRACKING, https://developers.facebook.com/docs/meta-pixel/implementation/conversion-tracking.

[35] META, USE CONVERSION TRACKING TO MEASURE RESULTS, https://www.facebook.com/business/help/339239069606476.

[36] *Id.*

42. A "custom audience is an ad targeting option"[37] that can be used by advertisers, like Defendant, "to find people most likely to respond to [their] ad[s]."[38] Clients can "[c]reate [an] online audience based on the traits of who [they] want to see [their] ad[s], and narrow down [their] ad[s'] audience[s] by interests, gender or location and use ad targeting to find the people most likely to take action. Once [an] ad starts running, [Meta's] system will learn who is engaging with it and, over time, narrow [the] audience [to help] reach more of the right people."[39] Advertisers can target, *inter alia*, "[n]ew customers with specific interests or from a specific location"; "[p]eople who have already shown an interest in [a client's] business"; and "[p]eople who share interests with [a client's] current customers[]" (i.e., "Lookalike Audience[s]").[40]

43. "Advantage+ catalog ads are dynamically created by populating an ad template with product information found in a data feed. This allows [Meta clients] to create thousands of ads without having to configure each of them individually."[41] Clients "can also use Advantage+ catalog ads to target visitors based on how they have interacted with [their] website in the past."[42]

## V. Defendant Aids, Agrees with, Employs, or Otherwise Enables the Third Parties to Wiretap Californians' Communications

### A. Adobe

44. Adobe, as enabled by Defendant, contemporaneously intercepts the following Website communications.

---

[37] META, ABOUT CUSTOM AUDIENCES, https://www.facebook.com/business/help/744354708981227.

[38] META, AD TARGETING, https://www.facebook.com/business/ads/ad-targeting.

[39] *Id.*

[40] *Id.*

[41] META, META PIXEL FOR ADVANTAGE+ CATALOG ADS, https://developers.facebook.com/docs/meta-pixel/get-started/advantage-catalog-ads.

[42] *Id.*

pageName: Resv:Flow1:Corp:HotelDisplay
g: https://www.hyatt.com/search/hotels/en-US/San%20Diego%2C%20California%2C%20United%20States?checkinDate=2025-02-19&checkoutDate=2025-02-20&rooms=1&adults=2&kids=0&rate=Senior
cc: USD
server: hyatt.com
events: scOpen,event1
aamb: RKhpRz8krg2tLO6pguXWp5olkAcUniQYPHaMWWgdJ3xzPWQmdj0y
l1: sanrs:sanis:sanxs:crqzs:sansw:jolla:sanjo:sanas:sanen:sanpa:tijzt:sando
v5: 1
v6: Logged-out
c9: hyatt.com
c10: VisitorAPI Present
c11: search_results
v14: San Diego, California, United States
c20:
c21: 0193dc397a7c0059c427e48783680507d001607500bd0
v21: hyatt.com
v24: 2025-02-19
v25: 2025-02-20
c27: hyatt.com:Resv:Flow1:Corp:HotelDisplay
c30: 2
c32: 2
c41: Global:LandingPage
v41: Global:LandingPage
c44: Group 2
v44: Resv:Flow1:Corp:HotelDisplay
v47: 34
c48: Resv:Flow1:Corp:HotelDisplay
c50: /search/hotels/en-US/San Diego, California, United States?checkinDate=2025-02-19&checkoutDate=2025-02-20&rooms=1&adults=2&kids=0&
=Senior
c52: 14719802014594773951071064926424957518
c53: hyhyattcom
c55: 01-16-2025;14:17:32
v55: 01-16-2025;14:17:32
c56: Full-Site
v68: 0193dc397a7c0059c427e48783680507d001607500bd0
c73: 2582830d-0b57-43e4-b303-d45cba8ab584-57518-324
v91: Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/131.0.0.0 Safari/537.36 Edg/131.0.0.0
v100: true
v101: Group 2
v102: page_load
v134: 0.9665971303963983_1737054631612
v148: LOCATION


45. As shown by the red highlights in the above excerpt of the Website's transmissions, Adobe intercepts the destination selected by users (here, "San Diego, California"). As shown by the yellow highlights, Adobe intercepts the desired trip dates selected by users (here, "checkinDate=2025-02-19" and "'checkoutDate=2025-02-20"). As shown by the green highlights, Adobe intercepts the numbers of rooms and guests selected by users (here, "rooms=1"; "adults=2"; and "kids=0"). As shown by the blue highlights, Adobe intercepts the special rates selected by users

(here, "senior"). These communications are the product of button clicks on Website Screen 1.


```
▼ context: {,…}
  ▼ address: {,…}
     referringUrl: ""
     url: "https://www.hyatt.com/shop/rooms/crqzs?checkinDate=2025-02-19&checkoutDate=2025-02-20&rooms=1&adults=2&kids=0&rate=Senior"
  ▶ browser: {host: "www.hyatt.com",…}
    channel: "web"
  ▶ clientHints: {mobile: false, platform: "Windows",…}
  ▶ screen: {width: 1920, height: 1080, orientation: "landscape", colorDepth: 24, pixelRatio: 1}
    timeOffsetInMinutes: -300
    userAgent: "Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/131.0.0.0 Safari/537.36 Edg/13
  ▶ window: {width: 988, height: 689}
▼ execute: {pageLoad: {parameters: {pagedata.locale: "en-US",…}}}
  ▼ pageLoad: {parameters: {pagedata.locale: "en-US",…}}
    ▼ parameters: {pagedata.locale: "en-US",…}
      audiences.hyatt_main_226: "User is US Based (OneTrust)"
      audiences.hyatt_main_227: " Qualify for CAPI"
      badges.30: true
      badges.10006: true
      badges.10046: true
      badges.10080: true
      badges.10521: true
      badges.10571: true
      badges.10631: true
      entity.brand: "Hyatt Place"
      entity.category: "Property"
      entity.id: "prop_crqzs"
      flags.16972: true
      flags.17159: true
      flags.17161: true
      flags.17163: true
      flags.17165: true
      flags.17167: true
      pagedata.accessibility_check: false
      pagedata.booking_window: "34"
      pagedata.date_checkin: "2025-02-19"
      pagedata.date_checkout: "2025-02-20"
      pagedata.event_string: "scOpen,event1"
      pagedata.full_page_test_group: "rates_modal_v3_test_group;review_section_test_group;member_savings_control"
      pagedata.gp_login_status: "Logged-out"
      pagedata.hotel_brand: "Hyatt Place"
      pagedata.hotel_city: "Vista"
      pagedata.hotel_country: "United States"
      pagedata.hotel_country_code: "US"
      pagedata.hotel_name: "Hyatt Place San Diego/Vista-Carlsbad"
      pagedata.hotel_postal_code: "92081"
      pagedata.hotel_spirit_code: "crqzs"
      pagedata.hotel_state: "California"
      pagedata.locale: "en-US"
      pagedata.number_of_adults: 2
      pagedata.number_of_children: 0
      pagedata.number_of_nights: 1
      pagedata.number_of_rooms: "1"
      pagedata.number_of_travelers: 2
      pagedata.page_type: "room_types"
      pagedata.page_url: "/shop/rooms/crqzs?checkinDate=2025-02-19&checkoutDate=2025-02-20&rooms=1&adults=2&kids=0&rate=Senior"
      pagedata.product_category: "hotel"
      pagedata.qb_use_points: "standard"
      pagedata.rearch_flag: true
      pagedata.review_sort_selection: "default"
      pagedata.review_stars_count: 4
      pagedata.reviews_count: 848
      pagedata.sc_page_title: "Resv:Flow1:Corp:Rooms:DailyRoomDisplay"
      pagedata.site_id: "hyhyattcom"
      pagedata.special_rate: "Senior"
```

**Request Payload**

AQB=1&ndh=1&pf=1&et=1&t=16%2F0%2F2025%2014%3A37%3A16%204%20300&d.&nsid=0&jsonv=1&.d&sdid=5863B144BAC4B3BF-5B03732C29D95F6D&mid=14
719802014594773951071064926424957518&aamlh=9&ce=UTF-8&ns=hyatt&pageName=Resv%3AFlow1%3ACorp%3ARooms%3ADailyRoomDisplay&g=https%3
A%2F%2Fwww.hyatt.com%2Fshop%2Frooms%2Fcrqzs%3FcheckinDate%3D2025-02-19%26checkoutDate%3D2025-02-20%26rooms%3D1%26adults%3D2%26kid
s%3D0%26rate%3DSenior&cc=USD&server=hyatt.com&events=scOpen%2Cevent1&products=hotel%3Bcrqzs%3B1%3B%3B%3B&aamb=RKhpRz8krg2tLO6pguX
Wp5olkAcUniQYPHaMWWgdJ3xzPWQmdj0y&l3=addOns%3Afalse%2CawardBooking%3Atrue%2CrateAfterTax%3Afalse%2CreleaseSuiteUpgradeRedemption%
3Atrue%2CreleaseSingleFreeNightRedemption%3Afalse%2CreleaseGOHRedemption%3Atrue%2CreleaseClubAccessRedemption%3Atrue%2CreleaseCoa
chMarkRatesModal%3Afalse%2CreleaseChaseOfferMay%3Atrue%2CreleaseVrcRedesign%3Afalse%2CreleaseViewDetails%3Afalse%2CreleaseAllInPr
icingPhaseII%3Alocales%3A%5Ben-US%2Cfr-FR%5D%2Cregions%3A%5BNorth%20America%2CAm%C3%A9rique%20du%20Nord%2CLatin%20America%2CAm%C
3%A9rique%20latine%2CCaribbean%2CCara%C3%AFbes%5D%2CtaxCodes%3A%5BRF%2COF%2CPC%2CHF%5D%2CreleaseViewReviewRatings%3Atest%2Creleas
eBrandRedesign%3Atrue%2CreleaseCancellationAndDepositCopy%3Aa%2CreleaseMemberSavingsRoomsAndRates%3Acontrol%2CreleaseFuelIntegrat
ion%3Afalse%2CreleaseTempAccessibleQB%3Atrue&c4=crqzs&v5=1&c6=Hyatt%20Place&v6=Logged-out&c9=hyatt.com&v9=Hyatt%20Place&c10=Visit
orAPI%20Present&c11=room_types&c20=&c21=0193dc397a7c0059c427e48783680507d001607500bd0&v21=hyatt.com&v24=2025-02-19&v25=2025-02-20
&c26=en-US&v26=en-US&c27=hyatt.com%3AResv%3AFlow1%3ACorp%3ARooms%3ADailyRoomDisplay&c28=en-US%3AResv%3AFlow1%3ACorp%3ARooms%3ADai
lyRoomDisplay&c30=2&c32=2&c34=Vista&c35=California&c36=US&c41=Resv%3AFlow1%3ACorp%3AHotelDisplay&v41=Resv%3AFlow1%3ACorp%3AHotelD
isplay&c44=Group%202&v44=Resv%3AFlow1%3ACorp%3ARooms%3ADailyRoomDisplay&v47=34&c48=Resv%3AFlow1%3ACorp%3ARooms%3ADailyRoomDisplay
&c50=%2Fshop%2Frooms%2Fcrqzs%3FcheckinDate%3D2025-02-19%26checkoutDate%3D2025-02-20%26rooms%3D1%26adults%3D2%26kids%3D0%26rate%3D
Senior&c52=14719802014594773951071064926424957518&c53=hyhyattcom&c55=01-16-2025%3B14%3A37%3A16&v55=01-16-2025%3B14%3A37%3A16&c56=
Full-Site&c58=isRightToLeft%3Afalse%2CallInPricing%3Atrue&c61=2.8.70&v68=0193dc397a7c0059c427e48783680507d001607500bd0&c69=rates_
modal_v3_test_group%3Breview_section_test_group%3Bmember_savings_control&v69=rates_modal_v3_test_group%3Breview_section_test_grou
p%3Bmember_savings_control&c70=4&c73=f6b87aaa-f118-46bd-9d2d-98d69127f920-57518-274&v91=Mozilla%2F5.0%20%28Windows%20NT%2010.0%3
B%20Win64%3B%20x64%29%20AppleWebKit%2F537.36%20%28KHTML%2C%20like%20Gecko%29%20Chrome%2F131.0.0.0%20Safari%2F537.36%20Edg%2F131.
0.0.0&v100=true&v101=Group%202&v104=crqzs&v125=standard&v127=Senior&v134=0.9665971303963983_1737054631612&v155=US&s=1920x1080&c=2
4&j=1.6&v=N&k=Y&bw=988&bh=689&mcorgid=D7B27FF452128BAA0A490D4C%40AdobeOrg&AQE=1

46. As shown by the purple highlights in the above excerpt of the Website's transmissions, Adobe intercepts the particular Hyatt hotel selected by users (here, "Hyatt Place San Diego/Vista-Carlsbad"). These communications are the product of button clicks on Website Screen 2.

AQB=1&ndh=1&pf=1&et=1&t=29%2F0%2F2025%2016%3A6%3A32%203%20300&d.&nsid=0&jsonv=1&.d&sdid=4E3D837646F9CD7D-1730291B4E7861C3&mid=694175915855638
70122130304090808999408&aamlh=9&ce=UTF-8&ns=hyatt&pageName=Resv%3AFlow1%3ACorp%3ARooms%3ARoomRateModal&g=https%3A%2F%2Fwww.hyatt.com%2Fshop%2
Frooms%2Fcrqzs%3FcheckinDate%3D2025-02-19%26checkoutDate%3D2025-02-20%26rooms%3D1%26adults%3D2%26kids%3D0%26rate%3DSenior&cc=USD&server=hyat
t.com&aamb=RKhpRz8krg2tLO6pguXWp5olkAcUniQYPHaMWWgdJ3xzPWQmdj0y&v2=KING&l2=rooms%20coachmark&l3=addOns%3Afalse%2CawardBooking%3Atrue%2CrateAf
terTax%3Afalse%2CreleaseSuiteUpgradeRedemption%3Atrue%2CreleaseSingleFreeNightRedemption%3Afalse%2CreleaseGOHRedemption%3Atrue%2CreleaseClubA
ccessRedemption%3Atrue%2CreleaseCoachMarkRatesModal%3Afalse%2CreleaseChaseOfferMay%3Atrue%2CreleaseVrcRedesign%3Afalse%2CreleaseViewDetails%3
Afalse%2CreleaseAllInPricingPhaseII%3Aregions%3A%5BNorth%20America%2CAm%C3%A9rique%20du%20Nord%2CLatin%20America%2CAm%C3%A9rique%20latine%2CC
aribbean%2CCara%C3%AFbes%5D%2CtaxCodes%3A%5BRF%2COF%2CPC%2CHF%5D%2Clocales%3A%5Ben-US%2Cfr-FR%5D%2CreleaseViewReviewRatings%3Atest%2CreleaseB
randRedesign%3Atrue%2CreleaseCancellationAndDepositCopy%3Aa%2CreleaseMemberSavingsRoomsAndRates%3Acontrol%2CreleaseFuelIntegration%3Afalse%2C
releaseTempAccessibleQB%3Atrue&c4=crqzs&c9=hyatt.com&c10=VisitorAPI%20Present&c11=ratetypes_modal&c20=&c21=0194aaa68b4400213050ba65946a0507d0
01607500bd0&v21=hyatt.com&v24=2025-02-19&v25=2025-02-20&c27=hyatt.com%3AResv%3AFlow1%3ACorp%3ARooms%3ARoomRateModal&c30=2&c32=2&c34=Vista&c35
=California&c36=US&c38=rooms%20coachmark&c41=Resv%3AFlow1%3ACorp%3ARooms%3ARoomRateModal&v41=Resv%3AFlow1%3ACorp%3ARooms%3ARoomRateModal&c44=
Group%202&v44=Resv%3AFlow1%3ACorp%3ARooms%3ARoomRateModal&v46=roomcard%3Acontent&v47=21&c48=Resv%3AFlow1%3ACorp%3ARooms%3ARoomRateModal&c49=r
oomcard%3Acontent&c50=%2Fshop%2Frooms%2Fcrqzs%3FcheckinDate%3D2025-02-19%26checkoutDate%3D2025-02-20%26rooms%3D1%26adults%3D2%26kids%3D0%26ra
te%3DSenior&c52=69417591585563870122130304090808999408&c53=hyhyattcom&c55=01-29-2025%3B16%3A6%3A32&v55=01-29-2025%3B16%3A6%3A32&c56=Full-Site
&c58=isRightToLeft%3Afalse%2CallInPricing%3Atrue&c61=2.8.70&v68=0194aaa68b4400213050ba65946a0507d001607500bd0&c69=member_savings_control&v69=
member_savings_control&c73=eebce3a7-aaff-47ea-84a2-d93388bc74e3-99408-244&v77=2&v91=Mozilla%2F5.0%20%28Windows%20NT%2010.0%3B%20Win64%3B%20x6
4%29%20AppleWebKit%2F537.36%20%28KHTML%2C%20like%20Gecko%29%20Chrome%2F132.0.0.0%20Safari%2F537.36%20Edg%2F132.0.0.0&v100=true&v101=Group%202
&v102=display_roomrate_modal&v104=crqzs&v125=standard&v127=Senior&v134=0.5231727484174642_1738183990590&v155=US&c.&a.&activitymap.&page=http
s%3A%2F%2Fwww.hyatt.com%2Fshop%2Frooms%2Fcrqzs%3FcheckinDate%3D2025-02-19%26checkoutDate%3D2025-02-20%26rooms%3D1%26adults%3D2%26kids%3D0%26r
ate%3DSenior&link=King%20Bed%20%28With%20Sofa%20Bed%29%20Rooms%20should%20always%20feel%2C%20well%2C%20roomy%20and%20we%20made%20no%20excepti
on%20here%20with%20separate%20sleeping%20and%20living%20a&region=room-cards-section-panel&.activitymap&.a&.c&s=1920x1080&c=24&j=1.6&v=N&k=Y&b
w=1860&bh=1291&mcorgid=D7B27FF452128BAA0A490D4C%40AdobeOrg&AQE=1

47. As shown by the brown highlight in the above excerpt of the Website's transmissions, Adobe intercepts the room type selected by users (here, "King%20Bed%20%28

With%20Sofa%20Bed" as in king bed with sofa bed). These communications are the product of button clicks on Website Screen 3.


activitymap.:
page: https://www.hyatt.com/search/hotels/en-US/San%20Diego%2C%20California%2C%20United%20States?checkinDate=2025-02-19&checkoutDate=2025-02-20&rooms=1&adults=2&kids=0&rate=Senior
link: VIEW RATES
region: main
.activitymap:
.a:



&activitymap.&page=https%3A%2F%2Fwww.hyatt.com%2Fshop%2Frooms%2Fcrqzs%3FcheckinDate%3D2025-02-19%26checkoutDate%3D2025-02-20%26rooms%3D1%26adults%3D2%26kids%3D0%26rate%3DSenior&link=SELECT%20%26%20BOOK&region=room-cards-section-panel&.activitymap&.a&.c&s=1920x1080&c=24&j=1.6&v=N&k=Y&bw=1860&bh=1291&mcorgid=D7B27FF452128BAA0A490D4C%40AdobeOrg&AQE=1



o%29%20Chrome%2F132.0.0.0%20Safari%2F537.36%20Edg%2F132.0.0.0&v100=true&v101=Group%202&v104=crqzs&v134=0.571587850663772_1738187266641&v155=US&pe=lnk_o&pev2=roomratemodal-BookButton&c.&a.&activitymap.&page=Resv%3AFlow1%3ACorp%3ARooms%3ARoomRateModal&link=BOOK&region=room_rates_modal&pageIDType=1&.activitymap&.a&.c&s=1920x1080&c=24&j=1.6&v=N&k=Y&bw=1860&bh=1291&mcorgid=D7B27FF452128BAA0A490D4C%40AdobeOrg&AQE=1


48. As shown by the orange highlights in the above excerpts of the Website's transmissions, Adobe intercepts miscellaneous other selections by users (here, "VIEW RATES"; "SELECT%20%26%20BOOK" as in Select & Book; and "BOOK"). These communications are the product of button clicks on Website Screens 2, 3, and 4.

### B. Meta

49. Meta, as enabled by Defendant, contemporaneously intercepts the following Website communications.


id: 623497044413616
ev: SubscribedButtonClick
dl: https://www.hyatt.com/
rl:
if: false
ts: 1737054742849
cd[buttonFeatures]: {"classList":"b-text_weight-normal b-ml6","destination":"https://www.hyatt.com/","id":"","imageUrl":"","innerText":"San Diego, California, United States","numChildButtons":0,"tag":"a","type":null,"name":""}
cd[buttonText]: San Diego, California, United States



id: 623497044413616
ev: SubscribedButtonClick
dl: https://www.hyatt.com/
rl:
if: false
ts: 1737054794330
cd[buttonFeatures]: {"classList":"","destination":"https://www.hyatt.com/HyattSearch","id":"","imageUrl":"url(\"https://www.hyatt.com/hds/static/migrate/0.27.0/images/calendar/cal-arrive-hover@2x.png\")","innerText":"19","numChildButtons":0,"tag":"button","type":"button","name":"","value":""}

id: 623497044413616
ev: SubscribedButtonClick
dl: https://www.hyatt.com/
rl:
if: false
ts: 1737054808154
cd[buttonFeatures]: {"classList":"","destination":"https://www.hyatt.com/HyattSearch","id":"","imageUrl":"url(\"https://www.hyatt.com/hds/static/migrate/0.27.0/images/calendar/cal-depart-hover@2x.png\")","innerText":"20","numChildButtons":0,"tag":"button","type":"button","name":"","value":""}

id: 623497044413616
ev: SubscribedButtonClick
dl: https://www.hyatt.com/
rl:
if: false
ts: 1737054882033
cd[buttonFeatures]: {"classList":"b-text_copy-3 be-text-body-1","destination":"javascript:void(0)","id":"","imageUrl":"url(\"data:image/svg+xml;base64,PD94bWwgdmVyc2lvbj0iMS4wIiBlbmNvZGluZz0iVVRGLTgiIHN0YW5kYWxvbmU9Im5vIj8+Cjxzdmcgd2lkdGg9IjEycHgiIGhlaWdodD0iMTJweCIgdmlld0JveD0iMCAwIDEyIDEyIiB2ZXJzaW9uPSIxLjEiIHhtbG5zPSJodHRwOi8vd3d3LnczLm9yZy8yMDAwL3N2ZyIgeG1sbnM6eGxpbms9Imh0dHA6Ly93d3cudzMub3JnLzE5OTkveGxpbmsiIHhtbG5zOnNrZXRjaD0iaHR0cDovL3d3dy5ib2hlbWlhbmNvZGluZy5jb20vc2tldGNoL25zIj4KICAgIDwhLS0gR2VuZXJhdG9yOiBza2V0Y2h0b29sIDMuNC40ICgzOTUpIC0gaHR0cDovL3d3dy5ib2hlbWlhbmNvZGluZy5jb20vc2tldGNoIC0tPgogICAgPHRpdGxlPngtY2FyYm9uPC90aXRsZT4KICAgIDxkZXNjPkNyZWF0ZWQgd2l0aCBza2V0Y2h0b29sLjwvZGVzYz4KICAgIDxkZWZzPjwvZGVmcz4KICAgIDxnIGlkPSJIZWFkZXIiIHN0cm9rZT0ibm9uZSIgc3Ryb2tlLXdpZHRoPSIxIiBmaWxsPSJub25lIiBmaWxsLXJ1bGU9ImV2ZW5vZGQiIHNrZXRjaDp0eXBlPSJNU1BhZ2UiPgogICAgICAgIDxnIGlkPSJBdXRoZW50aWNhdGVkLU1lbnUtKGRhcmspIiBza2V0Y2g6dHlwZT0iTVNBcnRib2FyZEdyb3VwIiB0cmFuc2Zvcm09InRyYW5zbGF0ZSgtMzEyLjAwMDAwMCwgLTE3LjAwMDAwMCkiIGZpbGw9IiMyODI4MjgiPgogICAgICAgICAgICA8cGF0aCBkPSJNMzE5LjA3NzIzMSwyMy4wMjgxOTI0IEwzMjQsMjguMDEzNDMyMiBMMzIyLjk5ODQ2MiwyOS4wMjgxOTI0IEwzMTgsMjMuOTY3MzA2MCBMMzEzLjAwMTUzOCwyOS4wMjgxOTI0IEwzMTIsMjguMDEzNDMyMiBMMzE2LjkyMjc2OSwyMy4wMjgxOTI0IEwzMTIsMTguMDQyOTUyNSBMMzEzLjAwMTUzOCwxNy4wMjgxOTI0IEwzMTgsMjIuMDg5MDc4NiBMMzIyLjk4NDYyNSwxNy4wMjgxOTI0IEwzMjQsMTguMDQyOTUyNSBMMzE5LjA3NzIzMSwyMy4wMjgxOTI0IiBpZD0ieC1jYXJib24iIHNrZXRjaDp0eXBlPSJNU1NoYXBlR3JvdXAiPjwvcGF0aD4KICAgICAgICA8L2c+CiAgICA8L2c+Cjwvc3ZnPg==\")","innerText":"1 Room, 2 Guests","numChildButtons":0,"tag":"a","type":null,"name":""}

id: 623497044413616
ev: SubscribedButtonClick
dl: https://www.hyatt.com/
rl:
if: false
ts: 1737054922806
cd[buttonFeatures]: {"classList":"b-text_copy-3 be-text-body-1","destination":"javascript:void(0)","id":"","imageUrl":"url(\"data:image/svg+xml;base64,PHN2ZyB4bWxucz0iaHR0cDovL3d3dy53My5vcmcvMjAwMC9zdmciIHdpZHRoPSI4IiBoZWlnaHQ9IjciPjxwYXRoIGZpbGw9IiMyODI4MjgiIGZpbGwtcnVsZT0iZXZlbm9kZCIgZD0iTTMuOTk5IDcuMDA3IDAgMGg3Ljk5OXoiLz48L3N2Zz4=\")","innerText":"Senior","numChildButtons":0,"tag":"a","type":null,"name":""}
cd[buttonText]: Senior

id: 623497044413616
ev: Search
dl: https://www.hyatt.com/search/hotels/en-US/San%20Diego%2C%20California%2C%20United%20States?checkinDate=2025-02-19&checkoutDate=2025-02-20&rooms=1&adults=2&kids=0&rate=Senior
rl:
if: false
ts: 1737055053048
cd[content_ids]: ["sanrs","sanis","sanxs","crqzs","sansw","jolla","sanjo","sanas","sanen","sanpa","tijzt","sando"]
cd[search_string]: San Diego, California, United States
cd[url]: /search/hotels/en-US/San%20Diego%2C%20California%2C%20United%20States
cd[search_city]: San Diego
cd[search_country]: United States
cd[search_state]: California
cd[page_type]: search_results
cd[checkin_weekday]: Wednesday
cd[checkin_date]: 2025-02-19
cd[checkout_date]: 2025-02-20
cd[num_adults]: 2
cd[num_children]: 0
cd[number_of_rooms]: 1
cd[number_of_travelers]: 2
cd[sc_page_title]: Resv:Flow1:Corp:HotelDisplay

50. As shown by the red highlights in the above excerpts of the Website's transmissions, Meta intercepts the destination selected by users (here, "San Diego, California, United States"). As shown by the yellow highlights, Meta intercepts the desired trip dates selected by users (here, "2025-02-19" and "2025-02-20"). As shown by the green highlights, Meta intercepts the numbers of rooms and guests selected by users (here, "1 Room, 2 Guests" with "2" adults and "0" children). As shown by the blue highlights, Meta intercepts the special rates selected by users (here, "Senior"). These communications are the product of button clicks on Website Screen 1.


id: 623497044413616
ev: AddToCart
dl: https://www.hyatt.com/shop/rooms/crqzs?checkinDate=2025-02-19&checkoutDate=2025-02-20&rooms=1&adults=2&kids=0&rate=Senior
rl:
if: false
ts: 1737056237075
cd[content_ids]: ["crqzs"]
cd[content_name]: ["Hyatt Place San Diego/Vista-Carlsbad"]
cd[url]: /shop/rooms/crqzs
cd[language]: en-US
cd[product_brand_id]: Hyatt Place
cd[product_id]: crqzs
cd[country]: US
cd[hotel_country_code]: US
cd[region]: California
cd[city]: Vista
cd[page_type]: room_types
cd[checkin_weekday]: Wednesday
cd[checkin_date]: 2025-02-19
cd[checkout_date]: 2025-02-20
cd[num_adults]: 2
cd[num_children]: 0
cd[number_of_rooms]: 1
cd[number_of_travelers]: 2
cd[hotel_name]: Hyatt Place San Diego/Vista-Carlsbad


51. As shown by the purple highlights in the above excerpt of the Website's transmissions, Meta intercepts the particular Hyatt hotel selected by users (here, "Hyatt Place San Diego/Vista-Carlsbad"). These communications are the product of button clicks on Website Screen 2.

id: 623497044413616
ev: PageView
dl: https://www.hyatt.com/shop/rooms/crqzs?checkinDate=2025-02-19&checkoutDate=2025-02-20&rooms=1&adults=2&kids=0&rate=Senior
rl:
if: false
ts: 1737056821664
cd[url]: /shop/rooms/crqzs
cd[product_brand_id]: Hyatt Place
cd[country]: US
cd[region]: California
cd[city]: Vista
cd[page_type]: ratetypes_modal
cd[checkin_weekday]: Wednesday
cd[checkin_date]: 2025-02-19
cd[checkout_date]: 2025-02-20
cd[num_adults]: 2
cd[num_children]: 0
cd[number_of_travelers]: 2
cd[room_type]: KING

52. As shown by the brown highlight in the above excerpt of the Website's transmissions, Meta intercepts the room type selected by users (here, "KING"). These communications are the product of button clicks on Website Screen 3.

id: 623497044413616
ev: SubscribedButtonClick
dl: https://www.hyatt.com/shop/rooms/crqzs?checkinDate=2025-02-19&checkoutDate=2025-02-20&rooms=1&adults=2&kids=0&rate=Senior
rl:
if: false
ts: 1737056966775
cd[buttonFeatures]: {"classList":"b-button select-combination-button b-text_weight-normal b-button_width-full@xs b-button_width-full@sm b-mb0@md b-button-shop b-mb2","destination":"https://www.hyatt.com/en-US/payment/details","id":"","imageUrl":"","innerText":"BOOK","numChildButtons":0,"tag":"button","type":"submit","name":"","value":""}
cd[buttonText]: BOOK

53. As shown by the orange highlights in the above excerpts of the Website's transmissions, Meta intercepts miscellaneous other selections by users (here, "BOOK"). This communication is the product of a button click on Website Screen 4.

## VI. Defendant Enables the Third Parties to Pair the Above Data with Users' Identities

54. As discussed *supra*, § IV, the Adobe and Meta tracking technologies at issue can pair wiretapped data with website users' identities.

55. The tracking technologies achieve this, at least in part, through cookies. A cookie is a "small text file (up to 4KB) created by a website that is stored in the user's computer either temporarily for that session only or permanently in storage

(persistent cookie)."[43] Persistent cookies can be used to "track user behavior across different sites. They store information such as geographic location, device specifications, and specific actions taken on the website."[44]

**A. Adobe**

56. Through the Adobe Experience Cloud Identity Service, in conjunction with the Adobe Experience Platform Identity Service, Adobe can identify individual website users with, *inter alia*, cookie IDs, cross-device IDs, device IDs, email addresses, and phone numbers.

57. The following image confirms that Defendant has enabled the Adobe Experience Cloud Identity Service on the Website.




**B. Meta**

58. Through Facebook cookies, Meta can identify individual website users by their respective Facebook accounts. Through advanced matching, Meta can also identify individual website users by the personal information they provide on websites (i.e., name, email address, phone number, etc.).

59. The following image confirms that, when a user accesses the Website while logged into Facebook, the Meta tracking technologies on the Website compel that user's browser to transmit several cookies, including the c_user; datr; fr; and _fbp[45] cookies:

---

[43] PC MAGAZINE, COOKIE TABLE, https://www.pcmag.com/encyclopedia/term/cookie.

[44] COOKIEBOT, WHAT ARE TRACKING COOKIES AND HOW DO THEY WORK?, https://www.cookiebot.com/en/tracking-cookies/.

[45] Note, the Meta Pixel uses both first- and third-party cookies. A first-party cookie is "created by the website the user is visiting"—*i.e.*, the Website. PC MAGAZINE,

| Name | Value | Domain |
| --- | --- | --- |
| _fbp | [redacted] | .hyatt.com |
| fr | [redacted] | .facebook.com |
| xs | [redacted] | .facebook.com |
| c_user | [redacted] | .facebook.com |
| sb | [redacted] | .facebook.com |
| presence | [redacted] | .facebook.com |
| wd | [redacted] | .facebook.com |
| datr | [redacted] | .facebook.com |

60. The c_user cookie contains, at least, the user's unencrypted Facebook ID.[46] The c_user cookie has a lifespan of three hundred sixty-five days.[47]

61. The datr cookie contains, at least, a value that uniquely identifies a browser.[48] The datr cookie has a lifespan of four hundred days.[49]

62. The fr cookie contains, at least, a value that uniquely identifies a browser and the user's encrypted Facebook ID.[50] The fr has a lifespan of ninety days.[51]

---

FIRST-PARTY COOKIE, https://www.pcmag.com/encyclopedia/term/first-party-cookie. A third-party cookie is "created by a website with a domain name other than the one the user is currently visiting"—*i.e.*, Facebook. PC MAGAZINE, THIRD-PARTY COOKIE, https://www.pcmag.com/encyclopedia/term/third-party-cookie. The _fbp cookie is always transmitted as a first-party cookie. A duplicate _fbp cookie is sometimes sent as a third-party cookie, depending on whether the browser has recently logged into Facebook. Pictured here and in the *infra* two images is the _fbp cookie, sent as a first-party cookie.

[46] MICROSOFT, COOKIE COMPLIANCE, https://learn.microsoft.com/en-us/dynamics365/commerce/cookie-compliance ("Cookie[:] c_user[.] Description[:] Cookie contains the user ID of the currently signed-in user.").

[47] FACEBOOK, COOKIES & OTHER STORAGE TECHNOLOGIES, https://www.facebook.com/policy/cookies/.

[48] *Id.* ("'Datr' is a unique identifier for your browser[.]").

[49] *Id.*

[50] DATA PROTECTION COMMISSIONER, FACEBOOK IRELAND LTD, REPORT OF RE-AUDIT (Sept. 21, 2012), http://www.europe-v-facebook.org/ODPC_Review.pdf ("The first part of the cookie is a browser ID, used to identify the web browser. The second part of the cookie is an encrypted version of the logged in user's Facebook ID.").

[51] FACEBOOK, COOKIES & OTHER STORAGE TECHNOLOGIES, https://www.facebook.com/policy/cookies/.

63. The _fbp cookie contains, at least, a value that uniquely identifies a browser.[52] The _fbp has a lifespan of ninety days.[53]

64. When a Website visitor's browser has recently logged out of an account, Facebook compels the visitor's browser to send a smaller set of cookies, including the datr, fr, and _fbp cookies:

| Name | Value | Domain |
|---|---|---|
| _fbp | [redacted] | .hyatt.com |
| wd | [redacted] | .facebook.com |
| sb | [redacted] | .facebook.com |
| fr | [redacted] | .facebook.com |
| datr | [redacted] | .facebook.com |

65. No matter the circumstances, Facebook compels the visitor's browser to transmit the _fbp cookie:

| Name | Value | Domain |
|---|---|---|
| _fbp | [redacted] | .hyatt.com |

66. Defendant also uses "Advanced Matching." With Advanced Matching, Defendant's Meta Pixels "look for recognizable form field and other sources on [the] website that contain information such as first name, last name and email."[54] That information is recorded, "along with the event, or action, that took place."[55]

67. Specifically, as part of Advanced Matching, Defendant enabled "Automatic Advanced Matching." That means Defendant configured the pixel to scan form fields containing a user's email address, first name, last name, phone

[52] *Id.* ("Cookie[:] _fbp[.] Description[:] These cookies identify browsers for businesses using our Meta Products for the purposes of providing advertising and site analytics services."). *See also* FACEBOOK, CUSTOMER INFORMATION PARAMETERS, https://developers.facebook.com/docs/marketing-api/conversions-api/parameters/customer-information-parameters#fbp ("The Facebook browser ID value is stored in the _fbp browser cookie[.]").

[53] FACEBOOK, COOKIES & OTHER STORAGE TECHNOLOGIES, https://www.facebook.com/policy/cookies/.

[54] META, ABOUT ADVANCED MATCHING FOR WEB, https://www.facebook.com/business/help/611774685654668.

[55] *Id.*

number, gender, zip code, city and state.[56] The highlighted line below shows that Defendant enabled Automatic Matching.

```
fbq.loadPlugin("automaticmatchingforpartnerintegrations");
instance.optIn("623497044413616", "AutomaticMatchingForPartnerIntegrations", true);
config.set(null, "batching", {
    "batchWaitTimeMs": 10,
    "maxBatchSize": 10
```

68. Thus, Meta, as enabled by Defendant, contemporaneously intercepts users' names, email address, phone numbers, and/or other personal details using the Meta Pixel on various pages of the Website. Although these personal details are "hashed,"[57] the reality is that, even in hashed form, they are traceable to individuals.[58]

69. Defendant discloses this information to Meta so that Meta can better match Website visitors to their Facebook profiles, thereby helping Defendant "[i]ncrease the number of attributed conversions," "[i]ncrease [their] Custom Audience size," and "[d]ecrease the cost per conversion."[59]

---

[56] *See* Meta, Advanced Matching, https://developers.facebook.com/docs/meta-pixel/advanced/advanced-matching; Meta, About Advanced Matching for Web, https://www.facebook.com/business/help/611774685654668.

[57] *Id.*

[58] *See, e.g.*, Federal Trade Commission, Does Hashing Make Data "Anonymous"?, https://www.ftc.gov/policy/advocacy-research/tech-at-ftc/2012/04/does-hashing-make-data-anonymous ("[H]ashing is vastly overrated as an 'anonymization' technique … the casual assumption that hashing is sufficient to anonymize data is risky at best, and usually wrong."); Federal Trade Commission, No, Hashing Still Doesn't Make Your Data Anonymous, https://www.ftc.gov/policy/advocacy-research/tech-at-ftc/2024/07/no-hashing-still-doesnt-make-your-data-anonymous ("[H]ashes aren't 'anonymous' and can still be used to identify users, and their misuse can lead to harm. Companies should not act or claim as if hashing personal information renders it anonymized."); Steven Englehardt et al., I Never Signed Up for This! Privacy Implications of Email Tracking, https://petsymposium.org/2018/files/papers/issue1/paper42-2018-1-source.pdf ("[H]ashing of PII, including emails, is not a meaningful privacy protection. This is folk knowledge in the security community, but bears repeating."); MarTech, FTC PrivacyCon: Your Email Address is Leaking and Vulnerable, https://martech.org/ftc-privacycon-email-address-leaking-vulnerable ("Hashing is an algorithmic process that turns [information] into a gibberish label[.] … Although gibberish, it's unique, so it can be employed as an anonymized identifier. It's supposed to be one-way, meaning that you can't turn the gibberish back into the [original form]. Wrong, says Englehardt and his colleagues.").

[59] Meta, About Advanced Matching for Web, https://www.facebook.com/business/help/611774685654668.

## VII. The Third Parties Use Californians' Data for their Own Purposes

70. When the Third Parties use their respective wiretaps on Website users' communications, the wiretaps are not like tape recorders or "tools" used by one party to record the other. Instead, the Third Parties – separate and distinct entities from the parties to the conversations—use the wiretaps to eavesdrop upon, record, extract data from, and analyze conversations to which they are not parties. The Third Parties, themselves, collect the contents of said conversations. That data is then analyzed by the Third Parties before being provided to any entity that was a party to the conversations (like Defendant).

71. The Third Parties each have the capability to use the contents of conversations they collect through their respective wiretaps for their own purposes.

72. In the "Adobe Experience Cloud Terms of Use," Adobe states: "You grant Adobe a worldwide, royalty-free, non-exclusive, transferable, and sublicensable license to adapt, display, distribute, modify, perform, publish, reproduce, translate, and use Your Materials for the purpose of operating, marketing and improving the Services and enabling your use of the Services."[60] Adobe defines "Materials" as "any materials provided by You, Adobe, or a third party, including without limitation any (a) user material, including usage and telemetry activities; (b) reports, text, code, data, documents, images, photographs, graphics, audio, videos, or webcasts; (c) products; or (d) Software."[61] Thus, Adobe has the capability to use the wiretapped data for purposes other than simply providing a recording to Defendant, including, but not limited to, operating, marketing, and improving its services.

73. In its "Meta Business Tools Terms,"[62] Meta confirms that it has the

---

[60] ADOBE, ADOBE EXPERIENCE CLOUD TERMS OF USE, https://www.adobe.com/content/dam/cc/en/legal/servicetou/Experience_Cloud_TOU_en_WW_20220608.pdf. *See also* ADOBE, LICENSES AND TERMS, https://www.adobe.com/legal/licenses-terms.html.

[61] *Id.*

[62] META, META BUSINESS TOOLS TERMS, https://m.facebook.com/legal/businesstech.

capability to use information it collects for purposes other than recording it and conveying it to Defendant. For instance, Meta can use the information it collects "to promote safety and security on and off the Meta Products, for research and development purposes and to maintain the integrity of and to provide and improve the Meta Products."[63] Further, Meta can "disclose [] Campaign Reports or Analytics … to [] third part[ies,] … [if] they have been combined with Campaign Reports and Analytics from numerous other third parties and [the advertiser using the Meta Business Tools has had its] identifying information [] removed from the combined Campaign Reports and Analytics."[64] And Meta can use the information it collects to "improve the effectiveness of ad delivery, [] determine the relevance of ads to people[,] … [and] personalize the features and content (including ads and recommendations) that [Meta] show[s] people on and off [] Meta Products."[65] Thus, Meta has the capability to use the wiretapped data for purposes other than simply providing a recording to Defendant, including, but not limited to, its own research and development; ad delivery; feature and content personalization; and product improvement, provision, and securement.

**VIII. Defendant Never Received Users' Consent to Disclose their Confidential Communications to the Third Parties**

74. Crucially, neither Defendant nor the Third Parties procure prior consent from Californians for Adobe or Meta to engage in this wiretapping.

75. Nowhere on the Website does Defendant provide notice of its privacy-related practices that is prominently displayed, designed to attract Website users' attention, and distinctive in appearance.

76. Nowhere on the Website does Defendant adequately disclose the tracking here at issue, including that:

---

[63] *Id.*

[64] *Id.*

[65] *Id.*

- The Third Parties, as enabled by Defendant, intercept the contents of Californians' communications on the Website, in real time.
- These communications include, but are not limited to, "guest records," which are affirmatively entered by users on the Website and confidential under Cal. Civil Code § 53.5(c). Namely, the Third Parties intercept Website users' button clicks selecting the destination to which they wish to travel, the desired dates for their trip, the number of rooms they require, the numbers of adults and children who will be traveling, and the particular hotel and room type in which they wish to stay. The Third Parties also intercept the URL of webpages visited by Website users – containing the foregoing communications.
- This information is not anonymized because Defendant enables the Third Parties to link users' communications with personal information that reveals their identities. Such personal information includes cookie IDs/the values contained in cookies, cross-device IDs, device IDs, email addresses, and/or phone numbers, which constitute "record[s] that identif[y] an individual[.]" Cal. Civil Code § 53.5(c).

77. Nowhere on the Website does Defendant request or receive Website users' affirmative consent *prior to* enabling the Third Parties' tracking technologies. Analysis of the Website reveals that the Third Parties' tracking technologies are active as soon as the Website loads, before Website users could even conceivably be put on notice or provide affirmative consent.

## CLASS ALLEGATIONS

78. Plaintiff seeks certification of the following class: all California residents who have accessed and navigated the Website while in California (the "Class").

79. Plaintiff reserves the right to modify the Class definition, including by using subclasses, as appropriate based on further investigation and discovery obtained in the case.

80. The following people are excluded from the Class: (1) any Judge presiding over this action and members of her or her family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest (including current and former employees, officers, or directors); (3) persons who properly execute and file a timely

request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

81. **Numerosity:** The number of persons within the Class is substantial and believed to amount to thousands, if not millions of persons. It is, therefore, impractical to join each member of the Class as a named plaintiff. Further, the size and relatively modest value of the claims of the individual members of the Class render joinder impractical. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation. Moreover, the Class is ascertainable and identifiable from Defendant's records.

82. **Commonality and Predominance:** There are well-defined common questions of fact and law that exist as to all members of the Class and that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary between members of the Class, and which may be determined without reference to the individual circumstances of any Class member, include, but are not limited to, the following: whether Defendant violated CIPA §§ 631 and 632 and whether Plaintiff and the proposed Class members are entitled to damages, reasonable attorneys' fees, pre-judgment interest and costs of this suit.

83. **Typicality:** The claims of the named Plaintiff are typical of the claims of the Class because the named Plaintiff, like all other class members, visited the Website and had his confidential electronic communications intercepted and disclosed to the Third Parties.

84. **Adequate Representation:** Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent counsel experienced in prosecuting

class actions, and he intends to prosecute this action vigorously. The interests of members of the Class will be fairly and adequately protected by Plaintiff and his counsel.

85. **Superiority:** The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of members of the Classes. Each individual member of the Class may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## CAUSES OF ACTION

### COUNT I
### Violation of the California Invasion of Privacy Act, Cal. Penal Code § 631(a)

86. Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

87. Plaintiff brings this Count individually and on behalf of the members of the Class.

88. CIPA § 631(a) imposes liability for "distinct and mutually independent patterns of conduct." *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192-93 (1978). Thus, to establish liability under CIPA § 631(a), a plaintiff need only establish that

the defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of the following:

> Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,
>
> *Or*
>
> Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,
>
> *Or*
>
> Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,
>
> *Or*
>
> Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

89. CIPA § 631(a) is not limited to phone lines, but also applies to "new technologies" such as computers, the Internet, and email. *See Matera v. Google Inc.*, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *see also Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022) ("Though written in terms of wiretapping, Section 631(a) applies to Internet communications.").

90. The Third Parties' tracking technologies are each a "machine, instrument, contrivance, or … other manner" used to engage in the prohibited conduct at issue here.

91. Each of the Third Parties is a "separate legal entity that offers [a] 'software-as-a-service' and not merely a passive device." *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520 (C.D. Cal. 2021). Further, the Third Parties have the capability to use the wiretapped information for their own purposes. Accordingly, Adobe and Meta were third parties to any communication between Plaintiff and Class Members, on the one hand, and Defendant, on the other. *Id.* at 521; *see also Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023).

92. At all relevant times, by their tracking technologies, the Third Parties willfully and without the consent of all parties to the communication, or in any unauthorized manner, read, attempted to read, and/or learned the contents or meaning of electronic communications of Plaintiff and Class Members, on the one hand, and Defendant, on the other, while the electronic communications were in transit or were being sent from or received at any place within California.

93. At all relevant times, the Third Parties used or attempted to use the communications intercepted by their tracking technologies for their own purposes.

94. At all relevant times, Defendant aided, agreed with, employed, permitted, or otherwise enabled the Third Parties to wiretap Plaintiff and Class Members using the Third Parties' tracking technologies and to accomplish the wrongful conduct at issue here.

95. Plaintiff and Class Members did not provide their prior consent to the Third Parties' intentional access, interception, reading, learning, recording, collection, and usage of Plaintiff's and Class Members' electronic communications. Nor did Plaintiff and Class Members provide their prior consent to Defendant aiding, agreeing with, employing, permitting, or otherwise enabling the Third Parties' conduct.

96. The wiretapping of Plaintiff and Class Members occurred in California, where Plaintiff and Class Members accessed the Website and where the Third Parties – as enabled by Defendant – routed Plaintiff's and Class Members' electronic communications to the Third Parties' servers.

97. Pursuant to Cal. Penal Code § 637.2, Plaintiff and Class Members have been injured by Defendant's violations of CIPA § 631(a), and each seeks statutory damages of $5,000 for each of Defendant's violations of CIPA § 631(a).

**COUNT II**
**Violation of the California Invasion of Privacy Act,**
**Cal. Penal Code § 632**

98. Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

99. Plaintiff brings this Count individually and on behalf of the members of the Class.

100. CIPA § 632(a) prohibits an entity from:

> intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio.

101. The Third Parties' tracking technologies are "electronic amplifying or recording device[s]." *Id.*

102. Cal. Civ. Code § 53.5(a) states:

> [A]n innkeeper, hotelkeeper, motelkeeper, lodginghouse keeper, or owner or operator of an inn, hotel, motel, lodginghouse, or other similar accommodations, or any employee or agent thereof, who offers or accepts payment for rooms, sleeping accommodations, or board and lodging, or other similar accommodation, shall not disclose, produce, provide, release, transfer, disseminate, or otherwise communicate, except to a California peace officer, all or any part of a guest record orally, in writing, or by electronic or any other means to a third party without a court-issued subpoena, warrant, or order.

103. Per Cal. Civil Code § 53.5(c):

> "Guest record" for purposes of this section includes any record that identifies an individual guest, boarder, occupant, lodger,

> customer, or invitee, including, but not limited to, their name, social security number or other unique identifying number, date of birth, location of birth, address, telephone number, driver's license number, other official form of identification, credit card number, or automobile license plate number.

104. Here, Website users' communications with Defendant – made while browsing and booking Hyatt hotels via the Website – contain sensitive and confidential "guest records," as defined by Cal. Civil Code § 53.5.

105. First, the communications include "record[s] that identif[y] an individual[.]" Cal. Civil Code § 53.5(c). Defendant enables Adobe to identify individual Website users with the Adobe Experience Cloud Identity Service and/or Adobe Experience Platform Identity Service, which collect and utilize cookie IDs, cross-device IDs, device IDs, email addresses, and/or phone numbers. Defendant enables Meta to identify individual Website users by their respective Facebook accounts, utilizing several cookies, including the c_user; datr; fr; and _fbp cookies. Defendant also enables Meta to identify individual Website users through advanced matching, by which Meta records the contact details Website users provide on the Website (i.e., name, email address, phone number, etc.). These pieces of data collected by Adobe and Meta constitute "record[s] that identif[y] an individual" (Cal. Civil Code § 53.5(c)), as the cookies and other IDs at issue contain "unique identifying number[s]" assigned to Website users (*id.*) and the contact details (i.e., name, email address, phone number, etc.) at issue are sufficient to identify individuals. *Id.*

106. Second, Website users' communications with Hyatt "identif[y] an individual [as a Hyatt] guest, boarder, occupant, lodger, customer, or invitee[.]" *Id.* The Third Parties intercept Website users' button clicks selecting the destination to which they wish to travel, the desired dates for their trip, the number of rooms they require, the numbers of adults and children who will be traveling, and the particular hotel and room type in which they wish to stay. The Third Parties also intercept the

URL of webpages visited by Website users – containing the foregoing communications. These communications "identif[y] an individual [as a Hyatt] guest, boarder, occupant, lodger, customer, or invitee" (Cal. Civil Code § 53.5(c)) because they show that all Website users are "invitees" of Hyatt – individuals with "express or implied invitation to enter or use [Hyatt's] premises."[66] These communications also identify certain Website users (those who complete the booking process) as Hyatt hotel "guests" and "customers."

107. Thus, the Third Parties – as aided by Defendant – intercepted "guest records," which are confidential, under Cal. Civil Code § 53.5. Moreover, neither of the Third Parties is a legitimate "third-party service provider," as defined by Cal. Civil Code § 53.5(f), because neither of the Third Parties is "an entity contracted to provide services outlined in [a] contract [with Hyatt] that has no independent right to use or share the data beyond the terms of the contract." Rather, the Third Parties have the capability to use the information they wiretap for purposes other than simply providing a recording to Defendant. Therefore, Defendant's conduct here at issue was not permitted by, *inter alia*, Cal. Civil Code § 53.5(i).

108. When communicating with Defendant, Plaintiff and Class Members had an objectively reasonable expectation of privacy, based on Cal. Civil Code § 53.5. Thus, Plaintiff and Class Members did not reasonably expect that anyone other than Defendant would be on the other end of the communication, and that other, third-party entities like Adobe and Meta, would intentionally use an electronic amplifying or recording device to eavesdrop upon and record the confidential communications of Plaintiff and Class Members.

109. Plaintiff and Class Members did not consent to any of the Third Parties' actions. Nor have Plaintiff or Class Members consented to the Third Parties' intentional use of an electronic amplifying or recording device to eavesdrop upon and record the confidential communications of Plaintiff and Class Members.

---

[66] INVITEE, Black's Law Dictionary (11th ed. 2019).

110. Pursuant to Cal. Penal Code § 637.2, Plaintiff and Class Members have been injured by Defendant's violations of CIPA § 632(a), and each seeks statutory damages of $5,000 for each of Defendant's violations of CIPA § 632(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a) For an order certifying the Class, naming Plaintiff as representative of the Class, and naming Plaintiff's attorneys as Class Counsel to represent the Class;

(b) For an order declaring that Defendant's conduct violates the statute referenced herein;

(c) For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d) For actual, compensatory, statutory, and/or punitive in amounts to be determined by the Court and/or jury;

(e) For prejudgment interest on all amounts awarded;

(f) For an order of restitution and all other forms of equitable monetary relief;

(g) For injunctive relief as pleaded or as the Court may deem proper; and

(h) For an order awarding Plaintiff and the Class their reasonable attorneys' fees, expenses, and costs of suit.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated: April 11, 2025

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: *\/s/ Philip L. Fraietta*
Philip L. Fraietta

Philip L. Fraietta (State Bar No. 354768)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019

Telephone: (646)-837-7150
Facsimile: (212) 989-9163
Email: pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
Stefan Bogdanovich (State Bar No. 324525)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: sbogdanovich@bursor.com

*Attorneys for Plaintiff*