Terence N. Hawley (SBN 179106)
Email: thawley@reedsmith.com
Quynh La (SBN 341162)
Email: qla@reedsmith.com
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, CA 94105-3659
Phone: (415) 543-8700
Fax: (415) 391-8269

*Attorneys for Defendant*
*Hyatt Corporation*

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

JUHYUN SO, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

HYATT CORPORATION,

Defendant.

Case No. 2:25−cv−01298−AB−SSC

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO TRANSFER VENUE OR, IN THE ALTERNATIVE, TO DISMISS AND STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

Date: June 6, 2025
Time: 10:00 a.m.
Judge: Hon. André Birotte Jr.
Courtroom: Courtroom 7B
First Street Courthouse
350 W. 1st Street, 10th Fl.
Los Angeles, CA 90012

Action Filed: February 14, 2025

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE THAT on June 6, 2025, at 10:00 a.m., or as soon thereafter as this matter may be heard by the Honorable Andre Birotte Jr. in Courtroom 7B of the above-entitled Court, located at First Street Courthouse, 350 W. 1st Street, 7th Floor, Los Angeles, California 90012, Defendant Hyatt Corporation ("Hyatt") will, and hereby does, move this Court for an order transferring this action to the U.S. District Court for the Northern District of Illinois, or, alternatively, dismissing with prejudice Plaintiff Juhyun So's ("Plaintiff") First Amended Complaint ("FAC"), and each claim asserted therein, and striking his class allegations and prayer for punitive relief and other remedies.

Hyatt brings this motion pursuant to 28 U.S.C. § 1404(a) and Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(6), and 12(f) because Plaintiff consented to exclusive jurisdiction in Chicago, Illinois, has not carried his burden to establish standing or personal jurisdiction, and fails to state or properly plead a claim for relief. This motion is based on this Notice of Motion and Motion to Dismiss, the supporting Memorandum of Points and Authorities, the Declarations of Tammy Cave and Keith Clark, the Request for Judicial Notice, and all pleadings, arguments, and matters before the Court.

**Local Rule 7-3 Statement of Compliance**: This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on May 2, 2025.

DATED: May 9, 2025

REED SMITH LLP

By: */s/ Terence N. Hawley*
Terence N. Hawley (SBN 179106)

*Attorneys for Defendant*
*Hyatt Corporation*

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## TABLE OF CONTENTS


Page

I . INTRODUCTION ..... 1

II . FACTUAL BACKGROUND ..... 2

A. Plaintiff's Allegations Regarding His Use of Hyatt's Website ..... 2

B. Plaintiff Consented to Venue in Illinois Through His World of Hyatt Membership and Use of the Website ..... 3

C. Plaintiff Expressly Consented to the Sharing of His Information ..... 4

III . THE COURT SHOULD TRANSFER THIS MATTER TO THE NORTHERN DISTRICT OF ILLINOIS ..... 7

IV . ALTERNATIVELY, THE COURT SHOULD DISMISS THIS CASE BECAUSE PLAINTIFF LACKS ARTICLE III STANDING ..... 9

V . THE COURT SHOULD DISMISS THIS CASE FOR LACK OF PERSONAL JURISDICTION OVER HYATT ..... 10

VI . PLAINTIFF FAILS TO STATE A CLAIM UNDER CIPA ..... 12

A. Plaintiff's Consent Bars His CIPA Claims ..... 12

B. Plaintiff Fails to State a Claim Under Section 631(a) ..... 14

1. Section 631(a) Does Not Apply to the Technologies in Question ..... 15

2. Section 631(a) Does Not Apply Because Hyatt Was a Party to the Alleged Communications ..... 15

3. Plaintiff Fails to Allege Adobe or Meta Read the Contents of Communications ..... 16

4. Plaintiff Fails to Allege Interception in Transit ..... 17

5. Plaintiff Fails to Plausibly Allege Aiding and Abetting by Hyatt ..... 19

C. Plaintiff Fails to State a Claim Under Section 632 ..... 19

D. Plaintiff's Class Allegations and Claims for Punitive, Equitable and Other Relief Should Be Stricken ..... 20

VII . CONCLUSION ..... 22

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adler v. Community*,
2021 U.S. Dist. LEXIS 201644 (C.D. Cal. Aug. 2, 2021) ................................ 17

*Allen v. Shutterfly, Inc.*,
2020 U.S. Dist. LEXIS 167910 (N.D. Cal. Sep. 14, 2020) ................................ 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................ 12

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
571 U.S. 49 (2013) ................................ 7

*Briskin v. Shopify*,
2025 U.S. App. LEXIS 9410 (9th Cir. Apr. 21, 2025) ................................ 11

*Brown v. Nano Hearing Tech Opco, LLC*,
2024 U.S. Dist. LEXIS 120371 (S.D. Cal. July 9, 2024) ................................ 21

*Byars v. Hot Topic, Inc.*,
656 F. Supp. 3d 1051 (C.D. Cal. 2023) ................................ 15, 16

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) ................................ 20

*Cody v. Boscov's, Inc.*,
2024 U.S. Dist. LEXIS 82332 (C.D. Cal. May 6, 2024) ................................ 16, 18

*Cody v. Lacoste USA, Inc.*,
2024 U.S. Dist. LEXIS 135843 (C.D. Cal. July 30, 2024) ................................ 14, 18

*Cole v. Quest Diagnostics, Inc.*,
2025 U.S. Dist. LEXIS 7205 (D.N.J. Jan. 14, 2025) ................................ 16

*Doe v. Microsoft Corp.*,
2023 U.S. Dist. LEXIS 226041 (W.D. Wash. Dec. 19, 2023) ................................ 15, 19

*Earthmade Prods., LLC v. Botanicals Internacional S.A. de C.V.*,
2022 U.S. Dist. LEXIS 26437 (C.D. Cal. Feb. 1, 2022) ................................ 7, 9



REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*Esparza v. Uag Escondido A1 Inc.*,
2024 U.S. Dist. LEXIS 145236 (S.D. Cal. Aug. 5, 2024) .................................. 14

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .................................. 15

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
528 U.S. 167 (2000) .................................. 9

*Garcia v. Enter. Holdings, Inc.*,
78 F. Supp. 3d 1125 (N.D. Cal. 2015) .................................. 13

*In re Google Assistant Privacy Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .................................. 12, 15

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) .................................. 19

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .................................. 16

*Hammerling v. Google LLC*,
2022 U.S. Dist. LEXIS 217020 (N.D. Cal. Dec. 1, 2022) .................................. 18

*Heiting v. Marriott Int'l, Inc.*,
743 F. Supp. 3d 1163 (C.D. Cal. 2024) .................................. 12

*Hernandez v. State Farm Fire & Cas. Co.*,
2017 U.S. Dist. LEXIS 34174 (S.D. Cal. Mar. 9, 2017) .................................. 21

*Hernandez v. TLC of the Bay Area, Inc.*,
263 F. Supp. 3d 849 (N.D. Cal. 2017) .................................. 12

*Hightower v. JPMorgan Chase Bank, N.A.*,
2012 U.S. Dist. LEXIS 195643 (C.D. Cal. Sep. 12, 2012) .................................. 22

*Impossible Foods Inc. v. Impossible X LLC*,
80 F.4th 1079 (9th Cir. 2023) .................................. 10

*Jones v. GNC Franchising, Inc.*,
211 F.3d 495 (9th Cir. 2000) .................................. 7

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023)....................17

*Konop v. Hawaiian Airlines, Inc.*,
302 F. 3d 868, 878 (9th Cir. 2002)....................17

*LaCross v. Knight Transp., Inc.*,
95 F. Supp. 3d 1199 (C.D. Cal. 2015)....................7, 8

*Lakes v. Ubisoft, Inc.*,
2025 U.S. Dist. LEXIS 67336 (N.D. Cal. Apr. 1, 2025)....................12

*Landec Corp. v. Certain Underwriters at Lloyds*,
2021 U.S. Dist. LEXIS 255145 (C.D. Cal. Dec. 28, 2021)....................9

*Licea v. Am. Eagle Outfitters, Inc.*,
659 F. Supp. 3d 1072 (C.D. Cal. 2023)....................15, 16, 18

*Licea v. Caraway Home Inc.*,
655 F. Supp. 3d 954 (C.D. Cal. 2023)....................11

*Licea v. Cinmar, LLC*,
659 F. Supp. 3d 1096 (C.D. Cal. 2023)....................15, 16

*Licea v. Old Navy, LLC*,
669 F. Supp. 3d 941 (C.D. Cal. 2023)....................16

*Lindsay-Stern v. Garamszegi*,
2016 U.S. Dist. LEXIS 203693 (C.D. Cal. Oct. 13, 2016)....................18

*Lozano v. City of L.A.*,
73 Cal. App. 5th 711 (2022)....................19

*Lyons v. Bank of Am.*,
2011 U.S. Dist. LEXIS 145176 (N.D. Cal. Dec. 16, 2011)....................21

*M/S Bremen v. Zapata Off-Shore Co.*,
407 U.S. 1 (1972)....................7, 9

*Massie v. GM Co.*,
2021 U.S. Dist. LEXIS 99945 (E.D. Cal. May 25, 2021)....................11



REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) .......... 14, 15

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023) .......... 11

*Moreno v. S.F. Bay Area Rapid Transit Dist.*,
2017 U.S. Dist. LEXIS 206009 (N.D. Cal. Dec. 14, 2017) .......... 19

*NovelPoster v. Javitch Canfield Grp.*,
140 F. Supp. 3d 938 (N.D. Cal. 2014) .......... 17

*People v. Stipo*,
195 Cal. App. 4th 664 (2011) .......... 20

*Peter v. DoorDash, Inc.*,
445 F. Supp. 3d 580 (N.D. Cal. 2020) .......... 8

*Revitch v. New Moosejaw, LLC*,
2019 U.S. Dist. LEXIS 186955 (N.D. Cal. Oct. 23, 2019) .......... 20

*Rodriguez v. Google LLC*,
2021 U.S. Dist. LEXIS 98074 (N.D. Cal. May 21, 2021) .......... 19, 20

*Sanders v. Apple, Inc.*,
672 F. Supp. 2d 978 (N.D. Cal. 2009) .......... 21

*Santa Clara Valley Water Dist. v. Olin Corp.*,
2007 U.S. Dist. LEXIS 76117 (N.D. Cal. Sep. 28, 2007) .......... 22

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) .......... 11

*Silver v. Stripe Inc.*,
2021 U.S. Dist. LEXIS 141090 (N.D. Cal. July 28, 2021) .......... 13

*Smith v. Facebook, Inc.*,
745 F. App’x 8 (9th Cir. 2018) .......... 12

*Smith v. Yeti Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) .......... 19

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)....................9

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023)....................15, 16

*Tavernetti v. Superior Court of San Diego Cty.*,
22 Cal. 3d 187 (1978)....................14

*Tietsworth v. Sears*,
720 F. Supp. 2d 1123 (N.D. Cal. 2010)....................21

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)....................9, 10

*Urista v. Wells Fargo & Co.*,
2022 U.S. Dist. LEXIS 5664 (S.D. Cal. Jan. 11, 2022)....................7

*Valenzuela v. Keurig Green Mountain*,
674 F. Supp. 3d 751 (N.D. Cal. 2023)....................18

*Valenzuela v. Keurig Green Mt., Inc.*,
2023 U.S. Dist. LEXIS 182222 (N.D. Cal. Oct. 10, 2023)....................10

*In re Vizio, Inc.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017)....................17, 18

*Walden v. Fiore*,
571 U.S. 277 (2014)....................10

*Whittlestone, Inc. v. Handi-Craft Co.*,
618 F.3d 970 (9th Cir. 2010)....................21

*Williams v. What If Holdings, LLC*,
2022 U.S. Dist. LEXIS 230732 (N.D. Cal. Dec. 22, 2022)....................15, 16

*Winsor v. Sequoia Benefits & Ins. Servs., LLC*,
62 F.4th 517 (9th Cir. 2023)....................9

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014)....................17

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**Statutes**

28 U.S.C. § 1404(a) .......................................................................................... 7

Cal. Civ. Code § 53.5 .................................................................................. 17, 20

Cal. Civ. Proc. Code § 340 ............................................................................ 21

Cal. Penal Code § 631 ......................................................................... *passim*

Cal. Penal Code § 632 ......................................................................... *passim*

**Rules**

Fed. R. Civ. P. 12 ..................................................................... 12, 14, 20

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## I. INTRODUCTION

This case is another salvo in a barrage of lawsuits seeking to extend the California Invasion of Privacy Act ("CIPA")—a statute focused on wiretapping of telephone conversations—to routine web-browsing activities. Plaintiff, a Facebook member, alleges in general terms that he visited and booked rooms on Hyatt's website in 2024 and Hyatt aided the nonconsensual "interception" of information on his booking preferences by Meta, Adobe, and unnamed "third parties."[1] But his claims are based on assertions that Meta and Adobe have the "capability" to misuse information, and he relies on CIPA's statutory damages provision to establish his purported "injury." Plaintiff's claims should not move forward in this Court.

The Court should transfer this case to the Northern District of Illinois based on the exclusive venue provision to which Plaintiff expressly consented through his membership in Hyatt's loyalty program and his ongoing use of the Website. Alternatively, the FAC should be dismissed for lack of standing, lack of personal jurisdiction, and failure to state a claim.

***First***, Plaintiff has not alleged any Article III injury. While he speculates about possible uses of his information by third parties, he fails to assert plausible facts showing concrete harm. ***Second***, this Court lacks specific personal jurisdiction over Hyatt because Plaintiff fails to allege Hyatt's operation of a globally available website amounted to purposeful direction of its conduct towards California. ***Third***, Plaintiff fails to state a CIPA claim because he consented to the information sharing about which he now complains. ***Fourth***, Plaintiff's section 631(a) claim fails because he has not alleged any predicate violations by Meta or Adobe, let alone that Hyatt aided or abetted such violations. ***Fifth***, Plaintiff's section 632 claim fails because the statute is inapplicable to the technologies at issue, and Plaintiff fails to plausibly allege that any of his

---

[1] Mr. So appears to be a Plaintiff in at least one other lawsuit raising similar claims. *See* Request for Judicial Notice ("RJN") Ex. 15.



REED SMITH LLP
A limited liability partnership formed in the State of Delaware

purported communications were "confidential." ***Sixth***, the Court should strike Plaintiff's class allegations and his prayer for punitive, compensatory, and equitable relief. Plaintiff's class definition covers all California residents who accessed Hyatt's website over an unlimited period, as opposed to only those who, like Plaintiff, "booked" hotel rooms in 2024, and Plaintiff offers no support for his requested remedies.

## II. FACTUAL BACKGROUND

### A. Plaintiff's Allegations Regarding His Use of Hyatt's Website

Plaintiff alleges that, after creating a Facebook account "in or around November 2010," he accessed Hyatt's website, www.hyatt.com (the "Website"), while in California. Dkt. 15 ¶3. Plaintiff contends he visited the Website "[n]umerous times, including on or around February 19, 2024; September 21, 2024; and November 20, 2024," with the same browser he used to access Facebook. *Id*. Plaintiff asserts "[u]pon accessing the Website, [he] browsed and booked a Hyatt hotel." *Id.* Plaintiff claims these "communications" were "intercepted" by Meta and Adobe, including communications containing Plaintiff's "confidential 'guest records.'" *Id.* Although Plaintiff alleges Exhibit A to the FAC is a Meta report that "evinces activity received from the Website," it merely references "82 interactions," with no details.

Later in the FAC, Plaintiff purports to describe and depict a booking flow for unidentified "Website users." *Id.* ¶¶27-30. Plaintiff alleges users input or select information to determine booking options, including destination, date, and the number of rooms and guests. *Id.* ¶27. Plaintiff contends Hyatt "has integrated [Meta's and Adobe's] wiretaps into the Website" [*id.* ¶23] and that Meta and Adobe "contemporaneously intercept Website users' button clicks selecting such items." *Id.* ¶27. While Plaintiff alleges users "check out" by entering contact and payment information [*id.* ¶30], he ***does not*** allege this information was shared with third parties. The FAC then offers a series of images purporting to depict interception of booking parameters, without connecting those images or allegations to Plaintiff's transactions.





REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*Id.* ¶¶44-53. Similarly, Plaintiff suggests Meta and Adobe "can pair" booking data to users' identities through "tracking technologies" and "cookies" [*id.* ¶54] and he devotes several pages to Adobe and Meta promotional materials and other sources describing the marketing "capability" of various services in the abstract. *Id.*¶¶54-73. But again, Plaintiff fails to allege Hyatt used any particular "capabilities" in connection with *his* Website visits, nor does he specify when, how, or on what pages Hyatt purportedly implemented any specific capabilities. *Id.* ¶¶3, 33-73. Plaintiff admits "these personal details are 'hashed,'" but asserts "they are traceable," citing publications suggesting hashing is "overrated." *Id.* ¶68.

**B. Plaintiff Consented to Venue in Illinois Through His World of Hyatt Membership and Use of the Website**

Based on Hyatt's records, the only customer named Juyhun So with booking patterns aligned with those alleged in the FAC has been a World of Hyatt member since at least June 15, 2018.[2] Declaration of Tammy Cave ("Cave Decl.") ¶5. Hyatt's records reflect approximately 150 transactions under this membership between 2018 and 2025. *Id.* Plaintiff's World of Hyatt membership was established through the Website. To enroll, users were (and are) presented with the following screen:




The enrollment page alerted users that "[b]y joining, you are agreeing to the World of Hyatt Terms & Conditions. We collect and use your personal information in accordance with our Privacy Policies." *Id.* ¶¶6, 7, Ex. 9-10. The references to the World

[2] During the pre-motion meet and confer session on May 2, 2025, Hyatt asked Plaintiff's counsel whether they had any information to dispute that the World of Hyatt account belonged to Plaintiff. Plaintiff's counsel have provided no such information.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

of Hyatt Terms & Conditions and Privacy Policies are hyperlinked in conspicuous blue font that contrasts with the adjacent grey text and appear directly above the "Join Now" button in the user registration flow. *Id.* Users can only complete their enrollment via the Website by clicking "Join Now." *Id.*

From at least March 1, 2017 to the present, the World of Hyatt Terms & Conditions have included a section labeled "GOVERNING LAW/CHOICE OF FORUM," stating that ***"[e]xclusive jurisdiction over any cause of action arising out of or related to the Program or these Terms will be in state or federal courts located in or having jurisdiction over Chicago, Illinois, U.S.A. You further agree to submit to the exercise of personal jurisdiction of such courts for the purpose of litigating any such claim or action."*** *Id.* ¶10 (emphasis added); *see also id.* Ex. 11-12. In addition, Hyatt posts on the Website separate terms and conditions governing use of the Website and other electronic platforms ("Website Terms & Conditions"). Declaration of Keith Clark ("Clark Decl.") ¶14-16, Ex. 6-8. Since at least April 2018, the Website Terms & Conditions have included language establishing ***"[e]xclusive" jurisdiction in "state or federal courts located in Chicago, Illinois, U.S.A."*** *Id.* ¶16, Ex. 7-8 (emphasis added).

**C. Plaintiff Expressly Consented to the Sharing of His Information**

Plaintiff's FAC includes partial screenshots purporting to depict the Website's booking process. Dkt. 15 ¶¶3, 27-30. But the screenshots in the FAC omit key portions of the user interface. Clark Decl. ¶5, Ex. 1. Users can reserve rooms on the Website without joining World of Hyatt or logging in to their account. However, to complete the booking process***, all users*** must consent to the Privacy Policy for Guests via the following screen:

REED SMITH LLP
A limited liability partnership formed in the State of Delaware




The booking workflow states: "I have read and acknowledge the use of my personal information in accordance with the Hyatt Privacy Policies." *Id.* ¶6, Ex. 1. The Privacy Policies are hyperlinked in conspicuous blue text that contrasts with the adjacent black text, and the link appears directly above the "BOOK MY STAY" button. *Id.* Users can only complete their reservation by clicking "BOOK MY STAY." *Id.* This same process applied throughout 2024 when Plaintiff allegedly booked rooms on the Website. *Id.*

Hyatt's Privacy Policy for Guests, effective December 2022, would have appeared on the Website during Plaintiff's alleged 2024 visits via the aforementioned hyperlink and other links on the Website. *Id.* ¶7, Ex. 2; *see also id.* Ex. 3. The December 2022 Privacy Policy for Guests contained the following language under "Information We May Collect":

> Stay and Purchase Information: we may collect information such as the hotels where you have stayed or booked a stay, dates of arrival and departure, goods and services purchased or utilized at Hyatt Locations or on the Website or Application, physical and digital room key usage, special requests made, service and stay preferences (Including room and vacation preferences), telephone numbers dialed and faxes sent, calls or messages received, and any feedback or content you provide to us regarding your stay [. . . ]

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*Id.* ¶8, Ex. 2. The December 2022 Privacy Policy for Guests also contained the following language in section 8.2, "Cookies and Other Tracking Technologies":

> We and other parties use cookies, tags, pixels, beacons and other technologies on our Websites, Applications, and email and marketing messages. These technologies are used to improve products and services, and for marketing, and they also allow us, advertising networks, social media companies, and other providers to place and serve advertisements and customized content[.]

*Id.* ¶9, Ex. 2. Other portions of the December 2022 Privacy Policy for Guests contain additional disclosures. *See, e.g.,* Clark Decl. ¶10; *id.* Ex. 2 at section 3 ("Payment and Credit Information," "Location Information," "Preferences and Inferences"), section 5 ("How We Use Your Information"), section 6 ("Disclosures of Your Personal Information"), section 6.4 ("Consumer Insights"), section 8.3 ("Social Media").

The Website also uses a cookies banner that automatically appears onscreen when users first visit the site on a device (or after they clear their browsers). Through most of 2024, the banner stated as follows:

> This website uses cookies and other technologies to analyze traffic, personalize content and ads, record sessions, and improve our sites and services. By continuing to use this site, you agree to the use of these technologies as further described in our **Privacy Policy.**

*Id.* ¶12, Ex. 4. In addition to a hyperlink to the Privacy Policy for Guests, the cookies banner included, and still includes, a conspicuous "Cookie Settings" button, offset in blue font, that takes users to the Website's Cookie Center, where users can customize their privacy settings. *Id.* ¶13, Ex. 5. The Cookie Center has also been accessible on the Website via a hyperlink using the term "Cookie Center." *Id.*

Throughout 2024, the Website Terms & Conditions contained additional disclosures about cookies. *Id.* ¶15, Ex. 6. Further, Plaintiff, as a longstanding Facebook member, received cookie disclosures through Meta's Cookies Policy, which informs



REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Facebook users that it provides cookies to third-party websites for advertising and website analytics. FAC ¶3; RJN ¶13, Ex. 13.

## III. THE COURT SHOULD TRANSFER THIS MATTER TO THE NORTHERN DISTRICT OF ILLINOIS

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Motions to transfer venue involve a two-part inquiry. First, the court determines whether the matter "might have been brought" in the district to which transfer is sought. 28 U.S.C. § 1404(a). Next, the court considers whether the convenience of the parties and witnesses, and the interests of justice, support transfer. 28 U.S.C. § 1404(a); *Urista v. Wells Fargo & Co.*, 2022 U.S. Dist. LEXIS 5664, at *4-5 (S.D. Cal. Jan. 11, 2022).

Where a valid forum selection clause exists, it should be "given controlling weight in all but the most exceptional cases." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas,* 571 U.S. 49, 63 (2013) (quotation marks and citation omitted). "The party challenging the forum selection clause bears a 'heavy burden' of establishing the [] grounds for rejecting its enforcement." *Earthmade Prods., LLC v. Botanicals Internacional S.A. de C.V.*, 2022 U.S. Dist. LEXIS 26437, at *10-11 (C.D. Cal. Feb. 1, 2022) (quoting *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 497 (9th Cir. 2000)). "[F]orum selection clauses are presumptively valid and should only be set aside if the party challenging enforcement can 'clearly show that enforcement would be unreasonable and unjust.'" *LaCross v. Knight Transp., Inc.*, 95 F. Supp. 3d 1199, 1203 (C.D. Cal. 2015) (quoting *M/S Bremen v. Zapata Off-Shore Co*., 407 U.S. 1 (1972)). More specifically, a forum selection clause will be enforced unless (1) its inclusion in the agreement was the product of fraud or overreaching; (2) the party wishing to repudiate the clause would effectively be deprived of his day in court; and (3)

enforcement "would contravene a strong public policy of the forum in which suit is brought." *LaCross*, 95 F. Supp. 3d at 1203.

Here, transfer to the Northern District of Illinois is warranted. This action could have been brought in Illinois in the first instance based on the Class Action Fairness Act, as Plaintiff is a citizen of California and Hyatt is a citizen of Illinois and Delaware. Dkt. 15 ¶4. Further, the interests of justice plainly support transfer. When Plaintiff enrolled in World of Hyatt in 2018, he expressly acknowledged that "[b]y joining," he was "agreeing to the World of Hyatt Terms & Conditions." Cave Decl. ¶7, Ex. 10. He was also informed in the same disclosure that Hyatt would "collect and use [his] personal information in accordance with our Privacy Policies." *Id.* This language was conspicuously displayed in bold blue hypertext directly above the "JOIN NOW" button. *Id.* Additionally, this dispute plainly relates to the World of Hyatt Program and associated "collect[ion] and use" of Plaintiff's personal information and thus falls under the venue clause. The online reservations at the center of Plaintiff's claims were allegedly booked in 2024, and Plaintiff's World of Hyatt account shows dozens of transactions that year. *Id.* ¶¶3, 5. Moreover, Plaintiff separately agreed to venue in Chicago, Illinois through the Website Terms & Conditions covering "use of the Site," which were conspicuously and repeatedly disclosed to Plaintiff through approximately 150 contacts with the Website. *Id.*; Clark Decl. ¶¶16-17, Ex. 7-8. Hyatt's Illinois venue clauses are thus valid and enforceable. *See, e.g., Allen v. Shutterfly, Inc.*, 2020 U.S. Dist. LEXIS 167910, at *18-19 (N.D. Cal. Sep. 14, 2020) (finding the plaintiff consented to website terms presented above a "Submit Payment" button); *Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 587 (N.D. Cal. 2020) (same).[3]

Plaintiff cannot make the required clear showing that enforcement of the clause would be unreasonable or unjust. The FAC does not allege the forum selection clauses

[3] Transfer is also proper based on convenience factors, as most documents and witnesses regarding this dispute will likely be based outside of California. Clark Decl. ¶19.





REED SMITH LLP
A limited liability partnership formed in the State of Delaware

are fraudulent or even reference them. *See Earthmade*, 2022 U.S. Dist. LEXIS 26437, at *11-12 (enforcing clause when "the complaint [did] not even mention the forum-selection clause"). Nor can he argue he will be deprived of his day in court if the case proceeds in the Northern District of Illinois. *See M/S Bremen*, 407 U.S. at 18 ("[T]he party seeking to escape his contract [must] show … he will for all practical purposes be deprived of his day in court."). Finally, enforcement would not contravene any strong public policy in California. *See Landec Corp. v. Certain Underwriters at Lloyds,* 2021 U.S. Dist. LEXIS 255145, at *8-9 (C.D. Cal. Dec. 28, 2021).

## IV. ALTERNATIVELY, THE COURT SHOULD DISMISS THIS CASE BECAUSE PLAINTIFF LACKS ARTICLE III STANDING

Plaintiff has failed to plausibly allege any concrete injury or harm resulting from the purported information sharing referenced in the FAC and therefore lacks Article III standing. To establish standing for purposes of subject matter jurisdiction, a plaintiff must demonstrate: "(1) [he] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000); *Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517, 523 (9th Cir. 2023). A "bare procedural violation" of a statute will not suffice. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). "Only those plaintiffs who have been "*concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021). Plaintiffs must "clearly … allege facts demonstrating each [standing] element." *Winsor*, 62 F.4th at 523.

Here, Plaintiff has failed to allege any *actual* sharing or use of *his* "guest record" information, let alone any injury or harm resulting from such sharing. While Plaintiff



REED SMITH LLP
A limited liability partnership formed in the State of Delaware

speculates at length about *possible* interception and use of particular information by third parties, he fails to allege plausible facts substantiating that any of these supposed harms manifested, *i.e.*, that his "guest records" were, *in fact,* "intercepted," "paired" with his identity, and then "used" by Meta and Adobe "for their own purposes." Plaintiff also has failed to plead any actual harm or loss he suffered, relying instead on statutory damages and inchoate references to privacy. Dkt. 15 ¶¶97, 110. This by itself warrants dismissal of his claim. *See TransUnion*, 594 U.S. 426-28; *see also Valenzuela v. Keurig Green Mt., Inc.*, 2023 U.S. Dist. LEXIS 182222, at *9 (N.D. Cal. Oct. 10, 2023) (dismissing CIPA claim where plaintiff "failed to allege any facts that suggest any 'privacy injury' occurred").

## V. THE COURT SHOULD DISMISS THIS CASE FOR LACK OF PERSONAL JURISDICTION OVER HYATT

This Court lacks specific personal jurisdiction over Hyatt because the FAC fails to plausibly allege Hyatt purposefully directed its conduct toward California. *See Walden v. Fiore*, 571 U.S. 277, 286-88 (2014). Personal jurisdiction can be either general or specific. *Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1086 (9th Cir. 2023). For corporate defendants, general jurisdiction applies only in their state(s) of incorporation and principal places of business. *Id.* For specific jurisdiction, the plaintiff has the burden of proving: (1) the defendant purposefully directed its activities to the forum or purposefully availed itself of conducting activities in the forum, and (2) the claim relates to the defendant's forum-related activities. *Id.* at 1086-87. If the plaintiff establishes these elements, the defendant must show jurisdiction would be unreasonable. *Id.* at 1087.

Here, general personal jurisdiction is inapplicable, as Hyatt is incorporated in Delaware, its principal place of business is in Illinois, and Plaintiff does not allege Hyatt is subject to general jurisdiction. Dkt. 15 ¶6. Nor is Hyatt subject to specific personal jurisdiction based on Plaintiff's allegations. In cases sounding in tort, like this one,



REED SMITH LLP
A limited liability partnership formed in the State of Delaware

courts focus on whether the defendant purposefully directed its conduct toward California, applying a three-part "effects" test. This test requires that the defendant allegedly must have (1) "committed an intentional act," (2) "expressly aimed at the forum state," (3) "causing harm that the defendant knows is likely to be suffered in the forum state." *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 866 (S.D. Cal. 2023) (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 803 (9th Cir. 2004)).

The "effects" test is not met here, and any exercise of jurisdiction would be unreasonable. Hyatt operates a website that allows anyone in the world with an internet connection to book hotel rooms or engage in other transactions. Clark Decl. ¶18. Any user seeking to reserve rooms as alleged by Plaintiff would have experienced the same booking flow and the same allegedly unauthorized disclosures, irrespective of that user's location. *Id.* ¶6, Ex. 1. Plaintiff does not contend otherwise. Allegations that some portion of Hyatt's users accessed the Website from California does not, and cannot, amount to express aiming. *See Mikulsky, Inc.*, 682 F. Supp. 3d at 868) (declining to find personal jurisdiction over defendant with nationally accessible commercial website based on California customers' use of the site); *Massie v. GM Co.*, 2021 U.S. Dist. LEXIS 99945, at *19 (E.D. Cal. May 25, 2021) ("[O]peration of broadly accessible websites does not constitute the type of minimum contacts with the forum needed for specific personal jurisdiction," notwithstanding allegations defendant had substantial California customer base and knew Californians were accessing site); *Licea v. Caraway Home Inc.*, 655 F. Supp. 3d 954, 969-70 (C.D. Cal. 2023) (dismissing CIPA claims because "[w]ithout facts showing [the defendant] specifically targeted California, the operation of an internationally accessible website is insufficient").[4] Plaintiff also cannot

---

[4] *Briskin v. Shopify* does not change this outcome, as the court's holding focused on particular facts not alleged here. The Ninth Circuit found a third-party vendor that processed payment information on a merchant's website was subject to specific personal jurisdiction, where the vendor's business model focused on, *inter alia*, the undisclosed processing of California users' payment transactions on merchants' websites; the surreptitious collection, sharing, and sale of users' information to





REED SMITH LLP
A limited liability partnership formed in the State of Delaware

establish personal jurisdiction by alleging Meta and Adobe are "California companies." Dkt. 15 ¶6. Plaintiff has not sued either company or plausibly alleged any facts regarding their conduct that satisfies due process requirements as to Hyatt. Hyatt's operation of hotels in California is likewise irrelevant to Plaintiff's allegations. *See Heiting v. Marriott Int'l, Inc.*, 743 F. Supp. 3d 1163, 1170-72 (C.D. Cal. 2024) (hotel chain's California operations insufficient for personal jurisdiction because they were unrelated to CIPA online privacy claim).

## VI. PLAINTIFF FAILS TO STATE A CLAIM UNDER CIPA

The FAC should also be dismissed for failure to state a claim under Rule 12(b)(6). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citation omitted). While the plaintiff's allegations are taken as true for purposes of a motion to dismiss, that presumption does not apply to conclusory allegations. *See Hernandez v. TLC of the Bay Area, Inc.*, 263 F. Supp. 3d 849, 852 (N.D. Cal. 2017). Here, the FAC falls short on multiple dispositive grounds.

### A. Plaintiff's Consent Bars His CIPA Claims

CIPA sections 631 and 632 both require lack of consent as an affirmative element, and failure to plausibly allege consent is grounds for dismissal. *Lakes v. Ubisoft, Inc.*, 2025 U.S. Dist. LEXIS 67336, at *20-21 (N.D. Cal. Apr. 1, 2025) (dismissing CIPA claims on consent grounds); *see also Smith v. Facebook, Inc.*, 745 F. App'x 8, (9th Cir. 2018) (affirming dismissal of CIPA web-tracking claims based on plaintiff's consent to website privacy policy); *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 828 (N.D. Cal. 2020) ("Plaintiffs' allegation that the recordings 'were

---

additional third parties for commercial gain; the creation of "risk profiles" on users; and the vendor defendants' installation of software that used geolocation technology to determine the plaintiff's device was in California at the time of the transaction. 2025 U.S. App. LEXIS 9410, at *14-16, 50-51 (9th Cir. Apr. 21, 2025). Here, Plaintiff concedes Hyatt's business focuses on "operat[ion]" of "hotels," not the collection, use, and resale of users' information. Dkt. 15 ¶4.



REED SMITH LLP
A limited liability partnership formed in the State of Delaware

made without Plaintiffs' consent' is conclusory"); *Silver v. Stripe Inc.,* 2021 U.S. Dist. LEXIS 141090, at *12-14 (N.D. Cal. July 28, 2021) (dismissing CIPA claim where privacy policy "explicitly state[d] that consumers' information may be provided to [the defendant's] 'partners'"); *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015) (dismissing CIPA claim for "failure to adequately allege lack of consent").

Here, Plaintiff expressly agreed to the Privacy Policy for Guests through his World of Hyatt enrollment and prior to each alleged booking. Cave Decl. ¶8, Ex. 10; Clark Decl. ¶6, Ex. 1. Hyatt's Privacy Policy delineated the very types of disclosures Plaintiff contends were nonconsensual, including collection and sharing of "stay" information through "cookies, tags, pixels, beacons and other technologies on our Websites," and sharing of information with "advertising networks, social media companies, and other providers to place and serve advertisements and customized content." Clark Decl. ¶¶9, 10, Ex. 2. These disclosures were reinforced through Hyatt's cookies banner, Cookie Center, and other methods, and through separate disclosures by Meta and Adobe.[5] *Id.* ¶¶12-13, Ex. 4-5; RJN Ex. 13, 14. Plaintiff's consent dooms his CIPA claims.

Further, Plaintiff's allegation that "[a]nalysis of the Website reveals that the Third Parties' tracking technologies are active as soon as the Website loads," *i.e.*, before users could consent, is nonsensical. *Id.* ¶77. First, Plaintiff consented to the Privacy Policy for Guests when he established his World of Hyatt membership in 2018—years before the alleged CIPA violations in 2024. Second, Plaintiff alleges the improper sharing occurred as a result of the *booking process*, not upon contact with the Website. *Id.* ¶3. Because Plaintiff again consented to the Privacy Policy for Guests *before each booking*, Plaintiff's timing argument is a red herring. And Plaintiff's cryptic assertion that

[5] "Courts consistently hold that terms of service and privacy policies … can establish consent to the alleged conduct challenged under various states['] wiretapping statutes and related claims." *Silver*, 2021 U.S. Dist. LEXIS 141090, at *11.





REED SMITH LLP
A limited liability partnership formed in the State of Delaware

tracking technologies are "active" when the Website "loads" is too vague and conclusory to withstand a Rule 12 challenge.

**B. Plaintiff Fails to State a Claim Under Section 631(a)**

Section 631(a) of CIPA prohibits "three distinct and mutually independent patterns of conduct: [(1)] intentional wiretapping, [(2)] willfully attempting to learn the contents or meaning of a communication in transit over a wire, and [(3)] attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." *Tavernetti v. Superior Court of San Diego Cty.*, 22 Cal. 3d 187, 192-93 (1978).

In addition, a "fourth basis for liability" exists for anyone "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done" any of the other three 631(a) bases for liability. *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021). Here, Plaintiff's claims against Hyatt focus on the fourth basis, alleging that Hyatt "aids, employs, agrees with, or otherwise enables third parties – including [Adobe and Meta] – to eavesdrop on communications sent and received by Plaintiff . . ." Dkt. 15 ¶2.

For "aiding and abetting" claims, the "[p]laintiff must adequately plead that [the third-party] itself engaged in conduct falling under one of the first three prongs of the statute" and that the defendant aided, agreed with, employed, or conspired with that person or entity to commit those unlawful acts. *Cody v. Lacoste USA, Inc.*, 2024 U.S. Dist. LEXIS 135843, at *3-4 (C.D. Cal. July 30, 2024) (dismissing CIPA claim where plaintiff failed to adequately allege the first and second clause of CIPA § 631(a)); *Esparza v. Uag Escondido A1 Inc.,* 2024 U.S. Dist. LEXIS 145236, at *6-7 (S.D. Cal. Aug. 5, 2024) (dismissing CIPA claim for failure to allege aiding and abetting). Plaintiff has failed to state a CIPA claim because, as shown below, he does not plausibly allege any predicate violations of 631(a) or that Hyatt aided or abetted any purported violations.

### 1. Section 631(a) Does Not Apply to the Technologies in Question

The first prong of section 631(a) applies only to "unauthorized connection[s] … with any telegraph or telephone wire." Courts "have strictly construed the 'telegraph or telephone' component of § 631(a)'s intentional wiretapping clause." *Doe v. Microsoft Corp.*, 2023 U.S. Dist. LEXIS 226041, at *17-18 (W.D. Wash. Dec. 19, 2023). The "overwhelming weight of authority" limits liability only to wiretapping with a "telegraph or telephone." *Mastel*, 549 F. Supp. 3d at 1135 (holding 631(a) inapplicable to wiretapping through the internet); *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d at 825-26 (same); *Licea v. Cinmar, LLC,* 659 F. Supp. 3d 1096, 1104 (C.D. Cal. 2023) (same); *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1065 n.8 (C.D. Cal. 2023) (same); *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 743 (N.D. Cal. 2023). Here, Plaintiff does *not* allege use of a "telegraph or telephone;" rather, he alleges he "visited Defendant's Website, hyatt.com, on the same browser that he used to access Facebook." Dkt. 15 ¶3. Plaintiff has failed to assert a claim under section 631(a)'s first prong.

### 2. Section 631(a) Does Not Apply Because Hyatt Was a Party to the Alleged Communications

To state a violation of section 631(a), Plaintiff must allege that a *third party* engaged in the alleged wiretapping. *See In re Facebook, Inc. Internet Tracking Litig.,* 956 F.3d 589, 606-07 (9th Cir. 2020). In the internet context, website operators are parties to the conversation. *Licea v. Am. Eagle Outfitters, Inc.,* 659 F. Supp. 3d 1072, 1081-82 (C.D. Cal. 2023); *Williams v. What If Holdings, LLC,* 2022 U.S. Dist. LEXIS 230732, at *7 (N.D. Cal. Dec. 22, 2022) (explaining that a party to a conversation cannot be an eavesdropper). Where third-party tools are used, the exception's applicability turns on whether the accused technology behaves more like a tape recorder utilized by the party to the conversation or like an eavesdropper "press[ing] up against a door to listen to a conversation." *Am. Eagle*, 659 F. Supp. 3d at 1082 (quotation marks and citation omitted). Courts routinely dismiss CIPA claims where the Plaintiff fails to



REED SMITH LLP
A limited liability partnership formed in the State of Delaware

allege the purported "third party" functioned as an eavesdropper to the communication. *See, e.g., Swarts*, 689 F. Supp. 3d at 744 (explaining a party to a communication is exempt from liability under section 631(a) for recording its own conversations and therefore cannot be liable).[6]

Here, Hyatt was a party to any communications at issue, as Plaintiff's claims focus directly on his and other "Website users' communications with Hyatt." Dkt. 15 ¶¶3, 19. As to Meta and Adobe, Plaintiff has failed to plausibly allege that they were doing anything more than providing Hyatt with tools for running its business. Notwithstanding Plaintiff's recitation of section 631(a)'s text, scrutiny of the FAC's allegations reveals only that, per Meta and Adobe promotional materials, certain software they offer has the "capability" to collect and use information in various ways. *Id*. ¶32; *see also* ¶¶71-73, 91, 107. At most, Plaintiff's allegations show that Meta and Adobe software was used to enhance Hyatt's offerings, consistent with the party exception, not to exploit his data for their own separate purposes. *See, e.g., Williams,* 2022 U.S. Dist. LEXIS 230732, at *7 (session replay technology was "merely a tool that [Defendant] used to record its own communications with plaintiff"); *see also Graham v. Noom, Inc.,* 533 F. Supp. 3d 823, 831-33 (N.D. Cal. 2021); *Byars*, 656 F. Supp. 3d at 1068; *Licea v. Old Navy, LLC,* 669 F. Supp. 3d 941, 946-47 (C.D. Cal. 2023); *Am. Eagle,* 659 F. Supp. 3d at 1082-84; *Cinmar, LLC,* 659 F. Supp. 3d at 1108-09; *Cody v. Boscov's, Inc.*, 2024 U.S. Dist. LEXIS 82332, at *7 (C.D. Cal. May 6, 2024).

### 3. Plaintiff Fails to Allege Adobe or Meta Read the Contents of Communications

Under section 631(a), the "content" of a communication means "the substance, purport or meaning of [the] communication" or the "intended message conveyed by the

[6] *See also Cole v. Quest Diagnostics, Inc.,* 2025 U.S. Dist. LEXIS 7205, at *7-8 (D.N.J. Jan. 14, 2025) (eavesdropping under CIPA does not occur when visitor's browser communicates directly with the alleged eavesdropper).





REED SMITH LLP
A limited liability partnership formed in the State of Delaware

communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). By contrast, "record information" relates to "the characteristics of the message that is generated in the course of [that] communication." *Id*. Record information includes "webpage titles, webpage keywords, the date and times of website visits, IP addresses, page visits, purchase intent signals, and add-to-cart actions." *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 944 n.9 (N.D. Cal. 2023). Plaintiff contends that information he and other users input to book rooms—such as destination, travel dates, and number of rooms and guests—constitute "communications" under section 631(a) because they include "guest records" per Cal. Civil Code section 53.5. Dkt. 15 ¶25-30, 45-53, 77. However, at best, these allegations describe inactionable "record information" in the form of preset options a user must select when inquiring whether a room is even available. *See Zynga*, 750 F.3d at 1107.

**4. Plaintiff Fails to Allege Interception in Transit**

Plaintiff has also failed to plausibly allege that any communications were "intercepted" while "in transit." A communication "must be acquired during transmission," not after the communication has already been received by the recipient and "is in electronic storage." *Konop v. Hawaiian Airlines, Inc.,* 302 F. 3d 868, 878 (9th Cir. 2002) ("This conclusion is consistent with the ordinary meaning of 'intercept,' which is 'to stop, seize, or interrupt in progress or course before arrival.'"). Even for online communications involving almost instantaneous data transfers, plaintiffs must sufficiently allege the information was actually intercepted in transit, not separately provided to a third-party. *See, e.g.*, *Adler v. Community,* 2021 U.S. Dist. LEXIS 201644, at *12-13 (C.D. Cal. Aug. 2, 2021) (dismissing CIPA claim where "there [was] no plausible allegation that Defendant acted to learn the contents of the messages while they were … in transit or in the process of being received"); *In re Vizio, Inc.,* 238 F. Supp. 3d 1204, 1227-28 (C.D. Cal. 2017); *NovelPoster v. Javitch Canfield Grp.,* 140 F. Supp. 3d 938, 953 (N.D. Cal. 2014). "[O]nce an [online communication] has been

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

received by the destination server, a communication becomes 'stored' and contemporaneous interception is no longer possible." *Lindsay-Stern v. Garamszegi,* 2016 U.S. Dist. LEXIS 203693, at *9 (C.D. Cal. Oct. 13, 2016) (quotation marks and citation omitted).

Boilerplate allegations of "instant" interception do not suffice. *See, e.g., Am. Eagle*, 659 F. Supp. 3d at 1084-85 (dismissing section 631(a) claims based on "[b]are allegations … [that] do not specifically allege that Plaintiffs' messages were intercepted while in transit"); *Hammerling v. Google LLC,* 2022 U.S. Dist. LEXIS 217020, at *30-31 (N.D. Cal. Dec. 1, 2022) (holding allegations that "Google collected 'real-time data' about [] use of third-party apps" insufficient to satisfy "in transit" requirement); *Boscov's, Inc.*, 2024 U.S. Dist. LEXIS 82332, at *7 (dismissing section 631(a) claims because "brief description of [a service provider's] 'secret code … does not suggest that [the service provider] necessarily uses that code to intercept customer communications while they are in transit'"); *Lacoste*, 2024 U.S. Dist. LEXIS 135843, at *5-6 (same).

Here, Plaintiff alleges "The Third Parties' tracking technologies "cause the [Website user's] browser to secretly and simultaneously duplicate the user's Website communications, transmitting these communications to the Third Parties' servers … within milliseconds." Dkt. 15 ¶32. These allegations fail to specify interception in transit. First, Plaintiff concedes that any alleged communications were between users' browsers and third parties' servers, not between Plaintiff and Hyatt. *Id.* Second, Plaintiff acknowledges that the purported communications were "duplicate[s]" of users' communications with the Website, not communications en route to Hyatt. *Id.* Plaintiff cannot bring this activity within section 631's ambit merely by parroting the statute's terminology. *See In re Vizio,* 238 F. Supp. 3d at 1228 (dismissing conclusory allegations that data collection occurred "'in real time'"); *Valenzuela v. Keurig Green Mountain*, 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023) (dismissing CIPA claims for failure to plead "in transit" element).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

### 5. Plaintiff Fails to Plausibly Allege Aiding and Abetting by Hyatt

For purposes of an aiding and abetting claim, "the defendant must be acting with the third party *in order to* have the third party perform acts that violate the statute." *Smith v. Yeti Coolers, LLC,* 754 F. Supp. 3d 933, 942 (N.D. Cal. 2024); *see also Lozano v. City of L.A.,* 73 Cal. App. 5th 711, 727-28 (2022). Here, Plaintiff pleads no plausible allegations that Hyatt knew Plaintiff had a Facebook account or that, by allegedly installing Meta and Adobe's software, Hyatt intended to facilitate use of Plaintiff's information by Meta or Adobe "for their own purposes." Dkt. 15 ¶¶70-73.

## C. Plaintiff Fails to State a Claim Under Section 632

Plaintiff's section 632 claim also fails for multiple reasons. *First*, Plaintiff makes no allegation that Hyatt eavesdropped on or recorded any communications, let alone that Hyatt did so "intentionally." Rather, Plaintiff's allegations are directed entirely toward "the Third Parties." Dkt. 15 ¶32. *Second*, Plaintiff does not allege that Hyatt used an "electronic amplifying or recording device." Cal. Penal Code§ 632(a). Under CIPA, a "device" is defined as a "thing made or adapted for a particular purpose, especially a piece of mechanical or electronic equipment." *Moreno v. S.F. Bay Area Rapid Transit Dist.,* 2017 U.S. Dist. LEXIS 206009, at *9 (N.D. Cal. Dec. 14, 2017). The definition does *not* extend to software. *See Microsoft Corp.,* 2023 U.S. Dist. LEXIS 226041, at *18-19 ("Because software does not constitute a "device" under the CIPA, Plaintiffs § 632 claim against Microsoft is deficient."); *In re Google Location Hist. Litig.,* 428 F. Supp. 3d 185, 193 (N.D. Cal. 2019); *see also Moreno,* 2017 U.S. Dist. LEXIS 206009, at *12-13 (N.D. Cal. Dec. 14, 2017). Here, Plaintiff alleges Hyatt implemented Meta and Adobe software, which does not constitute a "device" under CIPA § 632. *Third*, Plaintiff's section 632 claim fails because it does not allege eavesdropping on "confidential" communications. A communication is "confidential" under section 632 only if a party has "an objectively reasonable expectation that the conversation is not being overheard or recorded." *Rodriguez v. Google LLC,* 2021 U.S.

Dist. LEXIS 98074, at *23 (N.D. Cal. May 21, 2021). Internet communications are presumptively *not* confidential under section 632. *Campbell v. Facebook Inc.,* 77 F. Supp. 3d 836, 848-49 (N.D. Cal. 2014) (collecting cases); *Rodriguez*, 2021 U.S. Dist. LEXIS 98074, at *23; *see also People v. Stipo*, 195 Cal. App. 4th 664, 669 (2011) ("Internet users have no expectation of privacy in … the websites they visit."). The website clicks and entries alleged here easily fall within this presumption. *See, e.g.*, *Rodriguez,* 2021 U.S. Dist. LEXIS 98074, at *23-24 (plaintiffs "must plead unique, definite circumstances rebutting California's presumption against online confidentiality'"); *Revitch v. New Moosejaw, LLC*, 2019 U.S. Dist. LEXIS 186955, at *6-7 (N.D. Cal. Oct. 23, 2019) (dismissing section 632 claim because allegations about "form field entries," and inquiries "on a retail website" did not "warrant[] a deviation from this general rule").

Nor can Plaintiff manufacture confidentiality with blanket references to Cal. Civil Code section 53.5, which pertains to "guest records."[7] None of the alleged "content" here—*e.g.*, destination, date, number of rooms—is covered by the statute, and Plaintiff could not reasonably have expected such information was confidential in any event. Moreover, Plaintiff provides no plausible allegations Adobe or Meta used anyone's information in a manner that renders them anything other than contracted "third party service providers" exempted from section 53.5's disclosure restrictions.

### D. Plaintiff's Class Allegations and Claims for Punitive, Equitable and Other Relief Should Be Stricken

Plaintiff's class allegations are facially overbroad and should be stricken. The function of a Rule 12(f) motion is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial."

[7] A "guest record" includes "any record that identifies an individual guest … including … their name, social security number or other unique identifying number, date of birth, location of birth, address, telephone number, driver's license number, other official form of identification, credit card number, or automobile license plate number." Cal. Civ. Code § 53.5(c).



REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973-74 (9th Cir. 2010). A court may "strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained." *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1146 (N.D. Cal. 2010). Courts regularly strike overly broad class definitions that include individuals who suffered no harm. *See, e.g.*, *Lyons v. Bank of Am.,* 2011 U.S. Dist. LEXIS 145176, at *20 (N.D. Cal. Dec. 16, 2011) (granting motion to strike upon finding putative class was not certifiable because the proposed definition included "many members who have not been injured"); *Brown v. Nano Hearing Tech Opco, LLC*, 2024 U.S. Dist. LEXIS 120371, at *22-23 (S.D. Cal. July 9, 2024) (holding proposed class definition was "overly broad because it fail[ed] to exclude any members who may have consented to receiving phone calls from [defendant]," who would lack standing).[8]

Plaintiff's proposed class is facially overbroad and should be stricken. First, while Plaintiff alleges he was injured when he "browsed and booked" hotel rooms on Hyatt's website [Dkt. 15 ¶3], Plaintiff's putative class definition covers "all California residents who have accessed and navigated the website while in California" over an unlimited time period [*id.* ¶78]. Accordingly, the putative class is overbroad because it necessarily includes users, such as casual web surfers, who never booked—or even attempted to book—a room (with or without Facebook), and therefore never incurred the injury alleged by Plaintiff, *i.e.*, interception of purportedly confidential "guest records." Second, CIPA has a one-year limitations period, but the class definition has no temporal limitations and therefore necessarily includes users whose claims are time-barred. Cal. Civ. Proc. Code § 340.

Lastly, Plaintiff provides no facts in support of his prayer for punitive, actual or compensatory damages, restitution, and injunctive relief, and his counsel stated during the pre-motion conference that Plaintiff was seeking statutory damages only. *See, e.g.*,

[8] *See also Hernandez v. State Farm Fire & Cas. Co.*, 2017 U.S. Dist. LEXIS 34174, at *10-11 (S.D. Cal. Mar. 9, 2017); *Tietsworth*, 720 F. Supp. 2d at 1147; *Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009).



REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*Santa Clara Valley Water Dist. v. Olin Corp.*, 2007 U.S. Dist. LEXIS 76117, at *13, 18 (N.D. Cal. Sep. 28, 2007) (striking prayer for punitive damages because plaintiff "ha[d] not alleged facts necessary to support a punitive damages claim"); *Hightower v. JPMorgan Chase Bank, N.A.*, 2012 U.S. Dist. LEXIS 195643, at *10 (C.D. Cal. Sep. 12, 2012) (striking prayer for injunctive relief where plaintiffs "ha[d] not alleged facts that would support a claim for injunctive relief").

## VII. CONCLUSION

For the foregoing reasons, Hyatt requests this action be transferred to the Northern District of Illinois, or alternatively, that the Court dismiss Plaintiff's claims with prejudice, as the FAC's flaws cannot be cured by further amendment.

DATED: May 9, 2025

REED SMITH LLP

By: */s/ Terence N. Hawley*
Terence N. Hawley (SBN 179106)

*Attorneys for Defendant*
*Hyatt Hotels Corporation*

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**L.R. 11-6.2. CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant Hyatt Corporation, certifies that this brief contains 6,993 words, which:

_X_ complies with the word limit of L.R. 11-6.1.

__ complies with the word limit set by court order dated [date]."

DATED: May 9, 2025

*/s/ Terence N. Hawley*
Terence N. Hawley