**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-mail: pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
Stefan Bogdanovich (State Bar No. 324525)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: sbogdanovich@bursor.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

JUHYUN SO, individually and on behalf of all others similarly situated,

Plaintiff,

v.

HYATT CORPORATION,

Defendant.

Case No. 2:25-cv-01298-AB-SSC

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE OR, IN THE ALTERNATIVE, TO DISMISS AND STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT**

Date: August 8, 2025
Time: 10:00 AM
Judge: Hon. André Birotte Jr.
Courtroom: Courtroom 7B
First Street Courthouse
350 W. 1st Street, 10th Fl.
Los Angeles, CA 90012
Action Filed: February 14, 2025

## TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ........ 1

ARGUMENT ........ 3

I. THIS CASE SHOULD NOT BE TRANSFERRED TO ILLINOIS AND PLAINTIFF DID NOT CONSENT TO THE THIRD PARTIES' WIRETAPPING ........ 3

II. DEFENDANT'S VIOLATIONS OF CIPA CAUSED PLAINTIFF AN INJURY-IN-FACT SUFFICIENT FOR ARTICLE III STANDING ........ 17

III. THIS COURT HAS PERSONAL JURISDICTION OVER HYATT ........ 18

IV. PLAINTIFF SUFFICIENTLY ALLEGES A VIOLATION OF CIPA § 631 ........ 19

A. Clause One of CIPA § 631(a) Applies to Internet Communications ........ 19

B. Meta and Adobe are Third-Party Wiretappers ........ 19

C. Plaintiff Alleges that Adobe and Meta "Read or Attempted to Read" the "Contents" of His Electronic Communications ........ 21

D. Plaintiff Alleges Interception "In Transit" ........ 22

E. Plaintiff Alleges that Hyatt "Aided, Agreed With, Employed, Or Conspired With" Third Parties ........ 24

V. PLAINTIFF SUFFICIENTLY ALLEGES A VIOLATION OF CIPA § 632 ........ 25

A. Plaintiff Alleges Eavesdropping or Recording ........ 25

B. The Tracking Technologies are Electronic Amplifying or Recording Devices ........ 25

C. The Communications At Issue Are Confidential ........ 26

VI. HYATT'S MOTION TO STRIKE SHOULD BE DENIED ........ 28

CONCLUSION ........ 29

# TABLE OF AUTHORITIES


PAGE(S)

**CASES**

*Allen v. Shutterfly, Inc.*,
2020 WL 5517172 (N.D. Cal. Sept. 14, 2020) .......... 11

*Ballou v. Asset Mktg. Servs., LLC*,
46 F.4th 844 (8th Cir. 2022) .......... 2, 5

*Barker Bros. v. City of Los Angeles*,
10 Cal. 2d 603 (1938) .......... 24

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) .......... passim

*Bernstein v. United Collection Bureau, Inc.*,
2013 WL 5945056 (S.D. Cal. Nov. 5, 2013) .......... 27

*Briskin v. Shopify, Inc.*,
87 F.4th 404, (9th Cir. 2023) .......... 2

*Briskin v. Shopify, Inc.*,
135 F.4th 739 (9th Cir. 2025) .......... 2, 19

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) .......... 28

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) .......... 21, 27

*Brown v. Nano Hearing Tech Opco, LLC*,
2024 WL 3367536 (S.D. Cal. July 9, 2024) .......... 29

*Byars v. Goodyear Tire & Rubber Co.*,
654 F. Supp. 3d 1020 (C.D. Cal. 2023) .......... passim

*Chabolla v. ClassPass Inc.*,
129 F.4th 1147 .......... passim

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) .......... 24

*D'Angelo v. Penny OpCo, LLC*,
2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) ........ 23

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) ........ 26

*Doe v. Pasadena Hosp. Ass'n, Ltd.*,
2020 WL 1244357 (C.D. Cal. Mar. 16, 2020) ........ 28

*Doe v. Tenet Healthcare Corp.*,
2025 WL 1635956 (E.D. Cal. June 9, 2025) ........ 24

*Edwards v. MUBI, Inc.*,
2025 WL 985130 (N.D. Cal. Mar. 31, 2025) ........ 3, 9

*Ewing v. Flora*,
2015 WL 12564225 (S.D. Cal. Mar. 25, 2015) ........ 27

*Gladstone v. Amazon Web Servs., Inc.*,
739 F. Supp. 3d 846 (W.D. Wash. 2024) ........ 26

*Godun v. JustAnswer LLC*,
135 F.4th 699 (9th Cir. 2025) ........ 4

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ........ 20

*Heerde v. Learfield Commc'ns, LLC*,
741 F. Supp. 3d 849 (C.D. Cal. 2024) ........ 20, 24

*Heiting v. Marriott Int'l, Inc.*,
743 F. Supp. 3d 1163 (C.D. Cal. 2024) ........ 19

*Heiting v. Taro Pharms. USA, Inc.*,
2024 WL 3738055 (C.D. Cal. July 31, 2024) ........ 25

*Houtchens v. Google LLC*,
649 F. Supp. 3d 933 (N.D. Cal. 2023) ........ 4

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ........ 22, 26

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ passim

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) ........ 26

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ........ 3, 21, 27

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ........ 21, 22

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) ........ 18

*Javier v. Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. May 31, 2022) ........ 19

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023 ........ 20

*Kauders v. Uber Techs., Inc.*,
159 N.E.3d 1033 (Mass. 2021) ........ 12

*Kauffman v. Papa John's Int'l, Inc.*,
2024 WL 171363 (S.D. Cal. Jan. 12, 2024) ........ 18

*LeDoux v. Outliers, Inc.*,
2025 WL 523908 (W.D. Wash. Feb. 18, 2025) ........ 5

*Licea v. Old Navy, LLC*,
669 F. Supp. 3d 941 (C.D. Cal. 2023) ........ 19

*Lyons v. Bank of Am., NA*,
2011 WL 6303390 (N.D. Cal. Dec. 16, 2011) ........ 29

*Marshall v. Georgetown Mem'l Hosp.*,
112 F.4th 211 (4th Cir. 2024) ........ 5

*Mitchell v. Sonesta Int'l Hotels Corp.*,
2024 WL 4471772 (C.D. Cal. Oct. 4, 2024) ........ 26

*Moreno v. San Francisco Bay Area Rapid Transit Dist.*,
2017 WL 6387764 (N.D. Cal. Dec. 14, 2017) ........ 26

*Morrison v. Yippee Ent., Inc.*,
756 F. Supp. 3d 842 (S.D. Cal. 2024) ........ 10, 11

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016) .......... 4

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) .......... 5

*Peter v. DoorDash, Inc.*,
445 F. Supp. 3d 580 (N.D. Cal. 2020) .......... 11

*Price v. Carnival Corp.*,
712 F. Supp. 3d 1347 (S.D. Cal. 2024) .......... 15, 16, 17

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .......... 22, 23

*Ribas v. Clark,*
696 P.2d 637 (Cal. 1985) .......... 23

*Rowe v. Univ. of S. California*,
2024 WL 5467459 (C.D. Cal. Dec. 23, 2024) .......... 28

*Ruegsegger v. Caliber Home Loans, Inc.*,
2019 WL 8163640 (C.D. Cal. Jan. 8, 2019) .......... 28

*Sadlock v. Walt Disney Co.*,
2023 WL 4869245 (N.D. Cal. July 31, 2023) .......... 10

*St. Aubin v. Carbon Health Techs., Inc.*,
2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) .......... 24

*Tate v. VITAS Healthcare Corp.*,
762 F. Supp.3d 949 (E.D. Cal. 2025) .......... 3, 24

*Tavernetti v. Superior Ct.*,
22 Cal. 3d 187 (1978) .......... 20

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 2, 17

*United States v. Hutchins*,
361 F. Supp. 3d 779 (E.D. Wis. 2019) .......... 26

*Vaccaro v. Altais*,
2023 WL 7003211 (C.D. Cal. Oct. 23, 2023) .......... 25

*Valenzuela v. Keurig Green Mountain, Inc.*,
2023 WL 6609351 (N.D. Cal. Oct. 10, 2023) .......... 18

*Valenzuela v. Nationwide Mut. Ins. Co.*,
686 F. Supp. 3d 969 (C.D. Cal. 2023) .......... 21, 23

*Vera v. O'Keefe*,
791 F. Supp. 2d 959 (S.D. Cal. 2011) .......... 25

*Wilson v. Huuuge, Inc.*,
944 F.3d 1212 (9th Cir. 2019) .......... 12

*Yockey v. Salesforce, Inc.*,
688 F. Supp. 3d 962 (N.D. Cal. 2023) .......... 21

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 19, 21

**STATUTES**

Cal. Civil Code. § 53.5 .......... 1, 18, 26, 27

Cal. Penal Code § 631 .......... passim

Cal. Penal Code § 632 .......... 27, 28

**OTHER AUTHORITIES**

Senate Bill 1194 .......... 1

## INTRODUCTION

"When Californians leave their homes to … stay at lodging establishments throughout their state, they desire assurances that these businesses will respect their privacy and safeguard their personal information from improper disclosure." California Senate Bill 1194 (Sept. 27, 2018), § 1(g).[1] And so California law says that any "hotelkeeper … shall not disclose … all or any part of a guest record … by electronic or any other means to a third party without a court-issued subpoena, warrant, or order." Cal. Civ. Code § 53.5(a). Yet Defendant Hyatt did exactly that. It installed tracking pixels on its hotel booking website and disclosed the guest records to Adobe Inc. and Meta Platforms, Inc. ECF No. 15 ("FAC") ¶¶ 86-110. Every time consumers filled out online forms to book a room at a Hyatt hotel, the tracking pixels intercepted those communications and disclosed them to Adobe and Meta. In the process, Adobe and Meta learned *who* stayed *where*, *when*, and *how* many adults and *how* many children they had with them. FAC ¶¶ 44, 49, 56-61. If the purchaser paid for the room with a Senior Rate, Adobe and Meta knew that too. *Id*. ¶ 44, 49. In the process, Hyatt violated the California Invasion of Privacy Act ("CIPA") §§ 631-632.

Hyatt now argues Plaintiff So's case should be tossed out of this Court, because in its view, he agreed to Hyatt's Terms & Conditions and Privacy Policy. Not so fast. "To avoid the unfairness of enforcing contractual terms that consumers never intended to accept, courts confronted with online agreements such as those at issue here have devised rules to determine whether meaningful assent has been given." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022). To bind users to these terms and polices, the Ninth Circuit requires Hyatt to show both that "(1) the website *provides reasonably conspicuous* notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that *unambiguously manifests* his or her assent to those terms." *Id*. (emphasis

[1] leginfo.legislature.ca.gov/faces/billTextClient.xhtml?bill_id=201720180SB1194.

added). Hyatt fails to show either. Instead, its motion submits "cropped, close-up screenshot[s] of the [] webpage, with most of the webpage omitted," making it impossible to determine whether "the relevant terms are reasonably conspicuous to the user." *Ballou v. Asset Mktg. Servs., LLC*, 46 F.4th 844, 861 (8th Cir. 2022).

But when we broaden the lens and view the full webpages in context, as we must, it becomes clear Hyatt's terms do not pass muster. *Compare* ECF Nos. 18-2; 18-5; 18-12 *with Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1174, App'x (9th Cir. 2025).

Hyatt next argues that Plaintiff lacks Article III standing. The Ninth Circuit and the Supreme Court have repeatedly held that the interception of web browsing information in violation of a privacy statute (including CIPA) is sufficient for Article III standing. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 596, 599 (9th Cir. 2020). "Various intangible harms can also be concrete … Those include, for example … disclosure of private information, and intrusion upon seclusion." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) (holding that class members who had their private information disclosed had standing).

Hyatt's argument that it is not subject to personal jurisdiction in California is meritless. It operates various hotels throughout California, sells bookings to those California hotels to Californians through its website, and allowed the Californian companies Adobe and Meta to spy on those Californian consumers in the process. Hyatt also "obtain[ed] valuable personal data about California consumers for its own commercial gain. Accordingly, through those business activities, [Defendant] allegedly tortiously violated consumers' privacy through its collection, maintenance, and sale of valuable personal data from California consumers." *Briskin v. Shopify, Inc.*, 135 F.4th 739, 756 (9th Cir. 2025) (en banc), ***reversing*** *Briskin v. Shopify, Inc.*, 87 F.4th 404, (9th Cir. 2023). This is enough for personal jurisdiction. *Id.*

On the merits, Hyatt raises a medley of arguments that have been rejected by many courts and should again be rejected here. CIPA is not a dinosaur statute, and

"Courts have determined that § 631(a) applies to internet communications." *Byars v. Goodyear Tire & Rubber Co.*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. 2023) (collecting cases). Filing out forms on Hyatt's website and clicking buttons to book rooms is the digital analog to speaking with a receptionist and answering their questions about which rooms you would like to book and when. And "contact information provided as part of a sign-up process constitutes 'content' because this information is the subject of the communication." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022) (citing *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014)). Hyatt's argument that it did not "aid *and abet*" Adobe or Meta's interceptions is at odds with the law, which uses the disjunctive "*or*." Cal. Penal Code § 631(a). "The plain text of section 631(a) is unambiguous on this issue: the statute requires that a party 'aids, agrees with, employs, or conspires' with another party. It does not require that a party aid *and* abet." *Tate v. VITAS Healthcare Corp.*, 762 F. Supp.3d 949, 959 (E.D. Cal. 2025) (emphasis in original). And so its motions should be denied.

## ARGUMENT

### I. THIS CASE SHOULD NOT BE TRANSFERRED TO ILLINOIS AND PLAINTIFF DID NOT CONSENT TO THE THIRD PARTIES' WIRETAPPING

Hyatt argues the case should be transferred to Illinois and that Plaintiff consented to the wiretapping here because of its hyperlinked Terms & Conditions and Privacy Policy. Neither of these defenses work because Hyatt fails to show Plaintiff *agreed* to either its Terms or Privacy Policy. In resolving both consent defenses and transfer motions based on forum selection clauses, courts ask whether an online contract was formed. *See Byars v. Goodyear Tire & Rubber Co.*, 654 F. Supp. 3d 1020, 1025 (C.D. Cal. 2023) (rejecting transfer based on forum selection clause because plaintiff never agreed to Terms of Use); *Edwards v. MUBI, Inc.*, --- F. Supp. 3d ----, 2025 WL 985130, at *5 (N.D. Cal. Mar. 31, 2025) (rejecting consent defense to California privacy law claims because plaintiffs never agreed to Privacy Policy).

"Contract formation is governed by state law." *Byars*, 654 F. Supp. 3d at 1025. Because Plaintiff is a Californian, California law should apply. *Godun v. JustAnswer LLC*, 135 F.4th 699, 708 (9th Cir. 2025) (applying California law where one of the Plaintiffs was a Californian, and "we have consistently stated that no differences exist in the law of the different states as to internet contract formation."). Defendant likewise relies on California law. *See* MTD at 8.

"In the world of internet contracts, there are browsewrap, clickwrap, scrollwrap, and sign-in wrap agreements." *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1154 (9th Cir. 2025). "In a scrollwrap, which provides 'the strongest notice' and are usually enforced, the user must scroll through all the terms before the website allows her to click a box to agree." *Id*. Hyatt did not use scrollwrap. Second best is clickwrap. "In a clickwrap, the website presents its terms of use in a 'pop-up screen' and the user accepts those terms by clicking or checking a box stating she agrees." *Id*. "Courts routinely enforce clickwraps." *Id*. This is because "users *must check a box explicitly stating 'I agree'* in order to proceed." *Berman*, 30 F.4th at 856 (emphasis added). *See, e.g., Houtchens v. Google LLC*, 649 F. Supp. 3d 933, 941 (N.D. Cal. 2023) (below).




Here, Hyatt did not use an "I agree" box or button. Instead, Hyatt used "*some other* button that [Plaintiff] would otherwise need to click to continue with [his] transaction or [his] use of the website." *Berman*, 30 F.4th at 866 (Baker, J., concurring) (citation omitted) (emphasis in original). Hyatt used buttons that said, "JOIN NOW," or "BOOK MY STAY." ECF Nos. 18-2 and 18-12.




Courts often "doubt[] whether most consumers know that clicking that 'some other button' constitutes agreeing to contract terms." *Berman*, 30 F.4th at 866; *see, e.g.*, *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 236 (2d Cir. 2016) ("Nothing about the 'Place

your order' button alone suggests that additional terms apply"); *Marshall v. Georgetown Mem'l Hosp.*, 112 F.4th 211, 223 (4th Cir. 2024) ("unlike 'accept' or 'agree,' 'the word 'submit' does not, in its ordinary meaning, manifest assent..."). These are called "sign-in wrap." *Berman*, 30 F.4th at 866. The Ninth Circuit has repeatedly warned that "website designers who knowingly choose sign-in wrap … over clickwrap and scrollwrap designs *practically invite litigation* over the enforceability of their sites' terms and conditions." *Id.* at 868, n.4 (emphasis added); *see also Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 517 (9th Cir. 2023) ("this hybrid form of agreement … *invites second-guessing*.") (Emphasis added). A "sign-in wrap agreement may be an enforceable contract if (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Chabolla*, 129 F.4th at 1154–55.

**A. Hyatt Did Not Provide Reasonably Conspicuous Notice**

"To be conspicuous, the notice must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Chabolla*, 129 F.4th at 1155 (cleaned up). "To assist in the Court's inquiry, a defendant typically submits a screenshot of the way it maintains a user agreed to terms, allowing for evaluation of factors 'such as the size of the text, the color of the text as compared to the background, the location of the text, the obviousness of the hyperlink, and whether other elements on the screen clutter or otherwise obscure the textual notice.'" *LeDoux v. Outliers, Inc.*, 2025 WL 523908, at *8 (W.D. Wash. Feb. 18, 2025). But here, Hyatt's briefing shows "cropped, close-up screenshot[s] of the [] webpage[s], with most of the webpage[s] omitted." *Ballou*, 46 F.4th at 861. *See* MTD at 3 and 5.

This is improper; anything can look reasonably conspicuous underneath a magnifying glass. "We must instead consider how those design elements appear on the page" and whether the "'textual notice is… deemphasized by the overall design of the

webpage.'" *Chabolla*, 129 F.4th at 1157 (*citing Berman*, 30 F.4th at 857). *See* ECF Nos. 18-12 and 18-2.




https://www.hyatt.com/en-US/payment/details
#:173
May 7, 2025 at 9:53 AM PDT
WORLD OF HYATT
Hyatt Place San Diego/Vista-Carlsbad
King Bed (With Sofa Bed)
Wed, May 7, 2025 - Thu, May 8, 2025
1 Room, 1 Guest
Member Rate
No early check-in or late checkout options available.
Price Summary
Total Cost Per Room* $177.41
1 Night Stay $161.00
Taxes & Fees $16.41
Show Price Details
Special Offer
Earn up to $350 in Hyatt credit
Price for stay: $177.41
Hyatt credit: -$350.00
Total after Hyatt credit: $0.00
LEARN MORE & APPLY NOW
Contact Information
Prefix (Optional)
* Given / First Name
* Surname / Last Name
* Email
* Phone Number
US +1
Payment Information
Credit Card
Card Number
MM/YY
CVC
Save this card for future use
(Optional)
Address
Country / Region
United States of America
* Address
Apt, Suite, Floor etc.
* City
State
* ZIP Code
WORLD OF HYATT
MEMBERSHIP HAS ITS REWARDS
Enjoy free nights, member rates, room upgrades and more. It's fast and easy to join.
Join World of Hyatt for free
(Optional)
* Create Password
Special Requests
For Travel Planners and Advisors
Terms & Conditions
Cancellation Policy
Deposit Policy
Credit Card Guarantee Required
BOOK MY STAY

Neither of these long-form webpages provide reasonably conspicuous notice under Ninth Circuit precedent. Below is a screenshot of the screen the Ninth Circuit in *Chabolla* recently held was insufficiently conspicuous. 129 F.4th at 1174, App'x.




In making this determination, the *Chabolla* court found "the notice seems to fade into the irrelevancy of other aspects of the page." *Id*. at 1157. The page was "crowded" and "contains text in varying font sizes and images of people exercising." *Id*. And while the hyperlinks were in blue on grey text, the court found this "notably timid in both size and color" and were thus, "'deemphasized by the overall design of the webpage' and not 'prominently displayed.'" *Id*. (quoting *Berman*, 30 F.4th at 857).

As in *Chabolla*, Hyatt's "JOIN NOW" page are also "crowded" and "contains text in varying font sizes."




And as in *Chabolla*, Hyatt's page "contains ... images," of a man pointing a camera at the website user at the top of the page, along with images of dozens of brand logos at the bottom of the page.




Similarly, in *Edwards*, *supra*, another court rejected a website's consent defense to another California privacy law claim because the webpage likewise failed to provide reasonably conspicuous notice of its sign-in-wrap privacy policy. --- F. Supp. 3d ----, 2025 WL 985130, at *5-*8. Although the screen there was relatively uncluttered, "the notice is set against a dynamic background of rolling movie clips that change over time and distract the user's attention." *Id*. at *7; *see id.,* at *11, App'x.



Both Hyatt pages are considerably worse than the pages in *Chabolla* or *Edwards*. The Hyatt pages have more clutter and form fields that vie for the consumer's attention. They also have considerably more text and text in smaller font. Thus, the Hyatt pages here bear resemblance to the sign-up pages in *Morrison v. Yippee Ent., Inc.*, 756 F. Supp. 3d 842, 848 (S.D. Cal. 2024) and *Sadlock v. Walt Disney Co.*, 2023 WL 4869245, at *4 (N.D. Cal. July 31, 2023), which courts similarly held gave insufficiently conspicuous notice.






Citing *Allen v. Shutterfly, Inc.*, 2020 WL 5517172 (N.D. Cal. Sept. 14, 2020) and *Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580 (N.D. Cal. 2020), Hyatt argues its notice was sufficient because the "references to the World of Hyatt Terms & Conditions and Privacy Policies … appear directly above the 'Join Now' button in the user registration flow." MTD at 3-4. "But there is no bright-line test for finding that a particular design element is adequate in every circumstance." *Chabolla*, 129 F.4th at 1156–57. And in *Morisson* and *Sadlock*, the terms were also located directly above the relevant buttons, while in *Chabolla* and *Edwards*, the terms were directly below the button. And in *Peter*, "unlike here, hyperlinks generally appear on simple, uncluttered webpages." *Morrison*, 756 F. Supp. 3d at 851. *See Peter v. DoorDash*, Case No. 4:19-cv-6098-JST, ECF No. 21 at 16 (Dec. 13, 2019).



In fact, in finding that the DoorDash screen above provided reasonably conspicuous notice, the *Peter* court emphasized that "the screen was 'uncluttered,'" and that "'[t]he entire screen [wa]s visible at once' such that the user did 'not need to scroll beyond what is immediately visible to find notice of the Terms of Service.'" 445 F. Supp. 3d at 586 (citation omitted). In contrast, where, as here, the pages feature longer forms, "courts will not enforce agreements where the terms are 'buried at the bottom of the page or tucked away in obscure corners of the website.'" *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1220–21 (9th Cir. 2019) (citation omitted).

*Allen*, on the other hand, predated *Chabolla* and *Berman* and only considered a cropped image of the screen users encountered. This is improper. "We must instead consider … 'the overall design of the webpage.'" *Chabolla*, 129 F.4th at 1157 (citing *Berman*).

**B. Plaintiff Never Unambiguously Manifested Assent To Hyatt's Privacy Policy**

Hyatt's webpages fail to bind users for a second reason: they fail to give users a mechanism to *unambiguously* manifest assent. *See* ECF Nos. 18-12 and 18-2. "Reasonable conspicuousness alone is not sufficient to bind a user—a user must *agree* to the terms, not merely *see* them." *Chabolla*, 129 F.4th at 1158.

In the real world, a person can manifest assent by *signing* on the dotted line. But online, "[w]ithout an action comparable to the solemnity of physically signing a written contract … we are concerned that such users may not be aware of the implications of their actions." *Kauders v. Uber Techs., Inc.*, 159 N.E.3d 1033, 1051 (Mass. 2021). So in the Ninth Circuit, "[a] user's click of a button can be construed as an unambiguous manifestation of assent *only if* the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement." *Chabolla*, 129 F.4th at 1158 (quoting *Berman*, 30 F.4th at 857). In other words, "the notice must explicitly notify a user of the legal significance of the action she must take to enter into a contractual agreement." *Id*.

In *Berman*, the Ninth Circuit held that the following notice failed to establish an unambiguous manifestation of assent. 30 F.4th at 861, App'x B.




"Both webpages stated, 'I understand and agree to the Terms & Conditions,' but they did not indicate to the *user what action would constitute assent to those terms and conditions*." *Berman*, 30 F.4th at 858. "This notice defect could easily have been remedied by including language such as, 'By clicking the Continue >> button, you agree to the Terms & Conditions.'" *Id*.

Likewise, in *Chabolla*, the Ninth Circuit again held the following textual notice suffered from the same problem. 129 F.4th at 1176, App'x.




Hyatt's pages have the same problem. *See* ECF Nos. 18-2 and 18-12. They never tell users they will be deemed to "agree" to the Privacy Policy, nor to do they tie any assent to act of clicking the "BOOK MY STAY" or "JOIN NOW" buttons.






### C. Hyatt's "Cookies Banner" Is Unenforceable Browsewrap

Without including any screenshots in its motion, Hyatt likewise claims it had a "cookies banner." Motion at 6. Hyatt did not have any "cookie banner" as the term is ordinarily understood. Instead, it had tiny text buried at the bottom of its webpages.



Case 2:25-cv-01298-AB-SSC Document 18-5 Filed 05/09/25 Page 3 of 3 Page ID #:216




This website uses cookies and other technologies to analyze traffic, personalize content and ads, record sessions, and improve our sites and services. By continuing to use this site, you agree to the use of these technologies as further described in our Privacy Policy.

This is unenforceable browsewrap. "In a browsewrap, the 'user accepts a website's terms of use merely by browsing the site,' although those terms are not always immediately apparent on the screen. Courts consistently decline to enforce browsewraps." *Chabolla*, 129 F.4th at 1154. Indeed, another court recently rejected another defendant's consent defense in a CIPA case based on a similar cookie banner. *See Price v. Carnival Corp.*, 712 F. Supp. 3d 1347, 1358 (S.D. Cal. 2024), next page.




In *Price*, "the notice is placed far below the relevant buttons that a user may click … Whether because of the notice's small text, inconspicuous color scheme, or potential failure to appear, a reasonably prudent user would not 'necessarily have

known or learned of the existence of [Carnival's privacy] agreement prior to acting ...' Accordingly, the Court credits Plaintiffs' allegations and concludes that at this stage, Plaintiffs have sufficiently alleged that interception of their communications occurred without their consent." *Id*. at 1359.

The "Cookies Banner" here is even worse. The text in the banner is even smaller than the text in *Price*, and there is no indication it is even visible without scrolling. And like the banner in *Price*, it fails to establish any mechanism for a user to manifest assent.

### D. The Ninth Circuit Does Not Recognize Cumulative Notice

Here, Hyatt failed to give proper notice on the "JOIN NOW" page, the "BOOK MY STAY" page, or the "Cookies Banner" on the main page. And "three faulty notices do not equal a proper one." *Chabolla*, 129 F.4th at 1159. So Hyatt's motion to transfer and consent defenses should be rejected.

## II. DEFENDANT'S VIOLATIONS OF CIPA CAUSED PLAINTIFF AN INJURY-IN-FACT SUFFICIENT FOR ARTICLE III STANDING

Hyatt next argues that Plaintiff lacks Article III standing. MTD at 9. Not so. Plaintiff brings claims under CIPA. And "CIPA was passed 'to protect the right of privacy of the people of this state.'" *Facebook Internet Tracking*, 956 F.3d at 598 (9th Cir. 2020). Its "statutory provisions codify a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing." *Id*. The Supreme Court agrees, noting that: "Various intangible harms can also be concrete … Those include, for example … disclosure of private information, and intrusion upon seclusion." *TransUnion*, 594 U.S. at 425 (2021). Indeed, in *TransUnion*, the Supreme Court held that "1,853 class members whose credit reports were provided to third-party businesses suffered a concrete harm and thus have standing." *Id*. at 442. Likewise here, Plaintiff alleges his browsing and booking activity was intercepted by and disclosed to Adobe and Meta. This is a concrete harm that establishes standing.

Hyatt argues that "Plaintiff has failed to allege any *actual* sharing or use of *his*

'guest record' information[.]" MTD at 9. This is not true. Plaintiff alleges that "[u]pon accessing the Website, ... Plaintiff So browsed and booked a Hyatt hotel." FAC ¶ 3. "Each of these communications was intercepted in transit by the Third Parties – as enabled by Defendant – including communications that contained Plaintiff So's confidential 'guest records,' as defined by Cal. Civil Code. § 53.5." *Id.* Plaintiff also alleges that, to book a hotel room, one must submit the website the hotel and city they wish to visit (FAC ¶¶ 27, 28, 45, 26, 50, 51), the check-in and check-out dates, (*id.* ¶¶ 27, 45, 50)), and the number of rooms, guests, adults, and children (*id.* ¶¶ 27, 45, 50).

"[T]o the extent [defendant] suggests Plaintiff[] must plead the exact communications they had with the [] website, other courts have rejected that position." *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 956 (N.D. Cal. 2023) (citing *Byars*, 654 F. Supp. 3d at 1027 (C.D. Cal. 2023)).

And Hyatt's reliance on *Valenzuela v. Keurig Green Mountain, Inc.*, 2023 WL 6609351, at *3 (N.D. Cal. Oct. 10, 2023) is misplaced. MTD at 10. There, plaintiff simply alleged using a chat feature on a coffee cup website, without "alleg[ing] *any* information about the contents of her chat." 2023 WL 6609351, at *3. Here, by contrast, Plaintiff alleges the Hyatt website allows third-parties to intercept Plaintiff's comings and goings from specific hotels, the number of guests he had with him, and the particular rooms he selected, through various button clicks. *See* FAC ¶¶ 44-53; Argument § V.C, *infra*.

**III. THIS COURT HAS PERSONAL JURISDICTION OVER HYATT**

Hyatt argues "[t]his Court lacks specific personal jurisdiction … because the FAC fails to plausibly allege Hyatt purposefully directed its conduct toward California." MTD at 10. Not so.

Hyatt's operation of numerous hotels in California in conjunction with its interactive website satisfies the purposeful direction test. *See* FAC ¶¶ 1, 41; *Kauffman v. Papa John's Int'l, Inc.*, 2024 WL 171363, at *4 (S.D. Cal. Jan. 12, 2024) (personal

jurisdiction over defendant based on wiretapping that occurred on defendant's interactive website, noting the "integrat[ion]" of the "interactive website … with retail outlets in California" was sufficient).

Second, in *Briskin v. Shopify, Inc.*, 135 F.4th 739, 756 (9th Cir. 2025) (en banc), the Court held that a website with no brick-and-mortar stores was still subject to personal jurisdiction in California because it sold products to Californians, and "in the course of doing so, to obtain valuable personal data about California consumers for its own commercial gain. Accordingly, through those business activities, [Defendant] allegedly tortiously violated consumers' privacy through its collection, maintenance, and sale of valuable personal data from California consumers." Defendant's arguments to the contrary all rely on cases predating the *en banc Briskin* decision. *See* MTD at 10-11. Indeed, *Heiting v. Marriott Int'l, Inc.*, 743 F. Supp. 3d 1163, 1168 (C.D. Cal. 2024), expressly relied on the three-judge *Briskin* panel opinion which the full *en banc* court *subsequently reversed.*

## IV. PLAINTIFF SUFFICIENTLY ALLEGES A VIOLATION OF CIPA § 631

### A. Clause One of CIPA § 631(a) Applies to Internet Communications

Defendant argues that CIPA § 631(a) "applies only to 'unauthorized connection[s] … with any telegraph or telephone wire.'" MTD at 15. Not so. "Though written in terms of wiretapping, § 631(a) applies to internet communications." *Javier v. Assurance IQ, LLC*, 2022 WL 1744107 (9th Cir. May 31, 2022); *accord Byars*, 654 F. Supp. 3d at 1027; *Licea v. Old Navy, LLC*, 669 F. Supp. 3d 941, 945 (C.D. Cal. 2023); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1080 (C.D. Cal. 2021).

### B. Meta and Adobe are Third-Party Wiretappers

Hyatt argues that "Plaintiff has failed to plausibly allege that [Meta and Adobe] were *doing anything more* than providing Hyatt with tools for running its business[.]" MTD at 15 (emphasis added). But this argument is based on a misinterpretation of the

statute. For CIPA liability, "a third party's intent with respect to the use of the collected information is irrelevant. The inquiry turns on whether the third party has the capability to use the communications for any purpose other than to provide those communications to the intended recipient." *Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 861 (C.D. Cal. 2024).

As spelled out in the complaint, § 631 has four prongs, each of which "imposes liability for 'distinct and mutually independent patterns of conduct.'" FAC ¶ 88 (quoting *Tavernetti v. Superior Ct*., 22 Cal. 3d 187, 192-93 (1978)). And Plaintiff brings claims under the second, third, and fourth prongs. FAC ¶¶ 92-94. "[B]ut [only] the third prong of the statute already penalizes [actual] 'use.'" *Heerde*, 741 F. Supp. 3d at 860–61 (C.D. Cal. 2024) (quoting *Javier*, 649 F. Supp. 3d. at 900). "As a result, 'reading a[n] [actual] use requirement into the [other] prong[s] would add requirements that are not present (and swallow the third prong in the process).'" *Heerde*, 741 F. Supp. 3d at 861. Thus, the more recent trend among courts has been to simply ask whether a software "developer has the *capability* to use the information for any purpose other than to furnish the communications to the website owner." *Id.* at 860 (collecting cases) (emphasis in original).

Here, Plaintiff alleges that "Adobe has the capability to use the wiretapped data for purposes other than simply providing a recording to Defendant, including, but not limited to, operating, marketing, and improving its services." FAC ¶ 72. And Plaintiff alleges Meta can "use the information it collects ... for research and development[,]" "product improvement, provision, and securement[,]" and to "improve the effectiveness of ad delivery[.]" *Id.* ¶ 73. This is sufficient as a pleading matter to establish liability under the second and fourth prongs.

Hyatt on the other hand, relies on *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021) and its progeny, which have focused on the software developer's intentions. *See* MTD at 11. But "*Graham* and its progeny are based on a

misinterpretation of Section 631 and *Ribas*, both of which compel the conclusion that the third party's intentions with respect to the use of the collected information are irrelevant." *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 972 (N.D. Cal. 2023). "These cases are not binding on this Court." *Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 980 (C.D. Cal. 2023) (rejecting *Graham* and its progeny).

Still, even under the *Graham* approach, courts have denied motions to dismiss because the question of whether Meta and Adobe intended to use the information for, say, profiling and digital advertising, is a "question of fact for a jury, best answered after discovery[.]" *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1081 (C.D. Cal. 2021). So the Court need not decide this issue at the pleading stage.

### C. Plaintiff Alleges that Adobe and Meta "Read or Attempted to Read" the "Contents" of His Electronic Communications

Hyatt next argues that Plaintiff alleges "inactionable 'record information'" as opposed to the contents of communications. MTD at 17. Not so. When booking a room through Hyatt, the site asks consumers like Plaintiff questions like which hotel they would like to stay at, when, for how long, and how many guests they are bringing with them, and when consumers like Plaintiff give their answers, Adobe and Meta capture those answers. FAC ¶¶ 27, 28, 45, 26, 50, 51.

This "contact information provided as part of a sign-up process constitutes 'content' because this information is the subject of the communication." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022) (citing *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014)). It is actionable because it is "'information concerning the substance, purport, or meaning of [a] communication.'" *Byars*, 654 F. Supp. 3d at 1027 (internal citations omitted).

"[C]ontent" includes "the names of buttons clicked," *see In re Meta Pixel*, 647 F.Supp.3d at 795, along with "search queries" and "the particular document" requested. *See Brown v. Google LLC*, 685 F. Supp. 3d 909, 935-36 (N.D. Cal. 2023);

*see also Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *1 (N.D. Cal. Oct. 23, 2019). "Content" may also include "full-string, detailed URLs" that include "'the particular document within a website that a person views[.]'" *Facebook Tracking*, 956 F.3d at 605; *accord In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1083 (N.D. Cal. 2015).

In this case, the FAC is replete with screenshots showing communicative button clicks and URLs that were intercepted. *See* FAC ¶¶ 44-53. An example of the type of information intercepted is below. *See id.* ¶ 49.


```
id: 623497044413616
ev: Search
dl: https://www.hyatt.com/search/hotels/en-US/San%20Diego%2C%20California%2C%20United%20States?checkinDate=2025-02-19&checkoutDate=2025-02-20
&rooms=1&adults=2&kids=0&rate=Senior
rl:
if: false
ts: 1737055053048
cd[content_ids]: ["sanrs","sanis","sanxs","crqzs","sansw","jolla","sanjo","sanas","sanen","sanpa","tijzt","sando"]
cd[search_string]: San Diego, California, United States
cd[url]: /search/hotels/en-US/San%20Diego%2C%20California%2C%20United%20States
cd[search_city]: San Diego
cd[search_country]: United States
cd[search_state]: California
cd[page_type]: search_results
cd[checkin_weekday]: Wednesday
cd[checkin_date]: 2025-02-19
cd[checkout_date]: 2025-02-20
cd[num_adults]: 2
cd[num_children]: 0
cd[number_of_rooms]: 1
cd[number_of_travelers]: 2
cd[sc_page_title]: Resv:Flow1:Corp:HotelDisplay
```


Indeed, the Ninth Circuit held "a Google search URL [that] not only shows that a user is using the Google search engine, but also shows the specific search terms the user had communicated to Google" would constitute the contents of a communication. *In re Zynga*, 750 F.3d at 1106. And here, the screenshot above shows that a user searched for one hotel room in San Diego for two adults from February 19-20.

**D. Plaintiff Alleges Interception "In Transit"**

Defendant argues that Plaintiff "failed to plausibly allege ... communications were 'intercepted' while 'in transit[,]'" MTD at 17, and that Plaintiff is merely "parroting the statute's terminology." *Id.* at 18. Defendant is wrong.

As an initial matter, CIPA § 631(a) is written in the disjunctive, imposing liability for eavesdropping on a communication "while [it] is in transit or passing over any wire, line, or cable, ***or*** is being sent from, ***or*** received at any place within this state." Cal. Penal Code § 631(a) (emphasis added). Thus, it penalizes third parties who intercept communications "while the communication[s] [are] either 'in transit' or [are] 'being sent from' and 'received at' a place within this state." *Ribas v. Clark,* 696 P.2d 637, 640 (Cal. 1985); *Revitch*, 2019 WL 5485330, at *2. Based on CIPA's plain language, even if Plaintiff's communications were not intercepted "in transit" (they were) his communications were intercepted while being "sent from or received at any place within California." *See* FAC ¶¶ 3, 11, 92-93. As such, Plaintiff alleges an underlying violation of § 631.

And even though it is not required by § 631, Plaintiff still *does* plausibly allege interception in transit. The FAC explains in detail how the Adobe (¶¶ 33-37) and Meta (¶¶ 38-43) trackers work. And the FAC sets out the precise means by which the communications were intercepted while "in transit," prior to reaching their final destination. *See id.* ¶ 32 ("trackers [] cause the browser to secretly and simultaneously duplicate the user's Website communications … This entire process occurs within milliseconds"). Nothing more is required. *See, e.g.*, *Valenzuela*, 686 F. Supp. 3d at 978–79 (C.D. Cal. 2023); *Byars*, 654 F. Supp. 3d at 1027; *D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793, at *8 (S.D. Cal. Oct. 24, 2023). Indeed, "[t]hese same allegations also distinguish this case from the other (non-binding) cases [Hyatt] cites for its argument that allegations of real-time interception are insufficient." *Valenzuela*, 686 F. Supp. 3d at 978 n.6 (C.D. Cal. 2023).

Hyatt also argues it did not violate CIPA because "the purported communications were 'duplicate[s]' of users' communications with the Website, not communications en route to Hyatt." MTD at 18 (citation omitted). But the Ninth Circuit has already rejected that argument. "[S]imultaneous, unknown duplication and

communication … do[es] not exempt a defendant from liability." *Facebook Tracking*, 956 F.3d at 608 (9th Cir. 2020). So "alleg[ations] that … the Search Terms were replicated and sent in parallel to the tracking entities" is sufficient to show Plaintiff's "communications were intercepted in transit." *Heerde*, 741 F. Supp. 3d at 862.

### E. Plaintiff Alleges that Hyatt "Aided, Agreed With, Employed, *Or* Conspired With" Third Parties

Hyatt argues that Plaintiff failed to plausibly allege aiding ***and abetting***. MTD at 19. Hyatt's argument stumbles out of the gate because the word "abet" appears nowhere in CIPA § 631(a). Instead, the text of the fourth clause of CIPA § 631(a) provides for liability when a person "aids, agrees with, employs, ***or*** conspires with any person" to violate the statute. Cal. Pen. Code § 631(a) (emphasis added). Like other provisions in the statute, this one uses the ***disjunctive*** "***or***." "The word 'or' is ordinarily used as a disjunctive 'that marks an alternative generally corresponding to 'either' as 'either this or that.'" *Barker Bros. v. City of Los Angeles*, 10 Cal. 2d 603, 606 (1938).

So there is liability if Hyatt ***either*** "aids" ***or*** "agrees with," ***or*** "employs" ***or*** conspires with" Adobe and Meta. Again, nowhere in the text of CIPA does the word "abet" appear.

"The plain text of section 631(a) is unambiguous on this issue … [i]t does not require that a party aid *and* abet." *Tate v. Vitas Healthcare Corp.*, 762 F. Supp. 3d 949, 959 (E.D. Cal. 2024) (emphasis in original). So "there is no basis to read in a common law standard of aiding and abetting when the statute itself is clear." *Id*. "Defendant's contention that 'aids' means 'aiding and abetting' ignores the 'agrees with, employs, or conspires with' language of the clause." *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1130 (S.D. Cal. 2023). So this court should "find[] the approach in *Cousin* more persuasive because it more closely follows the language of the statute." *St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675, at *8 (N.D. Cal. Oct. 1, 2024); *Doe v. Tenet Healthcare Corp.*, 2025 WL 1635956, at *15 (E.D. Cal. June 9, 2025).

Even if the common law standard applied (it does not), "Plaintiff has plausibly alleged that Defendant aided and abetted [the Third Parties'] Section 631(a) violation." *Heiting v. Taro Pharms. USA, Inc.*, 2024 WL 3738055, at *6 (C.D. Cal. July 31, 2024) (denying the defendant's motion to dismiss using a common law definition of aiding and abetting). Here, "allegations explain that Defendant, itself, embeds the allegedly violative [Third Party] software, that Defendant knows that [Third Party] software intercepts and collects consumer communications without their knowledge or consent, and that Defendant benefits from [Third Party] software. The [F]AC thus supports a plausible inference that Defendant knew that [the Third Party] software breached a duty to Plaintiff and that Defendant substantially assisted that breach by embedding the software." *Id.*

## V. PLAINTIFF SUFFICIENTLY ALLEGES A VIOLATION OF CIPA § 632

### A. Plaintiff Alleges Eavesdropping or Recording

Citing no authority, Hyatt argues "Plaintiff makes no allegation that Hyatt eavesdropped on or recorded any communications, let alone that Hyatt did so 'intentionally.'" MTD at 19. But Plaintiff alleges unlawful eavesdropping by the Third Parties. *See* FAC ¶¶ 98-110. And a party who aids and agrees with a violation of CIPA § 632 is also liable under the statute. *See Vera v. O'Keefe*, 791 F. Supp. 2d 959, 965 (S.D. Cal. 2011) (citing Cal. Penal Code § 631); *Vaccaro v. Altais*, 2023 WL 7003211, at *5 (C.D. Cal. Oct. 23, 2023) ("it could be sufficient if [Defendants] aided and abetted the commission of the offense by intending for the calls to be recorded without providing adequate safeguards to prevent the calls from being illegally recorded"). "The plain language of the statute does not limit liability to the person who has physically recorded a confidential conversation." *Vera*, 791 F. Supp. 2d at 965.

### B. The Tracking Technologies are Electronic Amplifying or Recording Devices

Defendant argues that the software "does not constitute a 'device' under CIPA § 632." MTD at 19. However, "[t]he majority of courts to consider this issue ... have

entertained the notion that software may be considered a device for the purpose of the Wiretap Act." *United States v. Hutchins*, 361 F. Supp. 3d 779, 795 (E.D. Wis. 2019) (collecting cases); *see also, e.g.*, *Gladstone v. Amazon Web Servs., Inc.*, 739 F. Supp. 3d 846, 856 (W.D. Wash. 2024) ("[T]he Court finds that 'device,' as used in Section 632, can include software."); *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1080 (N.D. Cal. 2023); *In re Carrier IQ*, 78 F. Supp. 3d. at 1084.

Defendant's case law is off-base. *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185 (N.D. Cal. 2019) only considered CIPA § 637.7. "Section 632 contains materially different language than Section 637.7, and it does not contain similar context that would narrow the meaning of 'device' here." *Gladstone*, 739 F.Supp.3d at 857 (distinguishing *In re Google Location History Litig.*).[2]

**C. The Communications At Issue Are Confidential**

Defendant argues that "Internet communications are presumptively not confidential under section 632 … Nor can Plaintiff manufacture confidentiality with blanket references to Cal. Civil Code section 53.5, which pertains to 'guest records.'" MTD at 20.

Defendant is wrong and this exact argument was rejected by Judge Wu in *Mitchell v. Sonesta Int'l Hotels Corp.,* 2024 WL 4471772 (C.D. Cal. Oct. 4, 2024), *adopted as modified*, 2024 WL 4474491 (C.D. Cal. Oct. 4, 2024):

> Section 632 makes no exception on its face for communications over the Internet, or in the "Internet Age," meaning that there is no requirement that Plaintiff allege something 'unique' about her particular Internet communications in order to make them private/confidential… the Court also agrees with Plaintiff that she has certainly alleged that she had a reasonable basis to believe that her communications were "confidential" (irrespective of whether or not they fall within the definition of "guest records" under California Civil Code § 53.5)…

[2] Defendant's reliance on *Moreno v. San Francisco Bay Area Rapid Transit Dist.*, 2017 WL 6387764 (N.D. Cal. Dec. 14, 2017) is misplaced for the same reason. *See* MTD at 19.

CIPA § 632 protects against "'intentional, nonconsensual recording' of communications 'regardless of the content of the conversation' involved or how parties choose to disseminate it thereafter." *Brown v. Google LLC*, 685 F. Supp. 3d at 938 (citation omitted). "Rather, the inquiry is whether 'any party to the communication desires it to be confined to the parties thereto.'" *Id.* (citing Cal. Pen. Code § 632(c)). Plaintiff clearly alleges that he intended the communications be confined to him and Defendant. *See, e.g.*, FAC ¶¶ 3, 16, 22, 24-26, 74-77, 108-09.

Additionally, courts have routinely recognized communications to be "confidential" under CIPA § 632 when shown to be sensitive under applicable laws, regulations, or industry norms. *See, e.g.*, *In re Meta Pixel*, 647 F. Supp. 3d at 799 (finding communications confidential when protected by federal law); *Bernstein v. United Collection Bureau, Inc.*, 2013 WL 5945056, at *4 (S.D. Cal. Nov. 5, 2013); *Ewing v. Flora*, 2015 WL 12564225, at *4 (S.D. Cal. Mar. 25, 2015).

Citing no authority, Hyatt argues that "Plaintiff provides no plausible allegations Adobe or Meta used anyone's information in a manner that renders them anything other than contracted 'third party service providers[.]'" MTD at 20. Not so. Plaintiff alleges "the Third Parties each have the capability to use the contents of conversations they collect through their respective wiretaps for their own purposes" (FAC ¶ 71) and Hyatt has not proffered that the Third Parties "ha[ve] no independent right to use or share the data beyond the terms of the contract." Cal. Civ. Code § 53.5(f).[3] "At the pleading stage, all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party." *Facebook Tracking*, 956 F.3d at 601.

---

[3] Plaintiff had a reasonable basis to believe his communications were confidential regardless of whether they qualify as guest records, as explained *supra*.

## VI. HYATT'S MOTION TO STRIKE SHOULD BE DENIED

Defendant argues that "Plaintiff's proposed class is facially overbroad and should be stricken." MTD at 21. Not so.

*First*, motions to strike class allegations at the pleadings stage are almost always denied as premature. As this Court notes, "motions to strike class allegations are generally disfavored because 'a motion for class certification is a more appropriate vehicle." *Rowe v. Univ. of S. California*, 2024 WL 5467459, at *2 (C.D. Cal. Dec. 23, 2024) (Birotte, J.) (citation omitted). "Indeed, to 'strike class allegations at this juncture would be inconsistent with the type of 'rigorous analysis' that this [C]ourt would endeavor to undertake in deciding whether to ultimately certify a class." *Id.* (citation omitted).

*Second*, CIPA § 631(a) applies to all types of communications, not just confidential communications. *Compare* Cal. Penal Code § 631(a) *with* § 632; *see also Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1073 (N.D. Cal. 2021) ("Plaintiffs bring claims under Sections 631 and 632 of the CIPA … Google does not argue that the Section 631 claim is subject to dismissal").

*Third*, Defendant is wrong that CIPA's "limitations period" renders the proposed class overbroad. MTD at 21. Plaintiff's claims are subject to equitable tolling because Defendant surreptitiously embeds website code without adequate notice or consent. *See* FAC ¶¶ 2, 3, 38, 74-77. "The Ninth Circuit has cautioned against resolving equitable tolling issues on a 12(b)(6) motion unless 'the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.'" *Ruegsegger v. Caliber Home Loans, Inc.*, 2019 WL 8163640, at *11 (C.D. Cal. Jan. 8, 2019); *see also Doe v. Pasadena Hosp. Ass'n, Ltd.*, 2020 WL 1244357, at *10 (C.D. Cal. Mar. 16, 2020) (denying motion to strike class allegations despite "foresee[ing] problems at [] class certification … in light of potential questions regarding whether equitable tolling is applicable for class members").

Defendant's case law is unavailing. *See* MTD at 21. Unlike in *Lyons v. Bank of Am., NA*, 2011 WL 6303390, at *7 (N.D. Cal. Dec. 16, 2011), it is not true that "members [] have not been injured." To the contrary, Class members "who have accessed and navigated the Website" (*see* FAC ¶¶ 27-30) have standing to sue. *See* Argument Sec. II, *infra*. And unlike the TCPA at issue in *Brown v. Nano Hearing Tech Opco, LLC*, 2024 WL 3367536, at *8 (S.D. Cal. July 9, 2024), the CIPA does not "expressly preclude[] claims[.]"

Finally, Plaintiff does not oppose Defendant's request to strike his request for "punitive, actual or compensatory damages, restitution, and injunctive relief," MTD at 21-22, which the Plaintiff agreed to in the pre-motion meet and confer to streamline proceedings.

## CONCLUSION

For the foregoing reasons, the Court should deny Hyatt's motion to transfer, or, alternatively, dismiss and strike the First Amended Complaint, except where otherwise stated. Should the Court grant any opposed part of Hyatt's motions, Plaintiff respectfully requests that he be granted leave to file an amended complaint.

Dated: June 16, 2025

Respectfully submitted,

By: */s/ Stefan Bogdanovich*

**BURSOR & FISHER, P.A.**
Stefan Bogdanovich (State Bar No. 324525)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: sbogdanovich@bursor.com

Philip L. Fraietta (State Bar No. 354768)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150

Facsimile: (212) 989-9163
E-mail: pfraietta@bursor.com

*Attorneys for Plaintiff*

**CERTIFICATE OF COMPLIANCE PURSUANT TO L.R. 11-6.2**

The undersigned, counsel of record for Plaintiff Juhyun So certifies that this brief contains 6,999 words, which complies with the word limit of L.R. 11-6.1.

By: /s/ *Stefan Bogdanovich*
Stefan Bogdanovich