Terence N. Hawley (SBN 179106)
Email: thawley@reedsmith.com
Quynh La (SBN 341162)
Email: qla@reedsmith.com
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, CA 94105-3659
Phone: (415) 543-8700
Fax: (415) 391-8269

*Attorneys for Defendant*
*Hyatt Corporation*

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

JUHYUN SO, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

HYATT CORPORATION,

Defendant.

Case No. 2:25−cv−01298−AB−SSC

**REPLY IN SUPPORT OF MOTION TO TRANSFER OR, IN THE ALTERNATIVE, TO DISMISS AND STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT**

Date: August 8, 2025
Time: 10:00 a.m.
Judge: Hon. André Birotte Jr.
Courtroom: Courtroom 7B
First Street Courthouse
350 W. 1st Street, 10th Fl.
Los Angeles, CA 90012

Action Filed: ] February 14, 2025

# TABLE OF CONTENTS


Page

I . INTRODUCTION ..... 1

II . HYATT'S MOTION TO TRANSFER SHOULD BE GRANTED BECAUSE PLAINTIFF CONSENTED TO HYATT'S TERMS WHEN HE ESTABLISHED HIS REWARD PROGRAM MEMBERSHIP ..... 2

A. The Terms Were Conspicuously Disclosed When Plaintiff Registered for World of Hyatt ..... 4

B. Plaintiff Unambiguously Manifested His Intent to Be Bound by the Terms When He Registered ..... 6

C. Plaintiff Again Consented to Hyatt's Terms Through Use of the Website ..... 6

III . HYATT'S MOTION TO DISMISS SHOULD BE GRANTED BECAUSE PLAINTIFF CONSENTED TO HYATT'S PRIVACY POLICY ..... 7

IV . HYATT'S MOTION TO DISMISS SHOULD BE GRANTED BECAUSE PLAINTIFF LACKS STANDING ..... 9

V . THIS COURT LACKS PERSONAL JURISDICTION OVER HYATT ..... 10

VI . PLAINTIFF'S CIPA SECTION 631 CLAIM SHOULD BE DISMISSED ..... 11

VII . PLAINTIFF'S SECTION 632 CLAIM SHOULD BE DISMISSED ..... 13

VIII . PLAINTIFF'S CLASS ALLEGATIONS SHOULD BE STRICKEN ..... 14

IX . CONCLUSION ..... 15


REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Asberry v. Money Store*,
2018 U.S. Dist. LEXIS 133795 (C.D. Cal. Aug. 8, 2018) .................................15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..........................................................................................9

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ...............................................................................6

*Briskin v. Shopify*,
135 F.4th 739 (9th Cir. 2025) ...........................................................................10

*Chabolla v. Classpass Inc.*,
129 F.4th 1147 (9th Cir. 2025) .......................................................................5, 6

*Davis v. Facebook, Inc.*,
956 F.3d 589 (9th Cir. 2020) ...............................................................................9

*Edwards v. Mubi, Inc.*,
2025 U.S. Dist. LEXIS 64819 (N.D. Cal. Mar. 31, 2025) ...................................6

*Forby v. One Techs.*,
2016 U.S. Dist. LEXIS 203819 (S.D. Ill. Mar. 25, 2016)....................................3

*Hinton v. Nmi Pac. Enters.*,
5 F.3d 391 (9th Cir. 1993) ................................................................................15

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023)..............................................................12

*Keebaugh v. Warner Bros. Ent. Inc.*,
100 F.4th 1005 (9th Cir. 2024).......................................................................3, 5

*Long v. Provide Commerce, Inc.*,
200 Cal. Rptr. 3d 117 (2016)...............................................................................4

*Lyons v. Bank of Am.*,
2011 U.S. Dist. LEXIS 145176 (N.D. Cal. Dec. 16, 2011) ...............................14

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*Mazal Grp. LLC v. Yousef*,
2024 U.S. Dist. LEXIS 70766 (C.D. Cal. Mar. 1, 2024) .................................. 10

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .............................................................. 12

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017) ................................................................................. 3

*Mikulsky v. Bloomingdale's, LLC*,
2025 U.S. App. LEXIS 15222 (9th Cir. June 20, 2025) .................................... 10

*Mitchell v. Sonesta Int'l Hotels Corp.*,
2024 U.S. Dist. LEXIS 186701 (C.D. Cal. Oct. 4, 2024) ................................. 13

*Morrison v. Yippee Ent., Inc.*,
756 F. Supp. 3d 842 (S.D. Cal. 2024) ............................................................... 6

*Oberstein v. Live Nation Entm't, Inc.*,
60 F.4th 505 (9th Cir. 2023) ........................................................................ 3, 4, 5

*Patrick v. Running Warehouse, LLC*,
2022 U.S. Dist. LEXIS 190483 (C.D. Cal. Oct. 18, 2022), *aff'd*, 93 F.4th 468 (9th Cir. 2024) ................................................................................. 3

*Revitch v. New Moosejaw, LLC*,
2019 U.S. Dist. LEXIS 186955 (N.D. Cal. Oct. 23, 2019) ................................ 14

*Rowe v. Univ. of S. Cal.*,
2024 U.S. Dist. LEXIS 233456 (C.D. Cal. Dec. 23, 2024) ................................ 14

*Sadlock v. Walt Disney Co.*,
2023 U.S. Dist. LEXIS 132295 (N.D. Cal. July 31, 2023) .................................. 6

*Sarhadi v. Pear Health Labs, Inc.*,
2025 U.S. Dist. LEXIS 93495 (N.D. Cal. Apr. 17, 2025) ................................... 3

*Thomas v. Papa John's Int'l, Inc.*,
2025 U.S. App. LEXIS 15039 (9th Cir. June 18, 2025) .................................... 10

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........................................................................................ 9, 10

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*Wolf v. Travolta*,
2014 U.S. Dist. LEXIS 165513 (C.D. Cal. Nov. 24, 2014) ..... 15

**Statutes**

Cal. Penal Code § 631 ..... 11, 12, 13

Cal. Penal Code § 632 ..... 13, 14

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## I. INTRODUCTION

Unlike a casual web surfer or one-time visitor, Plaintiff deliberately established a World of Hyatt rewards membership on Hyatt's Website in ***2018***. As any reasonable person would expect, in exchange for the benefits provided, Plaintiff's membership carried with it various terms, conditions, and policies, which were conspicuously disclosed to Plaintiff as part of the membership registration workflow. Those terms included exclusive venue in Chicago and consent to Hyatt's Privacy Policy for Guests ("Privacy Policy"). After registering, Plaintiff then used his membership, returning to the site and engaging in over 150 transactions, including hotel bookings during which he reaffirmed his consent to Hyatt's Privacy Policy . . . again, and again, and again. Plaintiff's World of Hyatt registration, his active use of the resulting membership, and the Website's conspicuous disclosures establish beyond dispute that he is bound by the Chicago venue clause, and that he consented to the alleged disclosures of basic booking information about which he now complains.

Plaintiff's Complaint sought to avoid these inconvenient facts, making no mention of Plaintiff's reward member status (which he has since acknowledged) or his hundreds of site interactions, and using cropped images of Hyatt's webpage to conceal hyperlinks and other aspects of the booking interface. Plaintiff's oversized Opposition[1] then sought to deflect attention from these pleading failures, arguing that Hyatt's disclosures were not sufficiently conspicuous "in context." But in reality, "context"—including Plaintiff's membership status, his site usage, and the webpages themselves—establishes the enforceability of Hyatt's terms and policies as a matter of law.

Plaintiff's efforts to overcome Hyatt's non-consent-based challenges are similarly unpersuasive, as they are grounded in vaguely described experiences of unidentified "users," "purchasers," and "consumers" at unspecified time periods, and to Meta's and Adobe's alleged technological "capability." Plaintiff fails to offer any well-

[1] Hyatt maintains its objections to Plaintiff's oversized brief and associated ex parte filings. Dkt. 27, 29.

pled facts tethering these abstract harms to any cognizable injury or violation *to Plaintiff* resulting from his use of the Website.

As to the putative class, after decrying Hyatt's supposed disclosure of "guest records" throughout his Complaint and Opposition, Plaintiff seeks to defend his overly broad class definition—which includes everyone who merely visited the Website from California over an unlimited timeframe—with perfunctory arguments that Hyatt's motion to strike is "premature." However, courts need not wait for class certification, with its associated discovery costs and other burdens, in circumstances where, as here, the class definition makes clear on its face that no class can properly be certified.

Plaintiff's case must be transferred to the Northern District of Illinois, or the Complaint should be dismissed and the class and improper remedy allegations stricken.

## II. HYATT'S MOTION TO TRANSFER SHOULD BE GRANTED BECAUSE PLAINTIFF CONSENTED TO HYATT'S TERMS WHEN HE ESTABLISHED HIS REWARD PROGRAM MEMBERSHIP

Plaintiff does not deny he joined Hyatt's loyalty Program, World of Hyatt, in 2018. Dkt. 26, *passim*. Nor does he deny that after enrolling, he engaged in over 150 transactions through his loyalty membership. *Id*. Indeed, Plaintiff has not objected to *any* of Hyatt's evidence or its Request for Judicial Notice. Plaintiff does not even profess he was *actually unaware* of the World of Hyatt Terms and Conditions ("Terms") and Privacy Policy. He also does not dispute that the venue clause in the Terms covers this lawsuit or contend the Terms are unfair or unconscionable. *Id*.

Nevertheless, Plaintiff argues that, despite receiving the benefits of his World of Hyatt membership for over six years, he is not subject to the Terms or the Privacy Policy. Plaintiff contends no contract was formed because Hyatt supposedly did not provide reasonably conspicuous notice of the Terms or Privacy Policy, and he purportedly did not unambiguously manifest assent. *Id*. at 3-17. Further, after relying on cropped images in his Complaint, Plaintiff now focuses on new sets of screenshots, arguing Hyatt's disclosures are insufficient when viewed "in context." *Id*. at 2.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Plaintiff's arguments fail because he misstates the applicable legal standards and the record. Notwithstanding his newfound emphasis on "context," Plaintiff completely ignores the ***transactional context*** for his World of Hyatt registration: establishing an ***ongoing membership in a rewards program***, which would put any reasonable user on notice that additional terms and conditions will apply. *See, e.g., Oberstein v. Live Nation Entm't, Inc.*, 60 F.4th 505, 515-17 (9th Cir. 2023) (affirming motion to compel enforcement of sign-in wrap agreement where transactional context of online registration process indicated a continuing relationship).[2] This failure alone warrants rejection of Plaintiff's arguments. Plaintiff's contentions regarding the visual aspects of the website fall short as well.

Plaintiff attempts to fault Hyatt for not using a "clickwrap" agreement, but he does not (and cannot) dispute that sign-in wrap agreements have regularly been enforced in the Ninth Circuit as a matter of law. Indeed, sign-in wrap agreements like Hyatt's have repeatedly been deemed valid and enforceable at the pleadings stage. *See, e.g., Oberstein*, 60 F.4th at 517 (rejecting objections that the defendants' screenshots "did not accurately capture the [plaintiffs'] experience."); *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1019-21 (9th Cir. 2024) (reversing district court's failure to enforce sign-in wrap agreement where court incorrectly found lack of an ongoing relationship and failed to address visual elements of sign-in screen); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 77-80 (2d Cir. 2017) (reversing district court's declination to enforce sign-in wrap agreement under California law); *Patrick v. Running Warehouse, LLC*, 2022 U.S. Dist. LEXIS 190483, at *17-19 (C.D. Cal. Oct. 18, 2022), *aff'd*, 93 F.4th 468 (9th Cir. 2024) (finding sign-in wrap agreement on a checkout page provided reasonably conspicuous notice); *Sarhadi v. Pear Health Labs, Inc.*, 2025 U.S. Dist.

[2] Plaintiff is incorrect that Hyatt conceded the applicability of California law. Rather, Hyatt contends its terms are enforceable under either California or Illinois law. *See Forby v. One Techs.*, 2016 U.S. Dist. LEXIS 203819 (S.D. Ill. Mar. 25, 2016) (enforcing sign-in wrap agreement).



REED SMITH LLP
A limited liability partnership formed in the State of Delaware

LEXIS 93495, at *14-22 (N.D. Cal. Apr. 17, 2025) (finding plaintiff had reasonably conspicuous notice of terms and enforcing sign-in wrap agreement).

"[W]hether a certain set of facts is sufficient to establish a contract [including the issue of conspicuousness] is a question of law." *Oberstein*, 60 F.4th at 517-518 (citing *Long v. Provide Commerce, Inc.,* 200 Cal. Rptr. 3d 117, 123-24 (2016)). "Thus, where the authenticity of screenshots is not subject to factual dispute, courts may decide the issue as a 'pure question of law.'" *Id*. at 518. Moreover, where "baseline notice requirements" are met, competing evidence of user confusion is insufficient to avoid the agreement. *Id*. Here, the record, including Plaintiff's clear intent to establish a continuing relationship with Hyatt and Hyatt's uncontested submissions, bind him to the Terms and Privacy Policy as a matter of law.

**A. The Terms Were Conspicuously Disclosed When Plaintiff Registered for World of Hyatt**

Again, Plaintiff's Complaint omits any reference to his World of Hyatt membership or his extensive use of that membership. Yet, Plaintiff argues that when viewed "in context," the World of Hyatt Terms and Privacy Policy are not reasonably conspicuous. Dkt. 26 at 2. According to Plaintiff, the proper "context" is his own curated screenshots, which include plucked images of unrelated third parties' pages, with little or no foundational support.

Plaintiff's arguments fall flat due to his failure to address a key element of the "context" for his registration: his undisputed intent to establish an ongoing rewards membership with Hyatt. Dkt. 19-1 ¶¶ 5, 6. Among other things, World of Hyatt allows members to accumulate and redeem "points" for rewards that include free nights, room upgrades, meals, and other benefits.[3] Where, as here, the context includes an intent to establish a continuing relationship, reasonable users understand that the relationship is

[3] *See* https://world.hyatt.com/content/gp/en/program-overview.html; https://web.archive.org/web/20180826051600/https://world.hyatt.com/content/gp/en/member-benefits/member.html?icamp=woh_member.



REED SMITH LLP
A limited liability partnership formed in the State of Delaware

accompanied by other terms or policies. *Oberstein*, 60 F.4th at 517 ("[T]he context of this transaction, requiring a full registration process, reflected the contemplation of 'some sort of continuing relationship' that would have put users on notice for a link to the terms of that continuing relationship."); *Keebaugh*, 100 F.4th at 1020. Plaintiff's cited authorities are in accord. *See Chabolla v. Classpass Inc*., 129 F.4th 1147 (9th Cir. 2025) (holding that both context of transaction and visual elements of website are relevant to assessing sufficiency of website notice).

In addition, the Terms and Privacy Policy are reasonably conspicuous in the context of Hyatt's Webpage. They are hyperlinked in bold, bright blue font that contrasts with the white background and surrounding text. Dkt. 19-1 ¶¶ 6, 7; Dkt. 18-11, 18-12. And the Terms and Privacy Policy appear directly above the "Join Now" button in the workflow. *Id*. While Plaintiff attempts to characterize the Terms and Privacy Policy as "buried," and the page as having "clutter," these characterizations are implausible.[4] "[T]he authenticity of [Hyatt's] screenshots is not subject to factual dispute." *Oberstein*, 60 F.4th at 518. Indeed, Plaintiff did not object to, or challenge the authenticity of, Hyatt's evidence or respond to Hyatt's Request for Judicial Notice regarding the actual webpages. Nor does Plaintiff mention that Hyatt provided hyperlinks with its Motion so the Court can view the pages, including archived versions, online. *See, e.g.,* https://www.hyatt.com/en-US/member/enroll. Hyatt has established the "baseline requirements for constructive notice," and Plaintiff's attempt to confuse the record under the guise of "context" should be rejected—particularly given his failure to disclose his membership in his Complaint. *Oberstein*, 60 F.4th at 517-518 (enforcing sign-in wrap agreement where terms appeared in blue text "located directly on top of or below the action button").

[4] Hyatt objects to Plaintiff's screenshots of third-party content (Dkt. 26 at 8, 9, 10, 11, 13, 16) and certain manipulated screenshots of Hyatt content (*id*. at 9, 15) as lacking foundation and irrelevant.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Further, Hyatt's disclosures are consistent with *Chabolla* and the other cases the Opposition cites. For example, *Chabolla* focused not on the use of images but on the presence of multiple "action" buttons stacked vertically on the side of the screen—a problem not presented by Hyatt's Website. *Chabolla*, 129 F.4th at 1157; *see also Sadlock v. Walt Disney Co.*, 2023 U.S. Dist. LEXIS 132295, at *23-25 (N.D. Cal. July 31, 2023) (declining to enforce hyperlinked terms distanced from action button by lengthy string of text and that appeared in blue on black background); *Morrison v. Yippee Ent., Inc.*, 756 F. Supp. 3d 842, 850-51 (S.D. Cal. 2024) (terms appeared in dense paragraph on page with competing hyperlinks that were in closer proximity to action button); *Edwards v. Mubi, Inc.*, 2025 U.S. Dist. LEXIS 64819, at *13-24 (N.D. Cal. Mar. 31, 2025) (hyperlink was in small text that was same color as surrounding text and appeared against dynamic background of rolling movie clips).

**B. Plaintiff Unambiguously Manifested His Intent to Be Bound by the Terms When He Registered**

Next, Plaintiff argues that Hyatt's webpages do not provide a mechanism for unambiguous manifestation of assent. Dkt. 26 at 12-13. This argument borders on frivolous. Hyatt's enrollment page says that "By ***joining*** you agree to the World of Hyatt Terms and Conditions. We collect and use your personal information in accordance with our Privacy Policies." Dkt. 18-10 and 19-1 at ¶¶ 6-7 and Exs. 9-10. (emphasis added). This language appears directly above the "Join Now" button. *Id*. Accordingly, no user could reasonably be confused as to "what action would constitute assent." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 858 (9th Cir. 2022). Plaintiff's citations to *Berman* and *Chabolla* are inapposite, as the membership language in *Berman* appeared above a "Continue" button and the membership language in *Chabolla* appeared above a "Redeem now" button. *Id*; *Chabolla,* 129 F.4th at 1176.

**C. Plaintiff Again Consented to Hyatt's Terms Through Use of the Website**

Plaintiff visited the Hyatt website over 150 times after establishing his rewards account, and the "context" of those visits, including visits in 2024, included disclosure



REED SMITH LLP
A limited liability partnership formed in the State of Delaware

of Hyatt's Website Terms & Conditions ("Website Terms"), which also contain a Chicago venue clause. Dkt. 18-1 ¶¶ 16, 17 and Ex. 7 at p. 4. Contrary to Plaintiff's suggestion, this is not a "cumulative notice" argument. Rather, Hyatt contends each of its notices is effective independently, and recognition of the Website Terms is wholly consistent with Plaintiff's assertion that the full context of his visits be considered.

## III. HYATT'S MOTION TO DISMISS SHOULD BE GRANTED BECAUSE PLAINTIFF CONSENTED TO HYATT'S PRIVACY POLICY

Consent is an *affirmative element* of Plaintiff's CIPA claims, and court's regularly dismiss CIPA claims for lack of consent. Dkt. 18 at 12. Here, Plaintiff's Complaint should be dismissed because he consented to the conduct alleged in the Complaint through multiple mechanisms. *Id*. at 12-14. In response, Plaintiff does not dispute that Hyatt's Privacy Policy specifically disclosed the challenged conduct. Dkt. 26. Instead, Plaintiff again argues that the disclosures are not effective when viewed "in context." Dkt. 26 at 2. This argument goes nowhere.

*First*, as set forth above, Plaintiff consented to the Privacy Policy through his 2018 registration in World of Hyatt, and Plaintiff's contrary arguments are unavailing.

*Second*, Plaintiff separately consented to the Privacy Policy each time he booked a room. The Privacy Policy was *conspicuously disclosed* in the booking flow. Dkt. 18-1 ¶¶ 5, 6, Ex. 1. While Plaintiff fails to mention it, the Privacy Policy appears under a bold heading that reads "Terms & Conditions." *Id*., Ex. 1. That section lists three items: Hyatt's Cancellation Policy, its Deposit Policy, and Hyatt's Privacy Policy. The entire section contains very little text, and the Privacy Policy is hyperlinked in bright blue, bold font, in stark contrast to what little adjacent text there is. *Id*. Indeed, the Privacy Policy is the *only* hyperlinked item in that section. And the hyperlink appears directly above the "Book My Stay" button. *Id*. Plaintiff's characterization of the hyperlink as "buried" is nonsensical because a user *must* scroll through the page and hit the "Book My Stay" button to complete the transaction. Dkt. 18-1 ¶ 6. Hyatt's disclosure of the Privacy Policy in the Term & Conditions Section just above the action button was

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

reasonably conspicuous to typical users of the site—including repeat users like Plaintiff. *See* cases at p. 3-6, *supra*. Hyatt surpasses "baseline" notice requirements, and the authenticity of Hyatt's webpages is uncontested.

Plaintiff also unambiguously *manifested assent* to the Privacy Policy when he booked rooms, including the 2024 bookings referenced in the Complaint. The hyperlink to the Privacy Policy appears in the "Terms & Conditions" section of the booking page along with other items that are plainly related to the consummation of a room reservation—specifically, the cancellation and deposit policies. *Id*. ¶¶5, 6, Ex. 1. The fields above the "Terms & Conditions" section require users to input booking-related information. *Id*., Ex. 1. Accordingly, the sentence with the hyperlink to the Privacy Policy reads, "I have read and acknowledge the use of my personal information in accordance with the Hyatt Privacy Policies." *Id*. As such, the direct connection between the Privacy Policy governing user inputs and the "Book My Stay" button is obvious, and clicking that button constitutes an unambiguous manifestation of consent to the Privacy Policy. Unlike a "Continue" or "Redeem now" button, no other reasonable construction of the page exists. Nor does Plaintiff offer one, simply arguing that Hyatt "never tell[s] users that they will be deemed to 'agree' to the Privacy Policy." Dkt. 26 at 13. But no case requires use of the term "agree" or other magic words, let alone implausible interpretations of otherwise unambiguous webpages, like Hyatt's.

*Third*, Plaintiff mischaracterizes Hyatt's cookie banner as "browse wrap," and his efforts to marginalize the banner, and Hyatt's other privacy-related disclosures, are unpersuasive. Hyatt's cookie banner is not "buried." It follows users as they scroll through the page until users affirmatively close the banner or visit the Cookie Center. *See* www.hyatt.com; Dkt. 18-1 ¶¶ 12, 13. These separate notices independently and conspicuously disclosed Hyatt's Privacy Policy to Plaintiff and other users and must be

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

considered as part of the "context" for Plaintiff's multiple site visits.[5] Plaintiff's consent to the alleged disclosures in question bars all of his CIPA claims.

## IV. HYATT'S MOTION TO DISMISS SHOULD BE GRANTED BECAUSE PLAINTIFF LACKS STANDING

Plaintiff's Opposition fails to address Hyatt's core standing arguments. Plaintiff must support his claim of standing with plausible, as opposed to conclusory, allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Hyatt's Motion argued that Plaintiff failed to plausibly allege standing because his claims of purported information sharing were based on (1) abstract screenshots untethered to his own site usage and (2) promotional materials relating to Meta's and Adobe's alleged "capability" to deanonymize user information. Dkt. 18 at 9-10. Further, Plaintiff failed to allege that Hyatt's conduct resulted in any actual harm. *Id*. In response, Plaintiff merely references the same portions of his Complaint that display screen captures unrelated to Plaintiff's actual site visits. Dkt. 26 at 18. Additionally, Plaintiff acknowledges in his Opposition that he relies entirely on statutory damages. *Id*. at 29. These are not plausible allegations of an Article III injury, and Plaintiff's Complaint must therefore be dismissed.

Plaintiff's reliance on *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) and *Davis v. Facebook, Inc.*, 956 F.3d 589 (9th Cir. 2020), is misplaced. In essence, Plaintiff contends he can establish standing with conclusory allegations of a technical CIPA violation. That is not the law, and neither *Davis* nor the Supreme Court's subsequent opinion in *Trans Union* support such an outcome. *Davis* involved allegations, supported by internal Facebook emails, that Facebook engaged in "cradle-to-grave" harvesting of members' profile information and online activities, irrespective of the data's sensitivity level or whether the member was logged in to Facebook. *Davis*, 956 F.3d at 599. And *Ramirez* involved an appeal of a verdict and admitted disclosures to third parties of certain class members' presence on a government-generated list of known terrorists and

---

[5] Moreover, Plaintiff does deny that Meta disclosed its purported tracking activities to Plaintiff in connection with his membership. Dkt. 26, *passim*.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

other criminals. *Ramirez*, 594 U.S. at 419-22. No such allegations are asserted here, and neither case condones conclusory allegations of technical statutory violations. Further, Plaintiff's assertion that he need not allege the specific contents of communications to establish standing is a red herring, as Hyatt faulted Plaintiff for failing to plead plausible allegations of *any* injury or harm.

## V. THIS COURT LACKS PERSONAL JURISDICTION OVER HYATT

Plaintiff contends this Court has personal jurisdiction based on "Hyatt's operation of numerous hotels in California in conjunction with its interactive website," citing *Briskin v. Shopify,* 135 F.4th 739 (9th Cir. 2025). Dkt. 26 at 18-19. However, as Hyatt established in its moving papers, *Briskin* involved allegations that a third-party vendor purposefully directed its conduct toward California by implementing a business model that focused in substantial part on the surreptitious collection and use of transactional data from users the defendants knew were in California based on geolocation data. *Id*. at 747-48, 762.[6] Plaintiff makes no such allegations in this case. Instead, Plaintiff's Opposition and Complaint assert that Hyatt's business focuses on the operation of hotels, including hotels in California. These allegations are insufficient for personal jurisdiction because Plaintiff's CIPA claims do not arise from Plaintiff's booking or use of a *Hyatt hotel located in California*. *See* Dkt. 15; *Mazal Grp. LLC v. Yousef*, 2024 U.S. Dist. LEXIS 70766, at *11-12 (C.D. Cal. Mar. 1, 2024) (granting motion to dismiss where plaintiff's claims did not arise from defendant's jurisdictional contacts). Nor does Plaintiff include any plausible allegations regarding conduct by Meta or Adobe in California that satisfies due process requirements as to Hyatt. *Id.*

---

[6] The subsequent unpublished decisions in *Mikulsky v. Bloomingdale's, LLC*, 2025 U.S. App. LEXIS 15222 (9th Cir. June 20, 2025) and *Thomas v. Papa John's Int'l, Inc.*, 2025 U.S. App. LEXIS 15039 (9th Cir. June 18, 2025) do not warrant a different outcome, as they followed *Briskin* and, accordingly, focused on the defendants' knowledge that privacy harms would be suffered in California, as opposed to the presence of brick-and-mortar operations in California.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## VI. PLAINTIFF'S CIPA SECTION 631 CLAIM SHOULD BE DISMISSED

Plaintiff's section 631 claim should be dismissed because he fails to plausibly allege any predicate violations by Adobe or Meta or any aiding or abetting by Hyatt.

Party exception. Plaintiff contends the party exception does not bar his section 631 claim because Meta and Adobe had the "capability" to misuse his information. Dkt. 26 at 20-21. As support, Plaintiff cites a handful of district court opinions indicating what Plaintiff characterizes as a "more recent trend" of cases finding allegations of third-party intent or actual "use" are required only with respect to 631(a)'s third prong. *Id*. For the second prong, Plaintiff argues he need only allege the third-party has the "capability" to use his information for its own purposes. *Id*.

As a threshold matter, Plaintiff effectively concedes he only has a potentially viable claim for a predicate violation under 631(a)'s second prong, as he is not asserting a claim under the first prong, he admits the third prong requires actual or attempted "use," and the fourth prong relates to "aiding" violations, not predicate violations. *Id*. at 20 ("This is sufficient as a pleading matter to establish liability under the second and fourth prongs."). Even as to 631(a)'s second prong, multiple courts have found mere assertions of "capability" are insufficient to avoid the party exception, which makes perfect sense given the second prong's express reference to situations where a nonparty "reads" or "attempts to read, or to learn" the contents of communications "willfully and without consent." Cal. Penal Code § 631(a). And even if allegations of a third party's "capability" to misuse information were enough for the second prong, Plaintiff has failed to plausibly allege any such capabilities existed with respect to his website activities in 2024. Instead, his allegations rely on unsubstantiated screen grabs apparently relating to a different user (or users) at unspecified points in time, as well as a hodgepodge of marketing material and puffery from nonparties Meta and Adobe. Dkt. 15 ¶¶ 27-73. Plaintiff has not plausibly alleged that his purported site interactions in 2024 were subject to any particular "capability" as to Meta or Adobe.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Contents of communications. Plaintiff asserts he has sufficiently pled that Meta and Adobe read the "contents" of his communications per section 631(a)'s second prong, arguing the booking preferences he allegedly input amount to "content" and that his Complaint is "replete with screenshots" reflecting the "button clicks and URLs that were intercepted." Dkt. 26 at 21-22. However, the primary case on which Plaintiff relies involved sensitive medical information, not basic hotel booking preferences. *See In re Meta Pixel Healthcare Litig*., 647 F. Supp. 3d 778, 795-96 (N.D. Cal. 2022). Moreover, Plaintiff fails to respond to Hyatt's argument that none of the information he contends was intercepted (e.g., dates of travel, number of rooms, etc.) falls within the definition of a "guest record." Dkt. 18 at 20. As to the "screenshots," none of these pertain to *Plaintiff's* interactions with the site. Indeed, the Opposition contends one such screenshot shows that "a user" searched for a hotel room in San Diego, without identifying the date or circumstances surrounding the screen capture or providing foundational details linking that screenshot to Plaintiff's experience. Dkt. 26 at 22. At most, Plaintiff has alleged disclosure of inactionable "record information," such as "purchase intent signals, and add-to-cart actions." *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 944 n.9 (N.D. Cal. 2023).

In Transit. Plaintiff's Opposition effectively admits that his "in transit" arguments focus on allegations of *duplication* of purported communications based on general assertions regarding "how the Adobe [] and Meta [] trackers work," not based on how they worked in connection with Plaintiff's site interactions. Dkt. 26 at 23. As established in Hyatt's moving papers, vague assertions of instant duplication are insufficient to meet the second prong's "in transit" requirement. Dkt. 18 at 17-18. Further, Plaintiff's attempt to expand the second prong's "in transit" requirement by referencing its use of disjunctives is unpersuasive, as the statute indisputably requires that communications be intercepted ***"while"*** "in transit" or being "sent" or "received." Cal. Penal Code § 631(a) (emphasis added).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Aiding/abetting. Plaintiff's Opposition asserts that Hyatt's argument "stumbles" because section 631(a) prohibits aiding *or* abetting a predicate violation, not aiding *and* abetting. Dkt. 26 at 24. Plaintiff's sematic ruminations miss the point. Indeed, Plaintiff does not dispute that under a common law criminal standard or a less rigorous approach, CIPA requires that the defendant intentionally "aids, agrees with, employs, or conspires" with another person to violate the statute. Cal Penal Code § 631(a). Here, Plaintiff has failed to plausibly allege the requisite elements under any potentially applicable interpretation. The Complaint is bereft of any plausible allegations that Hyatt was aware of any reading or interception of Plaintiff's communications by Meta or Adobe, or that Hyatt intended for those entities to read such communications without Plaintiff's consent. Dkt. 15, *passim*. Rather, Plaintiff alleges only that Hyatt installed Meta and Adobe software on its site at some unspecified point in time. *Id*. These allegations are deficient as a matter of law.

## VII. PLAINTIFF'S SECTION 632 CLAIM SHOULD BE DISMISSED

Plaintiff's Opposition argues he has sufficiently alleged Hyatt aided Meta's and Adobe's nonconsensual recording of his communications with Hyatt. He has not. First, Plaintiff has failed to plausibly allege a predicate violation by Meta or Adobe because he has not pled a reasonable expectation of privacy as to the allegedly recorded information. Again, Plaintiff does not respond to Hyatt's argument that the booking information Plaintiff allegedly provided contains no items that fall under Civil Code section 53.5. Dkt. 18 at 20. Further, while Plaintiff contends Meta and Adobe do not qualify as exempt "third party service providers" under section 53.5 because they "have the capability" to use the contents of conversations for their own purposes, he cites no cases allowing liability under section 632 for mere "capability," whether in connection with guest records or other information. Moreover, while *Mitchell v. Sonesta Int'l Hotels Corp.*, 2024 U.S. Dist. LEXIS 186701 (C.D. Cal. Oct. 4, 2024) adopted a permissive view of section 632 privacy expectations at the pleading phase based on caselaw involving *telephone conversations*, other courts have recognized such

constructions are incompatible with routine internet activity. *See Revitch v. New Moosejaw, LLC*, 2019 U.S. Dist. LEXIS 186955, at *6-7 (N.D. Cal. Oct. 23, 2019) (dismissing 632 claim based on "form field entries," and inquiries "on a retail website").

Second, section 632 makes no reference to "aiding" liability, and Plaintiff cites no cases recognizing such liability in the internet context. In any event, as noted above, Plaintiff's allegations of "aiding" are entirely conclusory and are disconnected from Plaintiff's personal site interactions. *See* p. 13, *supra*.

## VIII. PLAINTIFF'S CLASS ALLEGATIONS SHOULD BE STRICKEN

Plaintiff offers no factually similar cases to support his Opposition to Hyatt's motion to strike his overly broad class allegations. Rather, he relies on the general principle that motions to strike class allegations are disfavored because they potentially raise issues more appropriately addressed at the class certification phase.[7] Dkt. 26 at 28. However, Plaintiff cannot dispute that motions to strike class allegations are proper where the Complaint demonstrates on its face that no class can properly be certified. *See, e.g., Lyons v. Bank of Am.,* 2011 U.S. Dist. LEXIS 145176, at *20 (N.D. Cal. Dec. 16, 2011) (granting motion to strike where proposed definition included "many members who have not been injured"). Courts are not required to subject the parties to the rigors of certification in such instances. That is the case here.

Plaintiff begins his Opposition by doubling-down on his claims that this case pertains to so-called "guest records" generated when users book rooms on Hyatt's website. Dkt. 26 at 1. Yet, the class definition includes all California residents who merely "accessed and navigated" the Website over an unlimited time period, including users who provided no "confidential information." Dkt. 15 ¶ 78. Plaintiff posits no theory of recovery for such putative class members. He does not attempt to argue his

---

[7] This Court's order in *Rowe v. Univ. of S. Cal.*, 2024 U.S. Dist. LEXIS 233456 (C.D. Cal. Dec. 23, 2024) involved factually inapposite allegations of racial discrimination in the context of a kidney donation waitlist.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

claims are typical, that he is an adequate representative, or what predominating common questions exist for this much broader cohort of web surfers. And Plaintiff's assertion that CIPA applies beyond "confidential communications" simply underscores the problem. The Court should strike Plaintiff's overly broad class definition rather than subjecting Hyatt to needless class discovery covering an unlimited time period.

Nor can Plaintiff defend his class definition by referencing equitable tolling for the first time in his Opposition. *See Hinton v. Nmi Pac. Enters.*, 5 F.3d 391, 395 (9th Cir. 1993) (explaining that plaintiff's burden to plead facts supporting equitable tolling "does not arise only after a motion to dismiss"); *Wolf v. Travolta*, 2014 U.S. Dist. LEXIS 165513, at *18-22 (C.D. Cal. Nov. 24, 2014) (refusing to consider delayed discovery arguments in opposition brief where plaintiff "did not plead supporting facts" in complaint); *Asberry v. Money Store*, 2018 U.S. Dist. LEXIS 133795, at *23-25 (C.D. Cal. Aug. 8, 2018) (dismissing class claims for failure to plead facts supporting equitable tolling). Here, the Complaint makes no reference to equitable tolling or any underlying facts to support a tolling claim. Dkt. 15, *passim*. To the contrary, Plaintiff's allegations pertain solely to hotel bookings within one year of the Complaint's filing. *Id*. ¶ 3. Assuming equitable tolling is even available under CIPA, the Court cannot entertain such a theory where the Complaint fails to allege it. Plaintiff's cited cases do nothing to change the outcome, as they involve actual allegations of equitable tolling in non-CIPA contexts.

Plaintiff does not oppose striking all remedies in his prayer, except for statutory damages. Dkt. 26 at 29. Plaintiff's claims for punitive, actual, and compensatory damages, restitution, and injunctive relief should be stricken with prejudice.

## IX. CONCLUSION

For the foregoing reasons, Hyatt requests this action be transferred or that Plaintiff's claims be dismissed and stricken with prejudice.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DATED: July 8, 2025

REED SMITH LLP

By: /s/ Terence N. Hawley

Terence N. Hawley (SBN 179106)

*Attorneys for Defendant*
*Hyatt Corporation*

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

L.R. 11-6.2. CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Hyatt Corporation, certifies that this brief contains 5,007 words, which:

_X_ complies with the word limit of L.R. 11-6.1.

__ complies with the word limit set by court order dated [date].

DATED: July 8, 2025

*/s/ Terence N. Hawley*

Terence N. Hawley

REED SMITH LLP
A limited liability partnership formed in the State of Delaware